UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | | |
|---|---|---|
| In re: | : | |
| | : | |
| THE WECK CORPORATION, et al., | : | Chapter 11 |
| | : | |
| Debtors. | : | Case No. 10-14349 (AJG) |
| | : | (Procedurally Consolidated) |
| | : | |
| _____ | : | |

**INTERIM ORDER GRANTING EMERGENCY MOTION FOR ORDER
UNDER 11 U.S.C. §§ 105, 363, 364(c)(1) & (2), AND 364(e), FED. R. BANKR.
P. 2002, 4001, AND 9014, (I) AUTHORIZING DEBTORS TO OBTAIN POST-
PETITION FINANCING ON SUPER-PRIORITY AND SECURED BASIS,
(II) PERMITTING THE USE OF THE CASH COLLATERAL,
(III) GRANTING INTERIM RELIEF, AND (IV) SCHEDULING A FINAL
<u>HEARING UNDER FED. R. BANKR. P. 4001(c)</u>**

Upon the *Emergency Motion for Order Under 11 U.S.C. §§ 105, 363, 364(c)(1) & (2),*

*and 364(e), Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors To Obtain Post-*

*petition Financing On Super-priority and Secured Basis, (II) Permitting the Use of Cash*

*Collateral, (III) Granting Interim Relief, and (IV) Scheduling a Final Hearing Under Fed. R.*

*Bankr. P. 4001(c)*, dated August 13, 2010 (the "<u>Motion</u>[1]") filed by The Weck Corporation, West

Weck, LLC, Gracious Home.com, LLC and Weck Chelsea, LLC (collectively, the "<u>Debtors</u>"),

debtors and debtors in possession in the above-captioned cases; an interim hearing (the "<u>Interim</u>

<u>Hearing</u>") having been held before the Court on August 17, 2010; due and sufficient notice of the

Motion and the Interim Hearing having been given; and upon the entire record made at the

Interim Hearing before this court (the "<u>Bankruptcy Court</u>") to consider the Motion; and this

Court having found good and sufficient cause appearing therefore;

---

[1] Capitalized terms used herein and not otherwise defined herein shall have the meaning ascribed to them in the DIP Agreement (as such term is defined herein).

THE DEBTORS STIPULATE AND THE COURT HEREBY FINDS, DETERMINES, AND CONCLUDES THAT:[2]

A.    <u>Jurisdiction</u>.   The Bankruptcy Court has core jurisdiction over the above-captioned chapter 11 cases (the "<u>Cases</u>"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of this Motion constitutes a core proceeding as defined 28 U.S.C. §§ 157(b)(8).

B.    <u>Notice</u>.   Notice of the Motion and the Hearing was provided to all secured creditors, the Debtors' twenty (20) largest unsecured creditors and the United States Trustee, which constitutes due and sufficient notice thereof pursuant to Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>" 2002 and 4001(b) and (c).

C.    <u>Petition Date</u>.   On August 13, 2010 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as amended (the "<u>Bankruptcy Code</u>").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to manage their affairs as debtors in possession.  No trustee or examiner has been appointed in the Chapter 11 Cases.  At this time, the Debtors' Cases have been consolidated under Bankruptcy Case No. 10-14349 (AJG) for procedural purposes only.

D.    <u>Debtors' Stipulations</u>.   Without prejudice to the rights, remedies, and claims of the parties as set forth in Paragraph 19 below, the Debtors acknowledge, admit, and confirm the following:

(a)    The Debtors are party to that certain Secured Revolving Credit Note and Agreement dated as of April 22, 2005, as amended by that certain Increased, Modified and Extended Secured Revolving Credit Note and Agreement dated as of November 2, 2007, as

---

[2] Findings of fact contained herein shall be construed as conclusions of law, and conclusions of law contained herein shall be construed as findings of fact.

further amended by that certain Modified and Decreased Secured Revolving Credit Note and Agreement dated as of August 7, 2009, as further amended by that certain Modified and Decreased Secured Revolving Credit Note and Agreement dated as of November 5, 2009, as further amended by that certain Modified and Extended Secured Revolving Credit Note and Agreement dated as of February 16, 2010, as amended by that certain Forbearance Agreement and Amendment to Modified and Extended Secured Revolving Credit Note dated as of August 11, 2010 (as the same may be further modified, supplemented or otherwise modified from time to time to the Petition Date, the "Pre-Petition Credit Agreement"), pursuant to which NewAlliance Bank, acting through its NewAlliance Commercial Finance operating division (as successor to Manufacturers and Traders Trust Company) (the "Pre-Petition Lender"), made certain loans and financial accommodations to the Debtors (including, without limitation, accrued but unpaid interest, fees and expenses, collectively, the "Pre-Petition Obligations").

(b)     The Debtors are truly and justly indebted and liable to the Pre-Petition Lender for the Pre-Petition Obligations without defense, counterclaim or offset of any kind in respect of loans made pursuant to the Pre-Petition Credit Agreement, and that as of the Petition Date, such Pre-Petition Obligations amount equaled approximately $8,988,681.97 (inclusive of interest, facility fees, costs and expenses), plus outstanding letter of credit exposure in the amount of $2,358,441.71, and other fees, costs, expenses and indemnities as provided for in the Pre-Petition Credit Agreement.

(c)     To induce the Pre-Petition Lender to extend loans and financial accommodations under the Pre-Petition Credit Agreement, each of the Debtors executed a General Security Agreement (the "Pre-Petition Security Agreements"), pursuant to which each of the Debtors granted liens on, and irrevocable pledges and security interests in, all of its personal

3

property and assets (the "Pre-Petition Collateral") to and/or for the benefit of the Pre-Petition Lender to secure the Pre-Petition Obligations (collectively, the "Pre-Petition Liens").

(d)     The Pre-Petition Liens are (i) valid, binding, perfected, enforceable liens on the Pre-Petition Collateral and, subject to section 552 of the Bankruptcy Code, on all post-petition proceeds, products, offspring, rents and profits thereof, (ii) not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law, and (iii) subject and subordinate only to (A) the Adequate Protection Liens (as such term is defined herein), (B) the Carve-Out (as such term is defined herein and to which the Adequate Protection Liens are subject), (C) the DIP Liens (as such term is defined herein), and (D) valid, existing, prior perfected liens, if any.  The Pre-Petition Credit Agreement and Pre-Petition Security Agreements are valid and binding agreements and obligations of the Debtors.

(e)     The Pre-Petition Obligations constitute legal, valid, and binding obligations of the Debtors, enforceable in accordance with their terms and no objection, offset, defense, or counterclaim of any kind or nature to the Pre-Petition Obligations exists.  The Pre-Petition Obligations, and any amounts previously paid to the Pre-Petition Lender on account thereof or with respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.  The Debtors do not have any claims, counterclaims, causes of action, defenses, or setoff rights, whether arising under the Bankruptcy Code or otherwise, with respect to the Pre-Petition Obligations or against the Pre-Petition Lender and its predecessors-in-interest, affiliates, subsidiaries, agents, officers, directors, employees, and attorneys, with respect to the Pre-Petition Obligations, the Pre-Petition Security Agreements and the Pre-Petition Credit Agreement.

115350/214-1910147.4

(f)     The Pre-Petition Lender perfected its security interests and the Pre-Petition Liens in and on the Pre-Petition Collateral by, among other methods, the filing of UCC-1 financing statements, instruments filed in federal, state, and county offices, mortgages, and other required documents against the Debtors and such Pre-Petition Collateral with the proper federal, state, and county offices for the perfection of such security interests and Pre-Petition Liens.

E.     <u>Events of Default Under the Pre-Petition Credit Agreement</u>.  Various Events of Default have occurred and are continuing under the Pre-Petition Credit Agreement (including, without limitation, the failure of the Debtors to repay the Pre-Petition Obligations on the scheduled maturity date of the Pre-Petition Credit Agreement), and as a result, the Pre-Petition Lender had the right, subject to the Pre-Petition Credit Agreement and the provisions of the Bankruptcy Code, to accelerate the Pre-Petition Obligations, foreclose on the Pre-Petition Collateral (with relief from the automatic stay), and cease advancing funds pursuant to the Pre-Petition Credit Agreement.

F.     <u>Cash Collateral</u>.  For purposes of this Order, the following constitute "<u>Cash Collateral</u>" of the Pre-Petition Lender within the meaning of section 363(a) of the Bankruptcy Code: (a) all funds of the Debtors (including any funds subject to a right of setoff in favor of the Pre-Petition Lender, any funds on deposit or maintained in any account subject to a control agreement with the Pre-Petition Lender, and any proceeds of the Pre-Petition Collateral) as of the Petition Date, and (b) all cash proceeds of Pre-Petition Collateral received after the Petition Date.

G.     <u>Pre-Petition Lender's Consent</u>.  The Pre-Petition Lender consents to the Debtors' use of the Pre-Petition Lender's Cash Collateral and the priming of the Pre-Petition Liens by the DIP Liens, solely on the terms and conditions set forth in this Order, and in accordance with the

115350/214-1910147.4

Budget (as such term is defined herein). The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent.

H. _Findings Regarding the Use of Cash Collateral._ (a) Good cause has been shown for the entry of this Interim Order. The Debtors have an immediate and critical need to use the Cash Collateral and obtain post-petition financing on a super-priority basis in order to continue to operate their businesses, and effectuate a reorganization of their businesses. The Debtors' use of Cash Collateral is expected to be sufficient to meet the Debtors' immediate post-petition liquidity needs, subject to the terms of this Order, and all other agreements, documents, notes, or instruments delivered pursuant hereto or thereto or in connection herewith or therewith, including, without limitation, the Budget.

(b) The ability of the Debtors to have sufficient available sources of working capital to continue their businesses, effectuate a reorganization of their businesses, and maximize the value of their assets depends upon the Debtors' use of Cash Collateral. The Debtors have requested that the Pre-Petition Lender, through its agents, consent to (i) the use of its Cash Collateral, to be used by the Debtors solely in accordance with the terms of this Order and the Budget, and (ii) the priming of its liens on the Pre-Petition Collateral solely to the extent provided herein. In consideration of such accommodations, the Pre-Petition Lender shall be granted adequate protection (including, without limitation, the Adequate Protection Liens (as such term is defined herein)), as more particularly described herein.

(c) Based on the record presented to the Court at the Interim Hearing, good, adequate and sufficient cause has been shown to justify the immediate grant of the relief requested in the Motion to avoid irreparable harm to the Debtors' estates pursuant to Bankruptcy

Rule 4001(b)(2).  The terms of the DIP Agreement (as such term is defined herein) as well as the Debtors' use of the Cash Collateral, as more fully set forth herein, are (i) fair and reasonable, (ii) reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties, (iii) constitute reasonably equivalent value and fair consideration for the Pre-Petition Lender consent thereto, and (iv) are essential and appropriate for the continued operation and management of the Debtors' businesses and the preservation of their assets and properties.  Entry of this Order is in the best interests of the Debtors' estates and all parties in interest in these Chapter 11 Cases.

       I.      <u>Necessity for Post-Petition Financing</u>.

      (a)      Good cause has been shown for the entry of this Order.

      (b)      The Debtors have an immediate need to obtain post-petition financing to avoid irreparable harm.  Obtaining post-petition financing is in the best interests of the Debtors' estates.

      (c)      The Debtors are unable to obtain (i) adequate unsecured credit allowable under sections 503(b)(1) or 364(c)(1) of the Bankruptcy Code, as an administrative expense or (ii) secured credit allowable only under sections 364(c)(2) or 364(c)(3) of the Bankruptcy Code, without the Debtors granting to the DIP Lender (as such term is defined herein) (the Pre-Petition Lender and the DIP Lender, collectively, the "<u>Lender</u>") the Super-Priority Claim and the DIP Liens (as such terms are defined herein).

       J.      <u>Reasonable Terms; Good Faith</u>.

      (a)      The terms of the proposed post-petition financing (the "<u>Post-Petition Financing</u>") and use of Cash Collateral are fair and reasonable, are supported by reasonably

115350/214-1910147.4

equivalent value and fair consideration, and reflect the Debtors' exercise of prudent business judgment consistent with its fiduciary duties.

(b)     The Post-Petition Financing and the terms of use of the Cash Collateral has been negotiated in good faith and at arm's-length among the Debtors and the Lender.

(c)     All of the Debtors' indebtedness and other obligations to the NewAlliance Bank, acting through its NewAlliance Commercial Finance operating division (the "DIP Lender") arising under, in respect of or in connection with (i) the Debtor in Possession Loan and Security Agreement annexed hereto as **Exhibit A** (the "DIP Agreement"), and all related security and other agreements, documents, notes and instruments (together with all exhibits, schedules, annexes and appendices thereto, delivered pursuant hereto or thereto, or in connection herewith or therewith, collectively, the "DIP Loan Documents"); and (ii) this Order (collectively, the "DIP Financing Arrangement") shall be deemed to have been extended by the Lender in good faith, as that term is used in section 364(e) of the Bankruptcy Code.

K.     Protections of Section 364(e) of the Bankruptcy Code.  All of the credit extended pursuant to the DIP Loan Documents (including all the DIP Obligations (as such term is defined herein)) after entry of this Order will be extended by the DIP Lender in good faith and in express reliance upon the protections afforded to post-petition lenders pursuant to section 364(e) of the Bankruptcy Code and, accordingly, all of the DIP Obligations shall be entitled to the full protections of section 364(e) of the Bankruptcy Code in the event this Order or any provision hereof is vacated, reversed or modified (including pursuant to a final order on the Motion (the "Final Order") entered after a final hearing on the Motion (the "Final Hearing")), whether on appeal or otherwise, and upon execution and delivery of the DIP Loan Documents, the DIP Loan Documents shall constitute valid and binding obligations of the Debtors, enforceable against the

Debtors in accordance with the terms of the DIP Loan Documents, this Order, and section 364(e) of the Bankruptcy Code.

The Pre-Petition Lender is permitting the use of its Cash Collateral and the priming of its Pre-Petition Liens in good faith and in express reliance upon the protections afforded to the Pre-Petition Lender pursuant to section 364(e) of the Bankruptcy Code, and, accordingly, shall be entitled to the full protections of section 364(e) of the Bankruptcy Code in the event this Order or any provision hereof is vacated, reversed or modified (including pursuant to a Final Order on the Motion entered after a Final Hearing on the Motion).

IT IS HEREBY ORDERED, ADJUDGED AND DECREED EFFECTIVE IMMEDIATELY, AND AGREED AMONG THE PARTIES THAT:

1.  <u>Authorization to use Cash Collateral</u>.  Subject to the terms and conditions set forth in this Order and the DIP Loan Documents (including, without limitation, the granting of the Adequate Protection Obligations and the Adequate Protection Liens (as such terms are defined herein) provided herein), upon entry of this Order, the Debtors are authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use the Cash Collateral solely and exclusively for the disbursements set forth in the Budget for the period of time from the date hereof until the earliest to occur of (a) the date that this Order or the Final Order (when applicable) ceases to be in full force and effect, or (b) the occurrence of the Termination Date in accordance with Paragraph 13 hereof, at which time all accrued interest and fees and all other Adequate Protection Obligations shall be immediately due and payable and the Pre-Petition Lender shall have all other rights and remedies provided in this Order and under applicable law and the Debtors' authority to use the Cash Collateral shall automatically terminate without further order or relief from the Court.  Notwithstanding anything herein to the contrary, all of the rights,

remedies, benefits, and protections provided to the Pre-Petition Lender under this Order shall survive the Termination Date.

2.      <u>Use of Cash Collateral</u>.  Subject to the terms and conditions of this Order, the Pre-Petition Lender is willing to consent to the use of Cash Collateral in accordance with this Order and the Budget.   No Cash Collateral shall be utilized for the payment of professional fees, disbursements, costs or expenses incurred in connection with asserting any claims or causes of action against the Lender and/or challenging or raising any defenses to the Pre-Petition Obligations, the DIP Obligations, the Adequate Protection Obligations or the Pre-Petition Liens, the advances or other obligations under the Post-Petition Facility or the liens or security interests of the Lender.

3.      <u>Adequate Protection Obligations</u>. The Pre-Petition  Lender is entitled, under sections 363(e) and 364(d)(1)(B) of the Bankruptcy Code, to adequate protection of its interest in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the amount of the aggregate diminution in the value of the Pre-Petition Lender's interests in the Pre-Petition Collateral, including any such diminution resulting from (a) the use of Cash Collateral, (b) the sale, lease, or use by the Debtors (or other decline in value) of the Pre-Petition Collateral, and (c) the imposition of the automatic stay under section 362 of the Bankruptcy Code (the aggregate amount of such diminution, which shall expressly include, among other things, the aggregate amount of the Cash Collateral used by the Debtors from and after the Petition Date, the "<u>Adequate Protection Obligations</u>"). The Debtors shall each be jointly and severally liable for the Adequate Protection Obligations.

115350/214-1910147.4

4.     <u>Authorization to Enter into DIP Loan Documents and Incur DIP Obligations</u>.

(a)     The Debtors are hereby authorized on an interim basis to enter into the DIP Loan Documents and borrow monies pursuant to the DIP Loan Agreement in an aggregate principal amount of up to five hundred thousand dollars ($500,000.00) for this interim period (the "<u>DIP Obligations</u>") in accordance with the terms of this Order and the DIP Loan Documents. Such funds shall only be used for purposes permitted or prescribed under the DIP Loan Documents including, without limitation, only as provided and limited by the Budget, and this Order and the DIP Loan Documents.

(b)     The Debtors are expressly authorized and directed to do and perform all acts and to make, execute and deliver all instruments and documents as may be reasonably required by the DIP Loan Documents (including, without limitation, the execution or recordation of security agreements, control agreements, mortgages and financing statements).

5.     <u>Conditions to Lending</u>.  The Lender's obligation to fund any of the Post-Petition Financing is conditioned upon and subject to execution of final, definitive DIP Loan Documents, including the DIP Agreement, each in a form acceptable to the Lender in its sole discretion. Subject to the terms and conditions of the DIP Agreement, upon entry of this Order on an interim basis, the Lender shall fund the initial advance under the DIP Agreement of $500,000.00. Thereafter, subject to the terms and conditions of the DIP Financing Arrangement and entry of the Final Order, advances by the Lender shall be made such that the aggregate outstanding amount of the DIP Obligations shall not exceed $3,425,200.00, which amounts shall be advanced solely in accordance with the Budget, plus up to $2,323,587.89 for issuance of replacement letters of credit.

11

6.    <u>Super-Priority Claims</u>.

(a)    For all of the DIP Obligations, the DIP Lender is hereby granted pursuant to section 364(c)(1) of the Bankruptcy Code, an allowed super-priority administrative expense claim (which allowed super-priority claim shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors' estates and the proceeds thereof) with priority over any and all administrative expenses, claims for adequate protection, and all other claims against the Debtors, now existing or hereafter arising (whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy or attachment), including, without limitation, all administrative expenses of the kind specified in sections 503(b) and 507(b) (if any) of the Bankruptcy Code, and over any and all administrative expenses or other claims arising under sections 105, 326, 328, 330, 331, 365, 502(b), 506(c), 507(a), 546, 726, 1113 and 1114 of the Bankruptcy Code and including administrative expenses arising under or out of any superseding case under chapter 7 of the Bankruptcy Code (collectively, the "<u>Super-Priority Claim</u>"), subject only to payment of the Carve-Out (as defined herein).

(b)    The Pre-Petition Lender is hereby granted in each of the Debtors' Chapter 11 Cases, an allowed, super-priority administrative expense claim (the "<u>Cash Collateral Super-priority Claim</u>") under section 507(b) of the Bankruptcy Code with respect to all Adequate Protection Obligations.  The Cash Collateral Super-priority Claim shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726, and 1114 of the Bankruptcy Code, or otherwise (whether incurred in any of the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding

115350/214-1910147.4

related hereto or thereto), which Cash Collateral Super-priority Claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof, but excluding recoveries of avoidance actions and the proceeds thereof under sections 544, 545, 547, 548, 550, 551 or 553 of the Bankruptcy Code (the "Avoidance Action Recoveries"). The Cash Collateral Superpriorty Claim shall be subject and subordinate only to the Super-priority Claim and the Carve-Out.

7. <u>Liens</u>. (a) In accordance with Section 364(c)(1) of the Bankruptcy Code, as security for the DIP Obligations, deemed effective and perfected as of the Petition Date and without the necessity of the Debtors incurring the expense for the execution, recordation of filings of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or possession or control of applicable assets, the DIP Lender shall be granted a valid, perfected, priming, first-priority senior security interest in and liens on all of the Debtors' now owned and hereafter acquired, created or arising Collateral (as defined herein), subject only to the payment of the Carve-Out (all such liens and security interests granted to the Lender, pursuant to this Order and the DIP Loan Documents, the "DIP Liens") and Permitted Liens. For purposes hereof, "Collateral" is defined as all assets and property of the Debtors and their estates, including without limitation all present and future accounts, deposit accounts, chattel paper, equipment, documents, general intangibles, held items, investment property, instruments, inventory, items of payment, owned real property and proceeds of real property leases, if applicable, proceeds, products, records and all other collateral described in the DIP Loan Agreement. The DIP Liens shall extend and attach to all Collateral and any proceeds of Collateral which is presently in existence or hereafter arises or acquired (whether arising or acquired prior to or subsequent to the Petition Date) and which is owned by

the Debtors or in which Debtors have any interest, whether held by any of Debtors or by others for any of Debtors' account, wherever located. Subject to the entry of the Final Order, the DIP Liens shall not include a lien on the proceeds of Avoidance Action Recoveries.

(b)    To secure the Adequate Protection Obligations, deemed effective and perfected as of the Petition Date and without the necessity of the Debtors incurring the expense for the execution, recordation of filings of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or possession or control of applicable assets, the Pre-Petition Lender shall be granted a valid, perfected, priming, security interest in and liens on all of the Debtors' now owned and hereafter acquired, created or arising Collateral, but excluding Avoidance Action Recoveries, subject only to DIP Liens and the Carve-Out (all such liens and security interests granted to the Pre-Petition Lender to secure the Adequate Protection Obligations pursuant to this Order, the "Adequate Protection Liens"). The Adequate Protection Liens shall extend and attach to all Collateral and any proceeds of Collateral which is presently in existence or hereafter arises or acquired (whether arises or acquired prior to or subsequent to the Petition Date) and which is owned by the Debtors or in which Debtors have any interest, whether held by any of Debtors or by others for any of Debtors' account, wherever located, to the same extent as the Liens, but excluding Avoidance Action Recoveries.

8.    Automatic Stay; Remedies.

(a)    Upon the occurrence of an Event of Default under the DIP Loan Documents, all stays and injunctions in this Case, including, but not limited to, the automatic stay arising under section 362(a) of the Bankruptcy Code will be terminated automatically and irrevocably as to the DIP Lender, thereby permitting the DIP Lender, *inter alia*, to enforce its

remedies against the Collateral, without further order of the Bankruptcy Court and without the need for filing any motion for relief from the automatic stay or any other pleading in order to:

(i)     Lender may terminate the Line of Credit under the DIP Agreement and decline to make Advances or issue Letters of Credit;

(ii)    Lender may declare the DIP Obligations to be immediately due and payable and accelerate payment thereof, and all DIP Obligations shall immediately become due and payable, without presentment, notice of dishonor, protest or further notice of any kind; Lender may require that Debtors provide cash collateral for all outstanding Letters of Credit as security for the payment in full of all DIP Obligations in respect of Letters of Credit; and

(iii)   Declare the Debtors' right to use Cash Collateral to be terminated, where upon the same shall forthwith terminate, provided that, (i) with the written agreement of the DIP Lender or (ii) pursuant to an order of the Court upon emergency motion and upon no less than three full business days' notice to DIP Lender (which may be filed by the Debtors or the Committee), the Debtors may use only that amount of Cash Collateral necessary to preserve and protect the Collateral, which may include ongoing operations for a period not to exceed five (5) days or such additional period of time to which Lenders agree in their sole discretion.

(b)     Notwithstanding anything herein or in the DIP Agreement to the contrary, and notwithstanding the applicability of section 362 of the Bankruptcy Code (to the extent necessary to exercise such remedies, relief from automatic stay shall be deemed granted), upon notice of the occurrence of an Event of Default by the DIP Lender to the Debtors and the Debtors' failure to cure any such Event of Default within five (5) days after receipt of such notice, the DIP Lender shall also be entitled to immediately exercise any of the following rights and remedies, without further order of the Bankruptcy Court and without the need for filing any motion for relief from the automatic stay or any other pleading in order, during which time the Debtors may seek an order of the Court that an Event of Default has not occurred, thereby enjoining the Lender from such exercise:

(i)    Lender may, without further notice to Debtors, set off and apply any monies owing by Lender to Debtors to payment of the DIP Obligations;

(ii)    Lender may exercise and enforce any rights and remedies available upon default to a secured party under the UCC, including, without limitation, the right to take possession of Collateral (without posting a bond or other form of security), to proceed with or without judicial process (without a prior hearing or notice of hearing), and to sell, lease or otherwise dispose of Collateral for cash or on credit (with or without giving warranties as to condition, fitness, merchantability or title to Collateral, and in the event of a credit sale in such manner and at such places (including Debtors' Premises) as Lender determines is commercially reasonable discretion, including, conducting one or more going out of business or liquidation sales, in Lender's own right or by one or more agents or contractors, which sales may be conducted upon any Premises owned, leased, or occupied by Debtors. Debtors will upon Lender's demand assemble the Collateral and make it available to Lender at any place designated by Lender which is reasonably convenient to both parties. Debtors' Obligations to Lender shall be reduced only to the extent that payments are actually received by Lender;

(iii)    Lender may exercise and enforce any of its rights and remedies under any of the DIP Loan Documents and any other document or agreement described in or related to the DIP Agreement or the DIP Obligations, or at law or in equity; and

(iv)    Lender may exercise any other rights and remedies available to it by law or agreement.

(c)    The automatic stay imposed by section 362 of the Bankruptcy is hereby modified to the extent necessary to permit or effectuate the terms of this Order, including, without limitation, to permit the execution and recordation of documents in the Lender's discretion to evidence the creation and perfection of the Lender's liens on the Collateral.

9.    <u>Use of Proceeds; Bank Accounts.</u>

(a)    The Debtors shall use the proceeds of the loans obtained under the DIP Loan Documents solely in accordance with and subject to the conditions set forth in this Order, the DIP Loan Documents and the Budget. Nothing in this Order shall be construed to require the

Lender to make advances or extensions of credit or other financial accommodations to permit the Debtors to make any payments, except to the extent expressly provided for in this Order and the DIP Loan Documents.

(b)     Any proceeds of the sale, lease or other disposition of the Collateral shall be used in accordance with the provisions of this Order and the DIP Loan Documents.  To the extent they are applied to reduce the DIP Obligations, they shall be applied in payment of the Debtors' obligations under, and in the manner provided in, the DIP Loan Documents, and the Debtors are deemed to have irrevocably waived any right to direct the manner of application of any payments to the Lender or any other receipts by the Lender of proceeds of any of the Collateral, including all of the Lender's Cash Collateral, other than as expressly set forth in this Order and the DIP Loan Documents.

(c)     The Lender shall issue replacement letters of credit for the benefit of the Debtors pursuant to the DIP Loan Agreement, which replacement letters of credit will replace existing letters of credit issued pursuant to the Pre-Petition Credit Agreement and constitute DIP Obligations.

10.     <u>Perfection of Liens and Replacement Liens</u>.

(a)     This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and the Adequate Protection Liens, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect such liens or security interests in the Collateral or to entitle the Lender to the priorities granted herein.  The automatic stay imposed by Section 362 is modified to permit the Lender,  but not require the Lender, to file or record financing statements, trademark filings,

copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession or control of collateral, or take any other action in order to validate and perfect the liens and security interests granted to it hereunder. Whether or not the Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession or control of collateral, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Order. Upon the request of the Lender, the Debtors, without any further consent of any party or further order of this Bankruptcy Court, are authorized to take, execute and deliver such instruments and agreements (including, without limitation, delivery of control agreements and possessory collateral) to enable the Lender to further validate, perfect, preserve and enforce the DIP Liens and Adequate Protection Liens.

(b)    A certified copy of this Order may, in the discretion of the Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

11.    <u>Preservation of Rights Granted Under This Order</u>.

(a)    Except for the Carve-Out and, with respect to the Adequate Protection Liens and the DIP Liens and the Permitted Liens, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Lender shall be granted or allowed while any portion of the Pre-Petition Obligations and the DIP Obligations (collectively, the "<u>Obligations</u>") remains outstanding, and the DIP Liens and the Adequate Protection Liens shall not be

subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

(b)     Unless all the Obligations shall have been indefeasibly paid in full, the Debtors shall not, and shall not seek to, (i) in any way prime or otherwise adversely affect the liens granted under this Order by granting a subsequent lender or a party in interest a superior or *pari passu* lien or claim pursuant to sections 364(c)(1), 364(d) or section 507(b) of the Bankruptcy Code or otherwise, (ii) in any way grant junior encumbrances on any Collateral, or (iii) otherwise encumber otherwise unencumbered assets or estate property of the Debtors.

(c)     Unless all the Obligations shall have been indefeasibly paid in full, the Debtors shall not seek, and it shall constitute an Event of Default under the DIP Agreement if the Debtors seek, or if there are entered, any modifications or extensions of this Order without the prior written consent of the Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the Lender.

(d)     If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any of the DIP Obligations or Adequate Protection Obligations incurred prior to the actual receipt of written notice of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby or pursuant to the DIP Loan Agreement with respect to any of the DIP Obligations. Notwithstanding any such reversal, stay, modification or vacation, any use of the Post-Petition Financing, Adequate Protection Obligations or other DIP Obligations by the Debtors prior to the actual receipt of written notice of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Lender

shall be entitled to all the rights, remedies, privileges and benefits granted by section 364(e) of the Bankruptcy Code, this Order and pursuant to the DIP Loan Documents with respect to all DIP Obligations and Adequate Protection Obligations.

(e)     Except as expressly provided in this Order or in the DIP Loan Documents or as agreed in writing by the Lender, the DIP Liens, the Adequate Protection Liens, the Super-Priority Claim, the Cash Collateral Super-Priority Claim and all other rights and remedies of any of the Lender granted by the provisions of this Order and the DIP Loan Documents shall survive, and shall not be modified, impaired or discharged by (i) the conversion of the Chapter 11 Cases, (ii) the dismissal of any of the Chapter 11 Cases, or (iii) the entry of an order confirming a chapter 11 plan in the Case.   The terms and provisions of this Order and the DIP Loan Documents shall continue in the Chapter 11 Cases, in any successor cases if any of the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 case under the Bankruptcy Code, and the DIP Liens, the Adequate Protection Liens, the Super-Priority Claim, Cash Collateral Super-Priority Claim and all other rights and remedies of the Lender granted by the provisions of this Order and the DIP Loan Documents shall continue in full force and effect until the Obligations are indefeasibly paid in full.

12.     Limitation on Use of Financing Proceeds and Collateral.   Notwithstanding anything herein or in any other order of the Bankruptcy Court to the contrary, no borrowings under the DIP Loan Documents, and none of the Collateral (including cash and cash equivalents and Cash Collateral) or the Carve-Out, may be used to (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Loan Documents, the liens or claims granted under this Order or the DIP Loan Documents, the Pre-Petition Obligations or the liens or claims granted under the Pre-Petition Security Agreements

and Pre-Petition Credit Agreement, or (ii) assert any claims, counterclaims, defenses, causes of action, objections or contests (including, without limitation, any claims or causes of action arising under chapter 5 of the Bankruptcy Code) against the Lender or its respective agents, affiliates, representatives, attorneys or advisors.

13. <u>Termination</u>. The agreement by the Lender to make any post-petition financing available to the Debtors under the DIP Loan Documents and to allow the use of Cash Collateral pursuant to the terms of this Order shall continue until the earlier of (i) the conclusion of the Final Hearing, (ii) September 13, 2010, if the Final Order has not been entered by that date, (iii) the date 180 days after the Petition Date, which may be extended solely at the option of the Lender and the Debtors in writing, without the need for any further Court approval or as otherwise set forth in the DIP Loan Documents, (vi) the date of the acceleration of any outstanding extensions of credit under the DIP Loan Documents, or (vii) the occurrence of an Event of Default under the DIP Loan Documents (hereinafter, the "<u>Termination Date</u>"). As used herein, an "Event of Default" under the DIP Loan Documents shall occur upon the occurrence of any of Event of Default under the DIP Agreement.

14. For purposes hereof, the "<u>Carve Out</u>" shall mean: (i) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code; and (ii) to the extent not otherwise payable from proceeds of Collateral, all allowed fees and expenses incurred in the Chapter 11 Case by professionals retained by the Debtors or by the Committee (collectively, the "<u>Retained Professionals</u>") in amount not to exceed the sum of (A) all allowed fees and expenses incurred by the Retained Professionals prior to the occurrence of the Termination Date (whether allowed before or after the Termination Date) not to exceed the amounts set forth in the Budget for such Retained

Professional through the applicable Termination Date, plus (B) after the occurrence of the Termination Date, an amount not to exceed (i) $60,000 in the aggregate for the Retained Professionals of the Debtors, (ii) $15,000 in the aggregate for the Retained Professionals of the Committee and (iii) $5,000 in the aggregate for the Chapter 7 Trustee, if any.

15.     <u>No Marshalling</u>.  In no event shall the DIP Lender be subject to the equitable doctrine of marshalling or any similar doctrine with respect to the DIP Obligations incurred pursuant to this Interim Order or any of the property comprising the Collateral.

16.     <u>Limits on the Lender's Liability</u>.  Nothing in this Order or in any of the DIP Loan Documents or Pre-Petition Loan Documents relating to the DIP Financing or any other documents related to the financing transactions authorized hereby shall in any way be construed or interpreted to impose or allow the imposition upon the Lender of any liability for any claims arising from the pre-petition or post-petition activities by the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  The Lender shall not, in any way or manner, be liable or responsible for (a) the safekeeping of the Collateral, (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (c) any diminution in the value thereof, or (d) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

17.     <u>Lender's Right to Credit Bid</u>.  The Lender shall have the right to credit bid with respect to any sale of assets or equity under either section 363 of the Bankruptcy Code or a Plan of Reorganization (i) the amount advanced under the Post-Petition Financing, and (ii) Pre-Petition Obligations, which credit bid rights under section 363(k) of the Bankruptcy Code or

otherwise shall not be impaired in any manner. For the avoidance of ambiguity, no future order or plan may impair the credit bid rights of the Lender.

18.     <u>No Waiver by Lender</u>.  Notwithstanding anything to the contrary herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights of the Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Lender to (a) request the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or the appointment of a chapter 11 trustee, examiner, fiduciary, or responsible person with expanded powers, (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization or liquidation for the Debtors, or (c) request modification of the automatic stay pursuant to section 362 of the Bankruptcy Code.

19.     <u>Committee Review Period</u>

(a)     Notwithstanding anything contained herein to the contrary, the extent, validity, priority, perfection, and enforceability of the Pre-Petition Obligations, the Pre-Petition Liens, and all acknowledgments, admissions, and confirmations of the Debtors and their affiliates above, are for all purposes subject to the rights of any party in interest (including any trustee elected or appointed in these Chapter 11 Cases), other than any Debtor or any of its respective affiliates, to file a complaint pursuant to Bankruptcy Rule 7001 seeking to invalidate, subordinate, or otherwise challenge (collectively, the "<u>Challenges</u>") the Pre-Petition Obligations or the Pre-Petition Liens; <u>provided</u>, <u>however</u>, that any such complaint must be filed in this Court within the later of sixty (60) days after the date of appointment of the Committee (but in no event later than seventy-five (75) days after entry of this Order) or any subsequent date that may be agreed to in writing by the Lender with respect to the time to file any such complaint relating to

the Pre-Petition Obligations and/or the Pre-Petition Liens. If no such complaint is filed within such time period (or such timely filed complaint does not result in a final and non-appealable order of this Court that is inconsistent with clauses (i) through (iii) of subparagraph (b) of this Paragraph 19), then any and all Challenges shall be, without further notice to or order of the Court, deemed to have been forever relinquished, released, and waived as to the Committee and other person or entity, and if such complaint is timely filed on or before such date, any and all claims and defenses against the Pre-Petition Lender shall be deemed, immediately and without further action, to have been forever relinquished, released, and waived as to the Committee and other person or entity, except with respect to claims and defenses that are expressly asserted in such complaint.

      (b)     If no such complaint as to the Pre-Petition Obligations or Pre-Petition Liens is filed within such time period, or such timely filed complaint does not result in a final and non-appealable order of this Court that is inconsistent with the clauses of this paragraph, then, subject to the filing of a proof of claim with respect thereto, (i) the Pre-Petition Obligations shall constitute allowed secured claims for all purposes in the Chapter 11 Cases and any subsequent cases or proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings if any Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code (each, a "Successor Case"), (ii) the Pre-Petition Liens shall be deemed legal, valid, binding, enforceable, perfected liens not subject to recharacterization, subordination (except as expressly specified in this Order as to the Carve-Out, the DIP Liens and the Adequate Protection Liens) or avoidance for all purposes in the Chapter 11 Cases and any Successor Case, and (iii) the Pre-Petition Obligations, the Pre-Petition Liens, and prior payments on account of or with respect to the Pre-Petition Obligations shall not be subject to any other or further claims,

cause of action, recharacterization, objection, contest, setoff, defense, or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor; provided, however, the Committee may use up to $25,000 of such amounts to investigate any claims or causes of action against the Pre-Petition Lender in respect of the Pre-Petition Obligations or the Pre-Petition Liens securing the Pre-Petition Obligations. Nothing herein shall be construed as consent to the allowance of any fees and expenses of any professional retained in the Chapter 11 Cases, or shall affect the rights of the DIP Lender or any other interested party to object to the allowance and payment of such fees and expenses.

20.     Section 506(c) Waiver.  Subject to entry of a Final Order, except for the Carve-Out, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any future proceedings or cases related hereto, at any time, shall be charged against the Lender, its claims, or the Collateral, pursuant to sections 105, 506(c) or 522 of the Bankruptcy Code, or otherwise, without the prior written consent of the Lender and no such consent shall be implied from any other action, inaction, or acquiescence by the Lender.

21.     Successors and Assigns.  To the extent permitted by law, the DIP Loan Documents and the provisions of this Order shall be binding upon the Lender and the Debtors and each of their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors or any examiner appointed pursuant to section 1104 of the Bankruptcy Code in the Chapter 11 Cases or any subsequent chapter 7 case) and the Committee, and shall inure to the benefit of the Lender and the Debtors and (except with respect to any trustee hereinafter appointed or elected for the estate of the Debtors) their respective successors and assigns; provided, however, that the Lender shall have

no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtors.

22. <u>Subsequent Liens</u>. If the Court grants liens or security interests to others pursuant to Section 364(d) of the Bankruptcy Code or any other provision of the Bankruptcy Code in the Collateral (collectively, the "<u>Subsequent Liens</u>"), any proceeds of the loans or extensions of credit secured by Subsequent Liens shall be applied to payment of either the DIP Obligations or the Pre-Petition Obligations, in the Lender's sole discretion.

23. <u>Binding Nature of Findings</u>. The findings contained in this Order shall be binding upon all parties in interest, subject to Paragraph 19.

24. <u>Immediate Effectiveness</u>. Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry.

25. <u>Conflicts</u>. In the event of any conflict between or among the express terms or provisions of any of the DIP Loan Documents, and the terms and provision of this Order on the other hand, the terms and provisions of this Order shall govern.

26. <u>Rights of Recoupment or Setoff</u>. Notwithstanding anything to the contrary in this Order, nothing in this Order shall (a) compromise, modify or affect the ability of any party in interest to assert a right of recoupment or setoff with respect to amounts allegedly owed to the Debtors, or (b) create any right of recoupment or setoff with respect to amounts allegedly owed to the Debtors (except to the extent expressly provided for in the DIP Loan Documents).

27. <u>No Third Party Beneficiaries</u>. Nothing in this Order shall create any right for the direct or indirect benefit of any person other than the parties to the DIP Loan Documents and/or the Pre-Petition Loan Documents.

28. <u>Retention of Jurisdiction</u>. The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from this Order and its implementation.

29. <u>Authority</u>. The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements the Lender may reasonably require, as evidence of and for the protection of the Post-Petition Financing, or which otherwise may be deemed reasonably necessary by the Lender to effectuate the terms and conditions of this Order and the Post-Petition Loan Documents.

30. <u>Final Hearing</u>.

(a) A final hearing on the Motion (the "<u>Final Hearing</u>") is hereby scheduled for September 8, 2010 at 9:30 a.m. Eastern Time.

(b) Upon the scheduling of the Final Hearing, the Debtors shall promptly mail copies of this Order to counsel for the Lender, counsel for the Committee, the United States Trustee, any other persons entitled to notice under Bankruptcy Rule 4001(b). Any party in interest objecting to the entry of a final order approving the Motion shall file a written objection with the Clerk of the Court no later than 4:30 p.m. Eastern Time on September 3, 2010, which objection shall be served, at a minimum, on the following parties: (i) Hahn & Hessen, LLP, 488 Madison Avenue, New York, New York 10022 (Attn: Rosanne T. Matzat, Esq. and Mark T. Power, Esq.) rmatzat@hahnhessen.com and mpower@hahnhessen.com; (ii) Greenberg Traurig, LLP, One International Place, Boston, Massachusetts 02110 (Attn: Jeffrey M. Wolf, Esq.) wolfje@gtlaw.com; (iii) Greenberg Traurig, LLP, 200 Park Avenue, Florham Park, New Jersey

07932 (Attn: Alan J. Brody, Esq.) brodya@gtlaw.com; and (iv) the Office of the United States

Trustee, 33 Whitehall Street, 21st Floor, New York, New York 10004 (Attn: Susan Golden, Esq.)

Susan.Golden@usdoj.gov.


**s/Allan L. Gropper**
Hon. Allan L. Gropper
United States Bankruptcy Judge


Dated:     August 17, 2010