# EXHIBIT B

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-----------------------------------------------------------------x
:
In re                                                             :   **Chapter 11**
:
**THE WECK CORPORATION., et al.,**                                :   **Case No. 10-14349 (AJG)**
:
**Debtors.**                                                      :   **(Jointly Administered)**
:
-----------------------------------------------------------------x

## DEBTORS' PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

HAHN & HESSEN LLP
488 Madison Avenue
New York, New York 10022
212-478-7200

Attorneys for Debtors
and Debtors in Possession

Dated: August 24, 2010

# TABLE OF CONTENTS

ARTICLE I. DEFINITIONS
1.1.    503(b)(9) Claim ..................................................................................................1
1.2.    Administrative Expense Claim ............................................................................1
1.3.    Administrative Expense Creditor .........................................................................1
1.4.    Administrative Expense Objection Deadline .........................................................1
1.5.    Administrative/Priority Claims Reserve ................................................................1
1.6.    Affiliate ............................................................................................................1
1.7.    Allowed ............................................................................................................1
1.8.    Allowed Amount ................................................................................................3
1.9.    Assumed Liabilities ...........................................................................................3
1.10.   Auction .............................................................................................................3
1.11.   Available Cash ..................................................................................................3
1.12.   Ballot ...............................................................................................................3
1.13.   Bankruptcy Code ...............................................................................................3
1.14.   Bankruptcy Court ..............................................................................................3
1.15.   Bankruptcy Rules ..............................................................................................3
1.16.   Bar Date ...........................................................................................................3
1.17.   Bar Date Order ..................................................................................................3
1.18.   Bidding Procedures Order ...................................................................................3
1.19.   Business Day .....................................................................................................4
1.20.   By-Laws ............................................................................................................4
1.21.   Cash .................................................................................................................4
1.22.   Chapter 11 Cases ..............................................................................................4
1.23.   Claim ...............................................................................................................4
1.24.   Claims Agent ....................................................................................................4
1.25.   Claims Objection Deadline .................................................................................4
1.26.   Class ................................................................................................................4
1.27.   Class 4 Administrator ........................................................................................4
1.28.   Class 4 Distribution Pool ...................................................................................4
1.29.   Class 4 Gift .......................................................................................................4
1.30.   Commencement Date ..........................................................................................5
1.31.   Confirmation Date .............................................................................................5
1.32.   Confirmation Hearing .........................................................................................5
1.33.   Confirmation Order ............................................................................................5
1.34.   Contingent Claim ..............................................................................................5
1.35.   Creditor ............................................................................................................5
1.36.   Creditors' Committee .........................................................................................5
1.37.   Cure Amount Claim ...........................................................................................5
1.38.   Debtors .............................................................................................................5
1.39.   Debtor in Possession .........................................................................................5
1.40.   Deficiency Claim ...............................................................................................5
1.41.   DIP Agreement ..................................................................................................5
1.42.   DIP Claim .........................................................................................................6
1.43.   DIP Financing Orders .........................................................................................6
1.44.   DIP Lender ........................................................................................................6

1.45. Disallowed Claim...........................................................................................6
1.46. Disclosure Statement ......................................................................................6
1.47. Disputed Claim ...............................................................................................6
1.48. Distribution ....................................................................................................6
1.49. Distribution Date ............................................................................................6
1.50. Effective Date .................................................................................................6
1.51. Equity Interest ................................................................................................6
1.52. Estate ..............................................................................................................7
1.53. Estimated Amount ..........................................................................................7
1.54. Excluded Assets ..............................................................................................7
1.55. Executory Contract .........................................................................................7
1.56. Exhibit ............................................................................................................7
1.57. Existing Equity ...............................................................................................7
1.58. Exit Financing Arrangement ...........................................................................7
1.59. Exit Financing Lender .....................................................................................7
1.60. Existing Letters of Credit ...............................................................................7
1.61. Existing Management Team .............................................................................7
1.62. Fee Order ........................................................................................................7
1.63. Final Distribution Date ...................................................................................8
1.64. Final Fee Application ......................................................................................8
1.65. Final Order ......................................................................................................8
1.66. General Unsecured Claim ................................................................................8
1.67. Guaranty ..........................................................................................................8
1.68. Guaranty Claim ...............................................................................................8
1.69. Impaired ..........................................................................................................8
1.70. Initial Distribution Date ..................................................................................8
1.71. Insured Claim ..................................................................................................9
1.72. Internal Revenue Code ....................................................................................9
1.73. Investment .......................................................................................................9
1.74. Investment Agreement .....................................................................................9
1.75. Investor ...........................................................................................................9
1.76. IRS ..................................................................................................................9
1.77. Landlord Settlement ........................................................................................9
1.78. Landlord Settlement Amount ...........................................................................9
1.79. Landlord Settlement Approval Order ...............................................................9
1.80. Other Secured Claim .......................................................................................9
1.81. Person .............................................................................................................9
1.82. Plan ...............................................................................................................10
1.83. Plan Documents .............................................................................................10
1.84. Plan Support Agreement ................................................................................10
1.85. Plan Supplement ...........................................................................................10
1.86. Pre-Petition Lender .......................................................................................10
1.87. Pre-Petition Loan Facility .............................................................................10
1.88. Pre-Petition Loan Facility Claim ..................................................................10
1.89. Pre-Petition Loan Facility Reduction Amount ...............................................10
1.90. Priority Claim................................................................................................10

1.91.     Priority Non-Tax Claim ...................................................................11
1.92.     Priority Tax Claim .........................................................................11
1.93.     Professional ..................................................................................11
1.94.     Professional Fee Claim ..................................................................11
1.95.     Pro Rata Share ..............................................................................11
1.96.     Purchased Assets ...........................................................................11
1.97.     Reclamation Claim .........................................................................11
1.98.     Record Date ..................................................................................11
1.99.     Recovery Actions ...........................................................................11
1.100.   Rejection Claim .............................................................................11
1.101.   Released Parties .............................................................................11
1.102.   Reorganized Debtor ........................................................................12
1.103.   Reorganized Debtor Management Incentive Plan ................................12
1.104.   Reorganized Debtor Operating Agreement ........................................12
1.105.   Schedules .....................................................................................12
1.106.   Secured Claim ...............................................................................12
1.107.   Securities Act ................................................................................12
1.108.   Shull ...........................................................................................12
1.109.   Stipulation of Amount and Nature of Claim .......................................12
1.110.   Tax ..............................................................................................12
1.111.   Treasury Regulations ......................................................................13
1.112.   Triton ..........................................................................................13
1.113.   Unexpired Lease ............................................................................13
1.114.   Unimpaired ...................................................................................13
1.115.   U.S. Trustee ..................................................................................13
1.116.   Unliquidated Claim .........................................................................13
1.117.   Utilities Order ...............................................................................13
1.118.   VNO ............................................................................................13
1.119.   VNO Lease ...................................................................................13
1.120.   Voting Deadline .............................................................................13
1.121.   Wekselbaum ..................................................................................13
1.122.   Wekselbaum Family Interests ..........................................................13
1.123.   Workers' Compensation Claim ..........................................................13

ARTICLE II. PAYMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND
              PRIORITY TAX CLAIMS
2.1.      Payment of Administrative Claims. ...................................................14
2.2.      Bar Dates for Administrative Claims. ................................................15
2.3.      Bar Dates for Certain Administrative Claims. .....................................15
2.4.      Payment of Priority Tax Claims. ......................................................16

ARTICLE III. CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS
3.1.      Class 1 Claims (Pre-Petition Loan Facility Claim)...............................17
3.2.      Class 2 Claims (Other Secured Claims)..............................................17
3.3.      Class 3 Claims (Priority Non-Tax Claims)..........................................17
3.4.      Class 4 Claims (General Unsecured Claims)........................................18
3.5.      Class 5 Claims (Landlord Settlement Claim 5). ...................................18

3.6.    Class 6 Interests (Interests). ....................................................................19

ARTICLE    IV.    ACCEPTANCE,    REJECTION,    AND    REVOCATION    OR
                WITHDRAWAL OF THE PLAN
4.1.    Classes Entitled to Vote ...........................................................................19
4.2.    Acceptance by Class of Claims..................................................................19
4.3.    Nonconsensual Confirmation.....................................................................19
4.4.    Revocation or Withdrawal. ........................................................................19
4.5.    Amendment of Plan Documents ................................................................20
4.6.    Removal of Debtors ...................................................................................20

ARTICLE V. IMPLEMENTATION OF THE PLAN
5.1.    Substantive Consolidation .........................................................................20
5.2.    Creation of the Reorganized Debtor. .........................................................20
5.3.    Directors and Officers of the Reorganized Debtor ....................................21
5.4.    Reorganized Debtor Management Incentive Plan ......................................21
5.5.    Effectuating Documents and Further Transactions.....................................21
5.6.    Allocation of Plan Distributions Between Principal and Interest ..............21
5.7.    Surrender and Cancellation of Instruments................................................22
5.8.    Letters of Credit ........................................................................................22
5.9.    Comprehensive Settlement of Claims and Controversies...........................22
5.10.   Releases and Satisfaction of Subordination Rights ...................................22

ARTICLE    VI.    SPECIAL    PROVISIONS    REGARDING    INSURED    CLAIMS    AND
                INSURANCE POLICIES
6.1.    Limitations on Amounts to Be Distributed to Holders of Allowed Insured
        Claims .......................................................................................................23
6.2.    Reinstatement and Continuation of Insurance Policies ..............................23
6.3.    Insurance Neutrality...................................................................................23

ARTICLE VII. TREATMENT OF DISPUTED CLAIMS
7.1.    Objections to Claims; Prosecution of Disputed Claims..............................24
7.2.    Distributions on Account of Disputed Claims ...........................................24
7.3.    Settlement of Claims..................................................................................25

ARTICLE VIII. DISTRIBUTIONS
8.1.    Distributions under the Plan ......................................................................25
8.2.    Timing of Distributions under the Plan .....................................................25
8.3.    Allowed Claims .........................................................................................25
8.4.    Class 4 Administrator ................................................................................25
8.5.    Record Date ...............................................................................................26
8.6.    Manner of Payment under the Plan............................................................26
8.7.    Fractional Distributions .............................................................................26
8.8.    Setoffs .......................................................................................................26
8.9.    Distribution of Unclaimed Property...........................................................26
8.10.   Administrative/Priority Claims Reserve. Establishment and Amount ..................27

ARTICLE IX. CONDITIONS PRECEDENT

    9.1.    Conditions Precedent to the Effective Date ........................................27

    9.2.    Effect of Failure of Conditions to Effective Date ..............................28

ARTICLE X. EFFECT OF CONFIRMATION

    10.1.   Vesting of Assets ...............................................................................28

    10.2.   Title to Assets; Discharge of Liabilities............................................28

    10.3.   Binding Effect ...................................................................................29

    10.4.   Claims Extinguished .........................................................................29

    10.5.   Discharge of Claims and Termination of Equity Interests................29

    10.6.   Injunction .........................................................................................29

    10.7.   Term of Injunctions or Stays.............................................................30

    10.8.   Injunction Against Interference With Plan of Reorganization ...........30

    10.9.   Exculpation ......................................................................................30

    10.10.  Releases............................................................................................31

    10.11.  Government Releases.........................................................................31

    10.12.  Indemnification Obligations. ............................................................31

    10.13.  Preservation of Rights of Action by the Debtors and the Reorganized Debtor ..............................................................................32

ARTICLE XI. EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    11.1.   Assumption of Executory Contracts and Unexpired Leases...............32

    11.2.   Rejection of Executory Contracts and Unexpired Leases...................33

    11.3.   Claims Arising from Rejection, Termination or Expiration ...............33

    11.4.   Insurance Policies and Agreements ..................................................34

    11.5.   Assumption of Utility Service Agreements ........................................34

    11.6.   Treatment of Compensation and Benefit Programs...........................34

    11.7.   Obligations to Indemnify or Provide Advancement to Directors, Officers and Employees ....................................................................35

    11.8.   Contracts and Leases Entered Into After the Petition Date ...............35

    11.9.   Management Agreements ..................................................................35

ARTICLE XII. RETENTION OF JURISDICTION

ARTICLE XIII. MISCELLANEOUS PROVISIONS

    13.1.   Modification of the Plan ...................................................................37

    13.2.   Payment of Statutory Fees ................................................................37

    13.3.   Rights of Action................................................................................37

    13.4.   Dissolution of Creditors' Committee.................................................37

    13.5.   Notices .............................................................................................37

    13.6.   Headings ..........................................................................................40

    13.7.   Severability ......................................................................................40

    13.8.   Governing Law .................................................................................41

    13.9.   Plan Supplement/Exhibits/Schedules................................................41

    13.10.  Compliance with Tax Requirements..................................................41

    13.11.  Exemption from Transfer Taxes ........................................................41

    13.12.  Expedited Determination of Postpetition Taxes ................................41

13.13.  Sections 1125 and 1126 of the Bankruptcy Code ...................................................41

13.14.  Time ........................................................................................................................41

185125/001-1888895.11

## EXHIBIT LIST

| | | |
|---|---|---|
| Exhibit | A | Existing Letters of Credit |
| Exhibit | B | Reorganized Debtor Initial Board of Directors |
| Exhibit | C | Reorganized  Debtor Management Incentive Plan Terms and Conditions |
| Exhibit | D | Reorganized Debtor Management Agreement Terms and Conditions, as Modified on Assumption |
| Exhibit | E | Investment Agreement |

185125/001-1888895.11

## DEBTORS' PLAN OF REORGANIZATION
## UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

The Weck Corporation, West Weck, LLC, GraciousHome.com LLC, and Weck Chelsea, LLC (the "Debtors") hereby propose the following chapter 11 plan pursuant to section 1121(a) of the Bankruptcy Code:

## ARTICLE I.

## DEFINITIONS

**A.    Defined Terms.**  As used herein, the following terms shall have the respective meanings specified below:

1.1.    ***503(b)(9) Claim***.  503(b)(9) Claim means a Claim asserted against the Debtors pursuant to section 503(b)(9) of the Bankruptcy Code.

1.2.    ***Administrative Expense Claim***.  Administrative Expense Claim means any Claim constituting a cost or expense of administration in the Debtors' Chapter 11 Cases under section 503 of the Bankruptcy Code, including, without express or implied limitation, any actual and necessary costs and expenses of preserving the Estate of any Debtor, any expenses of professionals under sections 330 and 331 of the Bankruptcy Code, any actual and necessary costs and expenses of operating the businesses of any Debtor, any indebtedness or obligations incurred or assumed by any Debtor, as Debtor in Possession, in connection with the conduct of its business or for the acquisition or lease of property or the rendition of services, any allowed compensation or reimbursement of expenses under section 503(b)(2)-(6) of the Bankruptcy Code, any Claim of the DIP Lender or the Pre-Petition Lender arising in respect of adequate protection payments under or in connection with the DIP Financing Order, the Professional Fee Claim, any Cure Amount Claim and any 503(b)(9) Claim.

1.3.    ***Administrative Expense Creditor***.  Administrative Expense Creditor means any Creditor entitled to payment of an Administrative Expense Claim.

1.4.    ***Administrative Expense Objection Deadline***.  Administrative Expense Objection Deadline means the first Business Day that is thirty (30) days after the Effective Date, as such date may be extended from time to time by order of the Bankruptcy Court.

1.5.    ***Administrative/Priority Claims Reserve***.  Administrative/Priority Claims Reserve means the reserve established pursuant to Section 8.10 of the Plan.

1.6.    ***Affiliate***.  Affiliate means, as to any Person, any other Person which, directly or indirectly, controls, or is controlled by, or is under common control with, such Person (for this purpose "control" (including, with its correlative meanings, "controlled by" and "under common control with") shall mean the possession, directly or indirectly, of the power to direct or cause the direction of management or policies of a Person, whether through the ownership of securities or partnership or other ownership interests, by contract or otherwise).

1.7.    ***Allowed***.  Allowed means:

(a)     With respect to any Claim (other than an Administrative Expense Claim), proof of which was filed within the applicable period of limitation fixed in accordance with Bankruptcy Rule 3003(c)(3) by the Bankruptcy Court, (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, such Claim to the extent asserted in the proof of such Claim, or (ii) as to which an objection has been interposed, such Claim to the extent that it has been allowed in whole or in part by a Final Order.

(b)     With respect to any Claim (other than an Administrative Expense Claim), as to which no proof of claim was filed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or a Final Order, such Claim to the extent that it has been listed in the Schedules as liquidated in amount and not disputed or contingent.

(c)     With respect to any Claim that is asserted to constitute an Administrative Expense Claim:

(i)     that represents an actual or necessary expense of preserving the Estate or operating the business of any Debtor, including for payment of goods, services, wages, or benefits or for credit extended to any Debtor, as a Debtor in Possession, any such Claim to the extent that such claim is reflected as a postpetition liability of any Debtor on such Debtor's books and records maintained in the ordinary course of business as of the Effective Date;

(ii)     in an action against any Debtor pending as of the Confirmation Date, any such Claim to the extent (x) it is allowed by a final order of a court of competent jurisdiction or by agreement between the Reorganized Debtor and the holder of such Administrative Expense Claim, and (y) if any Debtor disputes that such claim is a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code, to the extent the Bankruptcy Court determines by a Final Order that it constitutes a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code;

(iii)     any such Claim filed to the extent (x) no objection is interposed by the Administrative Expense Objection Deadline or (y) if an objection is interposed by the Administrative Expense Objection Deadline, is allowed in whole or in part by a Final Order and only to the extent that such allowed portion is deemed, pursuant to a Final Order, to constitute a cost or expense of administration under sections 503(b) and 507(a)(1) of the Bankruptcy Code; or

(iv)     that represents a Claim of a professional person employed under section 327, 328 or 1103 of the Bankruptcy Code that is required to apply to the Bankruptcy Court for the allowance of compensation and reimbursement of expenses pursuant to section 330 of the Bankruptcy Code or an Administrative Expense Claim arising under section 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 503(b)(6) of the Bankruptcy Code, such Claim to the extent it is allowed by a Final Order.

1.8.    ***Allowed Amount***.  Allowed Amount means the lesser of (a) the dollar amount of an Allowed Claim or (b) the Estimated Amount of such Claim.  Unless otherwise specified herein or by Final Order, the Allowed Amount of an Allowed Claim shall not include interest accruing on such Allowed Claim from and after the Commencement Date, provided, however, Allowed Amount of the Pre-Petition Loan Facility Claim shall mean the dollar amount of the Allowed Claim (and not an Estimated Amount of such Claim) and shall include interest to the extent permitted under Bankruptcy Code Section 506(b).

1.9.    ***Assumed Liabilities***.  Assumed Liabilities has the meaning set forth in the Investment Agreement.

1.10.    ***Auction***.  Auction has the meaning set forth in the Bidding Procedures Order.

1.11.    ***Available Cash***.  Available Cash means all cash and cash equivalents on the balance sheet of the Debtors as of the Effective Date but immediately prior to the Investment by the Investor, less amounts necessary to fund the Administrative/Priority Claims Reserve.

1.12.    ***Ballot***.  Ballot means the form or forms distributed to holders of Impaired Claims on which the acceptance or rejection of the Plan is to be indicated.

1.13.    ***Bankruptcy Code***.  Bankruptcy Code means the Bankruptcy Reform Act of 1978, as amended, and as codified in title 11 of the United States Code, as applicable to the Chapter 11 Cases.

1.14.    ***Bankruptcy Court***.  Bankruptcy Court means the United States Bankruptcy Court for the Southern District of New York, having jurisdiction over the Chapter 11 Cases and, to the extent of any reference made pursuant to section 157 of title 28 of the United States Code, the unit of such District Court constituted pursuant to section 151 of title 28 of the United States Code.

1.15.    ***Bankruptcy Rules***.  Bankruptcy Rules means the Federal Rules of Bankruptcy Procedure, as amended, as applicable to the Chapter 11 Cases, including the Local Rules of the Bankruptcy Court.

1.16.    ***Bar Date***.  Bar Date means the applicable bar date by which a proof of Claim or a request for payment of Administrative Claim must be or must have been filed, in accordance with the procedures established by an order of the Bankruptcy Court, including the Bar Date Order and the Confirmation Order.

1.17.    ***Bar Date Order***.  Bar Date Order means the order of the Bankruptcy Court establishing certain Bar Dates for filing proofs of Claim in the Chapter 11 Case, as the same may be amended, modified or supplemented.

1.18.    ***Bidding Procedures Order***.  Bidding Procedures Order means that certain Order Pursuant to Sections 105(a), 363 and 503(b) of the Bankruptcy Code and Bankruptcy Rule 6004(h) Approving Bidding Procedures and Notice of the Auction Relating Thereto and Granting Related Relief, dated as of September 8, 2010 [Docket No. ____].

1.19. ***Business Day***.  Business Day means any day other than a Saturday, a Sunday, or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order.

1.20. ***By-Laws***.  By-Laws means the by-laws of the Debtors or Reorganized Debtor as amended and restated, if necessary.

1.21. ***Cash***.  Cash means lawful currency of the United States of America.

1.22. ***Chapter 11 Cases***.  Chapter 11 Cases means the cases under chapter 11 of the Bankruptcy Code commenced by the Debtors on August 10, 2010 pending in the Bankruptcy Court as In re Weck Corporation, et al., Case No. 10-14349 (AJG) (Jointly Administered).

1.23. ***Claim***.  Claim means a "claim," as defined in section 101(5) of the Bankruptcy Code, against any Debtor.

1.24. ***Claims Agent***.  Claims Agent means The Garden City Group, Inc., the Debtors' claims and noticing agent appointed by the Bankruptcy Court by Final Order dated August 17, 2010.

1.25. ***Claims Objection Deadline***.  Claims Objection Deadline means, for all Claims and Interests, the later of (a) one hundred and twenty (120) days after the Effective Date, (b) such other period as set forth in a Final Order by the Bankruptcy Court for objecting to such Claim or Interest, or (c) sixty (60) days after a proof of Claim or request for payment of a Claim is filed with the Bankruptcy Court and served in accordance with the Bankruptcy Rules.

1.26. ***Class***.  Class means any group of Claims or Equity Interests classified by the Plan pursuant to section 1122(a)(1) of the Bankruptcy Code.

1.27. ***Class 4 Administrator***.  Class 4 Administrator means the Person selected by the Investor (with the consent of Creditors' Committee, which consent shall not be unreasonably withheld), to make the Distributions of the Class 4 Gift required to be made under the Plan, and to file objections to Class 4 Claims, to the extent provided in Section 7.1(b) of the Plan, and to deal with administrative and other matters pertaining to the closing of the Chapter 11 Cases as set forth more fully in Section 7.1(c) of the Plan.

1.28. ***Class 4 Distribution Pool***.  Class 4 Distribution Pool shall be that fund established on the Effective Date by the Class 4 Gift to be used to make distributions to Class 4 Creditors, Professionals retained by the Creditors' Committee and the Class 4 Administrator under the terms of, to the extent of and in accordance with the provisions of this Plan.

1.29. ***Class 4 Gift***.  Class 4 Gift means a sum not to exceed $1,000,000 less any amounts paid or payable during the Chapter 11 Cases to Professionals retained by the Creditors' Committee and any amounts payable hereunder to the Class 4 Administrator, to be directed from proceeds otherwise available to the Pre-Petition Lender to be used to fund the Class 4 Distribution Pool, under the terms of, to the extent of and in accordance with the provisions of this Plan.

1.30.  **Commencement Date**.  Commencement Date means August 13, 2010.

1.31.  **Confirmation Date**.  Confirmation Date means the date on which the Confirmation Order has been entered on the docket by the Clerk of the Bankruptcy Court.

1.32.  **Confirmation Hearing**.  Confirmation Hearing means the hearing to be held by the Bankruptcy Court in respect of the confirmation of the Plan.

1.33.  **Confirmation Order**.  Confirmation Order means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.34.  **Contingent Claim**.  Contingent Claim means any Claim, the liability for which attaches or is dependent upon the occurrence or happening, or is triggered by, an event, which event has not yet occurred, happened, or been triggered, as of the date on which such Claim is sought to be estimated or an objection to such Claim is filed, whether or not such event is within the actual or presumed contemplation of the holder of such Claim and whether or not a relationship between the holder of such Claim and the applicable Debtor now or hereafter exists or previously existed.

1.35.  **Creditor**.  Creditor means any Person that holds an Allowed Claim.

1.36.  **Creditors' Committee**.  Creditors' Committee means the Official Committee of Unsecured Creditors appointed pursuant to section 1102(a) of the Bankruptcy Code in the Chapter 11 Cases.

1.37.  **Cure Amount Claim**.  Cure Amount Claim means a Claim based upon the Debtors' defaults pursuant to an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed, or assumed and assigned, by the Debtors under section 365 of the Bankruptcy Code.  For the avoidance of doubt, the Cure Amount Claim set forth in a previous Final Order of the Bankruptcy Court for any Executory Contract or Unexpired Lease that was assumed, or assumed and assigned is and shall be the sole and single satisfaction for any and all Claims arising under such Executory Contract or Unexpired Lease through the date that the Executory Contract or Unexpired Lease was assumed.

1.38.  **Debtors**.  Debtors has the meaning set forth in the preamble hereof.

1.39.  **Debtor in Possession**.  Debtor in Possession means each Debtor in its capacity as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

1.40.  **Deficiency Claim**.  Deficiency Claim means a General Unsecured Claim for the difference between (a) the aggregate amount of an Allowed Claim and (b) the value received on account of the portion of such Allowed Claim that is a Secured Claim.

1.41.  **DIP Agreement**.  DIP Agreement means that certain Debtor in Possession Loan and Security Agreement dated as of August 13, 2010, in the amount of $3,425,000, made by the DIP Lender in favor of the Debtors and approved by the DIP Financing Order.

1.42.    ***DIP Claim***.  DIP Claim means the Claim of the DIP Lender arising under the DIP Agreement and the DIP Financing Order.

1.43.    ***DIP Financing Orders***.  DIP Financing Orders means that certain Interim and Final Order Under 11 U.S.C. §§ 105, 363, 364(c)(1) & (2), and 364(e), Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors To Obtain Post-Petition Financing On Superpriority and Secured Basis, (II) Permitting the Use of Cash Collateral, (III) Granting Interim Relief, and (IV) Scheduling a Final Hearing Under Fed. R. Bankr. P. 4001(c), dated as of August 18, 2010 and September 8, 2010 [Docket Nos. 38 and ___], including any and all modifications or amendments thereto or extensions thereof.

1.44.    ***DIP Lender***.   DIP Lender means NewAlliance Bank, acting through its NewAlliance Finance Operating Division, together with its successors and assigns, in its capacity as lender under the DIP Agreement.

1.45.    ***Disallowed Claim***.  Disallowed Claim means a Claim or a portion of a Claim that is disallowed by an order of the Bankruptcy Court or such other court of competent jurisdiction.

1.46.    ***Disclosure Statement***.  Disclosure Statement means the disclosure statement related to the Plan filed with and approved by the Bankruptcy Court, as such disclosure statement may be amended, modified or supplemented.

1.47.    ***Disputed Claim***.  Disputed Claim means any Claim (including any Administrative Expense Claim) against any Debtor, proof of which was timely and properly filed, which is disputed under the Plan or as to which the Debtors have interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.  A Claim that is disputed by the Debtors as to its amount only shall be deemed Allowed in the amount the Debtors admit owing, if any, and disputed as to the excess.

1.48.    ***Distribution***.  Distribution means the payment or distribution under the Plan of property or interests in property to the holders of Allowed Claims.

1.49.    ***Distribution Date***.  Distribution Date means each of (a) the Initial Distribution Date, (b) the first Business Day after the end of the months of March and September, commencing with the first such date to occur after the Effective Date, and (c) the Final Distribution Date.

1.50.    ***Effective Date***.   Effective Date means a Business Day on or after the Confirmation Date selected by the Debtors, the Exit Financing Lender and the Investor on which (a) all of the conditions precedent to the effectiveness of the Plan specified in Section 9.1 have been satisfied or waived and (b) no stay of the Confirmation Order is in effect.

1.51.    ***Equity Interest***.  Equity Interest means the interests of any holder of an equity security of any of the Debtors represented by any issued and outstanding shares of common stock or preferred stock, or any membership interest, trust interest or other instrument evidencing

a present ownership interest in any of the Debtors, including any option, warrant, or right, contractual or otherwise, to acquire any such interest.

1.52.   *Estate*.  Estate means the estate of each Debtor as created under section 541 of the Bankruptcy Code upon the commencement of the Chapter 11 Cases.

1.53.   *Estimated Amount*.  Estimated Amount means the estimated dollar value of an Unliquidated Claim, Disputed Claim or Contingent Claim pursuant to section 502(c) of the Bankruptcy Code or as otherwise agreed to between the holder of such Claim and the applicable Debtor or Reorganized Debtor or as otherwise determined by the Bankruptcy Court.

1.54.   *Excluded Assets*.  Excluded Assets has the meaning set forth in the Investment Agreement.

1.55.   *Executory Contract*.  Executory Contract means a contract to which any of the Debtors are a party that is or was subject to assumption or rejection under section 365 of the Bankruptcy Code during the Chapter 11 Case.

1.56.   *Exhibit*.  Exhibit means an exhibit to the Plan.

1.57.   *Existing Equity*.  Existing Equity means the Equity Interest of each of the Debtors authorized pursuant to its certificate of incorporation or other organizational documents, as in effect immediately prior to the Effective Date.

1.58.   *Exit Financing Arrangement*.  Exit Financing Arrangement means the exit debt financing to be provided to the Investor on the Effective Date pursuant to that certain Credit Facility Letter dated August 9, 2010 from the Exit Financing Lender for a new senior secured loan on terms and conditions set forth therein.

1.59.   *Exit Financing Lender*.  Exit Financing Lender means NewAlliance Bank, acting through its NewAlliance Finance Operating Division, together with its successors and assigns pursuant to assignments made in accordance with the applicable terms of any Exit Financing Arrangement, individually or collectively as the context may require, solely in their capacity as such.

1.60.   *Existing Letters of Credit*.  Existing Letters of Credit means, collectively, the letters of credit described on Exhibit A annexed hereto, all as amended or modified from time to time, and all documents entered into in connection therewith.

1.61.   *Existing Management Team*.  Existing Management Team means Wekselbaum, Jordan Smilowitz, James Linsalata, Thomas Shull and Paul Jen.

1.62.   *Fee Order*.  Fee Order means the Order Pursuant to Sections 105(a) and 331 of the Bankruptcy Code and Bankruptcy Rule 2016(a) Establishing Procedures for Interim Monthly Compensation and Reimbursement of Expenses of Professionals entered by the Bankruptcy Court on September 1, 2010.

1.63.    **Final Distribution Date**.  Final Distribution Date means a date on or after the Initial Distribution Date and after all Disputed Claims have become either Allowed Claims or Disallowed Claims that is selected by the Reorganized Debtor or the Class 4 Administrator (as applicable), each  in their respective discretion but, in any event, is no later than thirty (30) days thereafter, or such later date as the Bankruptcy Court may establish, upon request by the Reorganized Debtor for cause shown.

1.64.    **Final Fee Application**.  Final Fee Application means an application for final allowance of the Professional's aggregate Professional Fee Claim as described in Section 2.2.2(a).

1.65.    **Final Order**.  Final Order means an order or judgment of the Bankruptcy Court entered by the Clerk of the Bankruptcy Court on the docket in the Chapter 11 Cases, which has not been reversed, vacated, or stayed, and as to which (a) the time to appeal, petition for certiorari, or move for a new trial, reargument, or rehearing has expired, and as to which no appeal, petition for certiorari, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (b) if an appeal, writ of certiorari, new trial, reargument, or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or certiorari shall have been denied, or a new trial, reargument, or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for certiorari or move for a new trial, reargument, or rehearing shall have expired; provided, however, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules, may be filed relating to such order shall not cause such order to not be a Final Order.

1.66.    **General Unsecured Claim**.  General Unsecured Claim means a Claim, including any Deficiency Claim, Insured Claim, Reclamation Claim or Rejection Claim, that is not entitled to priority or administrative status under the Bankruptcy Code and is not a Secured Claim.  For the avoidance of doubt, any Administrative Claim, Cure Amount Claim, 503(b)(9) Claim, Priority Tax Claim, Priority Non-Tax Claim or Secured Claim is not a General Unsecured Claim.

1.67.    **Guaranty**.  Guaranty means the Guaranty Agreement, dated as of June 11, 2007, by Wekselbaum in respect of the obligations of the borrowers under the Pre-Petition Loan.

1.68.    **Guaranty Claim**.  Guaranty Claim means any rights to the payment of damages, claims, causes of action, charges, suits, demands, defaults, rights of recovery, assessments, rights of set-off or rights of recoupment arising under or relating to the Guaranty (whether relating to the Pre-Petition Loan Facility and whether paid prior to or following the Effective Date) as a result of the commencement of any of the Chapter 11 Cases.

1.69.    **Impaired**.  Impaired means, with respect to any Class of Claims or Equity Interests, a Claim or Equity Interest that is impaired within the meaning of section 1124 of the Bankruptcy Code.

1.70.    **Initial Distribution Date**.  Initial Distribution Date means a date after the Effective Date that is selected by the Reorganized Debtor or the Class 4 Administrator (as

applicable) each in their respective discretion but, in any event, is no later than five (5) days after the Effective Date, or such later date as the Bankruptcy Court may establish upon request by the Reorganized Debtor, for cause shown.

1.71. **_Insured Claim_**.  Insured Claim means any Claim (other than a Workers' Compensation Claim) arising from an incident or occurrence alleged to have occurred prior to the Effective Date that is covered under an insurance policy applicable to the Debtors or their businesses that is subject to the provisions of Article VI.

1.72. **_Internal Revenue Code_**.  Internal Revenue Code means the Internal Revenue Code of 1986, as amended from time to time, and any applicable rulings, Treasury Regulations, judicial decisions, and notices, announcements, and other releases of the United States Treasury Department or the IRS.

1.73. **_Investment_**.  Investment means the investment that is to be made by the Investor as further described in Section 5.2 hereof.

1.74. **_Investment Agreement_**.  Investment Agreement means the agreement dated August 11, 2010 by and among the Debtors and the Investor, a copy of which is annexed hereto as Exhibit "E".

1.75. **_Investor_**.  Investor means GH Acquisition, LLC, a newly formed entity wholly owned entity collectively by (a) Meredian Acquisition Ventures, LLC, and (b) (prospectively) Wekselbaum, under the terms of and acting in accordance with the provisions of the Investment Agreement and the Reorganized Debtor Operating Agreement.

1.76. **_IRS_**.  IRS means the United States Internal Revenue Service.

1.77. **_Landlord Settlement_**.  Landlord Settlement means the agreement on terms of resolution of claims and rights of the Debtors and the landlord of any Unexpired Lease, as memorialized and approved in any Landlord Settlement Approval Order.

1.78. **_Landlord Settlement Amount_**.  Landlord Settlement Amount means any amount fixed under a Landlord Settlement Approval Order.

1.79. **_Landlord Settlement Approval Order_**.  Landlord Settlement Approval Order means that Order of the Bankruptcy Court approving Stipulation and Agreement between the Debtors and any landlord of an Unexpired Lease.

1.80. **_Other Secured Claim_**.  Other Secured Claim means any Secured Claim, except that neither the Pre-Petition Loan Facility Claim nor the DIP Claim shall be treated as an Other Secured Claim.

1.81. **_Person_**.  Person means an individual, corporation, partnership, limited liability company, association, joint stock company, joint venture, estate, trust, unincorporated organization, government or any political subdivision thereof, or any other entity (as defined in section 101(5) of the Bankruptcy Code) or group.

1.82.  **Plan**.  Plan means this plan of reorganization under chapter 11 of the Bankruptcy Code, including the Plan Documents, the Plan Supplement, and the Exhibits to the Plan annexed hereto, as the same may be amended or modified from time to time in accordance with the provisions of the Bankruptcy Code and the terms of this Plan, which amendments shall be reasonably acceptable to the Investor, the Pre-Petition Lender, the DIP Lender and the Exit Lender.

1.83.  **Plan Documents**.  Plan Documents means the documents to be executed, delivered, assumed, and/or performed in conjunction with the consummation of the Plan on the Effective Date.

1.84.  **Plan Support Agreement**.  Plan Support Agreement means that certain Restructuring and Plan Support Agreement entered into among Shull, Meredian Acquisition Ventures LLC, Wekselbaum, the Pre-Petition Lender and the Debtors on August 11, 2010.

1.85.  **Plan Supplement**.  Plan Supplement means the compilation of documents and forms of documents, schedules and exhibits, each in form and substance reasonably acceptable to the Investor, to be filed on or before the date that is six (6) days prior to the last day on which votes to accept or reject the plan are accepted and which may be amended from time to time until the Confirmation Date.

1.86.  **Pre-Petition Lender**.  Pre-Petition Lender means the holder of the Pre-Petition Loan, together with such Person's predecessors, successors, assigns and present and former Affiliates (whether by operation of law or otherwise) and subsidiaries.

1.87.  **Pre-Petition Loan Facility**.  Pre-Petition Loan Facility means the Modified and Extended Secured Non-Revolving Credit Note and Agreement dated February 16, 2010 in favor of Manufacturers and Traders Trust Company or its assignee and other agreements, documents and instruments referred to therein or at any time executed and/or delivered in connection therewith or related thereto, as assigned to NewAlliance Bank pursuant to Note Assignment Agreement dated August 11, 2010.

1.88.  **Pre-Petition Loan Facility Claim**.  Pre-Petition Loan Facility Claim means the Secured Claim of the Pre-Petition Lender under the Pre-Petition Loan Facility.

1.89.  **Pre-Petition Loan Facility Reduction Amount**.  Pre-Petition Loan Facility Reduction Amount means that sum in the amount of $2,969,471 otherwise payable to the Pre-Petition Lender in respect of the Pre-Petition Loan Facility Claim, which sum shall be used (a) to fund payments and distributions to Administrative Claims and Priority Non-Tax Claims (b) to fund the Administrative/Priority Claims Reserve, (c) to fund any Landlord Settlement Claims, (d) to make the Class 4 Gift, and (e) to make capital infusions into the Reorganized Debtor necessary to establish feasibility under Bankruptcy Code Section 1129(a)(11), with any balance of which Pre-Petition Loan Facility Reduction Amount to be transferred to the Reorganized Debtor on the Effective Date as Available Cash.

1.90.  **Priority Claim**.  Priority Claim means any Claim to the extent such claim is entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, other than an Administrative Expense Claim or Priority Tax Claim.

185125/001-1888895.11

1.91.     ***Priority Non-Tax Claim.***     Priority Non-Tax Claim means any Priority Claim other than a Priority Tax Claim.

1.92.     ***Priority Tax Claim***.     Priority Tax Claim means an unsecured Claim of a governmental unit of a kind specified in section 507(a)(8) of the Bankruptcy Code.

1.93.     ***Professional***.     Professional means any professional employed in the Chapter 11 Case pursuant to sections 327, 328, or 363 of the Bankruptcy Code or any professional or other entity seeking compensation or reimbursement of expenses in connection with the Chapter 11 Case pursuant to section 503(b)(4) of the Bankruptcy Code.

1.94.     ***Professional Fee Claim***.     Professional Fee Claim means an Administrative Claim under sections 330(a), 331, or 503 of the Bankruptcy Code for compensation of a Professional or other entity for services rendered or expenses incurred in the Chapter 11 Case.

1.95.     ***Pro Rata Share***.     Pro Rata Share means with respect to Allowed Claims, the ratio (expressed as a percentage) of the amount of an Allowed Claim in a Class to the aggregate amount of all Allowed Claims in the same Class (or applicable Classes).

1.96.     ***Purchased Assets***.     Purchased Assets has the meaning set forth in the Investment Agreement.

1.97.     ***Reclamation Claim***.     Reclamation Claim means a Claim for reclamation in accordance with section 546(c) of the Bankruptcy Code and/or section 2-702 of the Uniform Commercial Code or other applicable state law.     Reclamation Claims shall be treated under the Plan as General Unsecured Claims.

1.98.     ***Record Date***.     Record Date means the date to be established by the Bankruptcy Court for purposes of determining those holders of allowed claims that are entitled to vote to accept or reject this Plan.

1.99.     ***Recovery Actions***.     Recovery Actions means, collectively and individually, any and all actions, proceedings, accounts, controversies, agreements, promises, claims, and rights of the Debtors and their Estates to avoid or recover a transfer of property of any of the Estates or an interest of any of the Debtors in property, including, without limitation, actions arising under sections 506, 510, 541, 542, 544, 545, 548, 549, 550 and 553 of the Bankruptcy Code and any other applicable federal or common law, including fraudulent transfers, whether or not litigation has been commenced with respect to such Recovery Action as of the Effective Date.

1.100.     ***Rejection Claim***.     Rejection Claim means a Claim arising from the rejection of an Executory Contract or Unexpired Lease pursuant to section 365 of the Bankruptcy Code.     All such Claims shall be subject to the limitations set forth in sections 502(b)(6) and 502(b)(7) of the Bankruptcy Code and state law mitigation requirements, if any.

1.101.     ***Released Parties***.     Released Parties means (a) the Debtors, (b) the Reorganized Debtor, (c) each member of the Creditors' Committee, but solely in its capacity as such, and not individually, (d) the Investor, (e) Wekselbaum and the Wekselbaum Family Interests, (f) Shull, (g) the Exit Financing Lender, (h) the Pre-Petition Lender, (i) the DIP Lender, (j) Triton, and (k)

any present or former director, manager, officer, member, equity holder (and their respective Affiliates), employee, agent, financial advisor, partner, Affiliate, attorney, other professional advisor or representative (and their respective Affiliates) of the persons or parties described in clauses (a) through (k) hereof or of any Affiliate thereof.

1.102. ***Reorganized Debtor***.  Reorganized Debtor means the Investors from and after the Effective Date and confirmation of this Plan in accordance with the provisions hereof, and its successors.

1.103. ***Reorganized Debtor Management Incentive Plan***.  Reorganized Debtor Management Incentive Plan means that certain Management Incentive Plan to be entered into between the Reorganized Debtor and the Existing Management Team.

1.104. ***Reorganized Debtor Operating Agreement***.  Reorganized Debtor Operating Agreement means the Operating Agreement of the Reorganized Debtor.

1.105. ***Schedules***.  Schedules means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtors with the Bankruptcy Court on August __, 2010, as required by section 521 of the Bankruptcy Code and the Official Bankruptcy Forms of the Bankruptcy Rules, as such schedules and statements have been and may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009.

1.106. ***Secured Claim***.  Secured Claim means any Claim (except the DIP Claim) to the extent reflected in the Schedules or a proof of claim as a secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.107. ***Securities Act***.  Securities Act means the Securities Act of 1933, as amended.

1.108. ***Shull***.  Shull means Thomas Shull.

1.109. ***Stipulation of Amount and Nature of Claim***.  Stipulation of Amount and Nature of Claim means a stipulation or other agreement between the Debtors or Reorganized Debtor and a holder of a Claim or Interest establishing the Allowed amount or nature of such Claim or Interest that is (a) entered into in accordance with any Claim settlement procedures established in these Chapter 11 Cases, (b) permitted or contemplated by the Plan, or (c) approved by order of the Bankruptcy Court.

1.110. ***Tax***.  Tax means (a) any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority; or (b) any liability for payment of any amounts of the foregoing types as a result of being a member of an affiliated, consolidated, combined or unitary group, or being a party to any agreement or arrangement whereby liability for payment of any such amounts is determined by reference to the liability of any other entity.

1.111. **_Treasury Regulations_**.  Treasury Regulations means regulations (including temporary and proposed) promulgated under the Internal Revenue Code of 1986, as amended from time to time.

1.112. **_Triton_**.  Triton means Triton Equities Partners LLC and its employees and representatives.

1.113. **_Unexpired Lease_**.  Unexpired Lease means a lease to which the Debtors is a party that is or was subject to assumption or rejection under section 365 of the Bankruptcy Code during the Chapter 11 Case.

1.114. **_Unimpaired_**.  Unimpaired means, with respect to a Class of Claims, a Claim that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

1.115. **_U.S. Trustee_**.  U.S. Trustee means the United States Trustee for the Southern District of New York.

1.116. **_Unliquidated Claim_**.  Unliquidated Claim means any Claim, the amount of liability for which has not been fixed, whether pursuant to agreement, applicable law, or otherwise, as of the date on which such Claim is sought to be estimated.

1.117. **_Utilities Order._**  Utilities Order means that certain Order Pursuant to Sections 105(a) and 366 of the Bankruptcy Code (I) Prohibiting Utilities from Altering, Refusing, or Discontinuing Service, (II) Deeming Utilities Adequately Assured of Future Payment, and (III) Establishing Procedures for Determining Adequate Assurance of Payment entered by the Bankruptcy Court on September 1, 2010 [Docket No.__]

1.118. **_VNO_**.  VNO means Vornado Realty Trust.

1.119. **_VNO Lease_**.  VNO Lease means that certain lease for commercial space located at 1133 Third Avenue, New York, New York, proposed to be entered into between VNO, as landlord, and the Reorganized Debtor, as tenant, on the Effective Date, substantially on the terms and conditions set forth in a term sheet available to parties who otherwise qualify for receipt thereof under the Bidding Procedures Order.

1.120. **_Voting Deadline_**.  Voting Deadline means the deadline for voting on the Plan fixed by the Bankruptcy Court, or such later date fixed by the Debtors with the approval of the Investor, such approval not to be unreasonably withheld.

1.121. **_Wekselbaum_**.  Wekselbaum means Natan Wekselbaum.

1.122. **_Wekselbaum Family Interests_**.  Wekselbaum Family Interests means those certain interests in the Debtors held by Wekselbaum, his spouse, Nancy Wekselbaum, children Caroline and Charles Wekselbaum, the 2003 Trust f/b/o Caroline Wekselbaum, the 2003 Trust f/b/o Charles Wekselbaum, the Trustees of such 2003 Trusts, and in any other capacity.

1.123. **_Workers' Compensation Claim_**.  Workers' Compensation Claim means a Claim held by a current or former employee of the Debtors for workers' compensation insurance

coverage under the workers' compensation laws applicable in the particular state in which the employee is or was employed by the Debtors.

**B.** *Other Terms*. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, the feminine, and the neuter. The words "herein," "hereof," "hereto," "hereunder," and others of similar import refer to the Plan as a whole and not to any particular section, subsection, or clause contained in the Plan. An initially capitalized term used herein that is not defined herein shall have the meaning ascribed to such term, if any, in the Bankruptcy Code, unless the context shall otherwise require.

**C.** *Exhibits*. All exhibits to the Plan are annexed hereto. All Plan Documents to be included in exhibits to the Plan Supplement shall be contained in a separate Plan Supplement exhibit volume, which shall be filed with the Clerk of the Bankruptcy Court not later than the date that is ten (10) days prior to the last date on which votes to accept or reject the Plan are accepted. Such Plan Supplement exhibit volume may be inspected in the office of the Clerk of the Bankruptcy Court during normal hours of operation of the Bankruptcy Court. Such Plan Supplement exhibit volume shall also be available for download from the following website: http://www.gardencitygroup.com. Holders of Claims may also obtain a copy of such Plan Supplement exhibit volume, once filed, from the Debtors by a written request sent to the following address:

The Garden City Group, Inc.
105 Maxess Road
Melville, NY 11747-3836
Attention: Jeffery Stein
Karen Petriano
email: GraciousHomeinfo@gcginc.com

**ARTICLE II.**

**PAYMENT OF ADMINISTRATIVE
EXPENSE CLAIMS AND PRIORITY TAX CLAIMS**

2.1. *Payment of Administrative Claims*.

(a) *Administrative Claims in General.* Except as specified in Sections 2.1(b) through 2.1(c) of the Plan and subject to the bar date provisions contained in Section 2.2, unless otherwise agreed to by the holder of an Administrative Claim and the Debtors or Reorganized Debtor (or with respect to Triton, as may be otherwise provided in the order authorizing its retention), each holder of an Allowed Administrative Claim shall receive Cash in an amount equal to the Allowed Administrative Claim, in full satisfaction of its Allowed Administrative Claim, on account of such Allowed Claim from the Reorganized Debtor either (i) if the Administrative Claim is Allowed as of the Effective Date, on the Initial Distribution Date or (ii) if the Administrative Claim is not Allowed as of the Effective Date, on the next Interim Distribution Date as set forth in Section 8.3 after an order allowing such Administrative Claim

becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the Reorganized Debtor and the holder of the Administrative Claim.

(b)     *Ordinary Course Liabilities.*  Allowed Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of their business shall be satisfied by the Reorganized Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims, without any further action by the holders of such Administrative Claims or further approval of the Bankruptcy Court.

(c)     *DIP Claims.*  On the Effective Date, any Allowed Administrative Claim that is a DIP Claim shall receive Cash in an amount equal to the Allowed DIP Claim in full satisfaction of its Allowed Claim.

2.2.     ***Bar Dates for Administrative Claims.***

(a)     *General Bar Date Provisions.*  Except as otherwise provided in Section 2.3, unless previously filed, requests for payment of Administrative Claims (except for Professional Fee Claims) for the period of August 13, 2010 through the Effective Date, must be filed and served on the Reorganized Debtor and, prior to the Effective Date, the Creditors' Committee, pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order, no later than thirty (30) days after the Effective Date.  Except with respect to Triton as may be otherwise provided in the order authorizing its retention, holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by the applicable Bar Date shall be forever barred from asserting such Administrative Claims against the Debtors, the Reorganized Debtor or their respective property and such Administrative Claims shall be deemed discharged as of the Effective Date.  Objections to such requests must be filed and served on the requesting party, the Reorganized Debtor and, prior to the Effective Date, the Creditors' Committee, by the Claims Objection Deadline.

2.3.     ***Bar Dates for Certain Administrative Claims.***

(a)     *Professional Compensation.*  Except with respect to Triton as may be otherwise provided in the order authorizing its retention, Professionals or other Entities asserting a Professional Fee Claim for services rendered from the Petition Date to the Effective Date must file with the Bankruptcy Court and serve on the Reorganized Debtor and such other Entities who are designated by the Bankruptcy Rules, the Confirmation Order, the Fee Order or other order of the Bankruptcy Court a Final Fee Application no later than forty-five (45) days after the Effective Date; provided, however, that any professional who may receive compensation or reimbursement of expenses pursuant to the Ordinary Course Professionals Order may continue to receive such compensation and reimbursement of expenses for services rendered from the Petition Date to the Effective Date, without further Bankruptcy Court review or approval, pursuant to the Ordinary Course Professionals Order.  A Professional may include any outstanding, non-filed monthly or interim request for payment of a Professional Fee Claim pursuant to the Fee Order in its Final Fee Application.  Objections to any Final Fee Application must be filed with the Bankruptcy Court and served on the requesting party, the Reorganized Debtor, counsel for the Reorganized Debtor, and, prior to the Effective Date, the Creditors'

Committee within thirty (30) days after the filing of the applicable Final Fee Application. To the extent necessary, the Confirmation Order or any other order with respect to a Final Fee Application shall amend and supersede any previously entered order of the Bankruptcy Court, including the Fee Order, regarding the payment of Professional Fee Claims. Any pending, filed interim requests for a Professional Fee Claim pursuant to the Fee Order shall be resolved in the ordinary course in accordance with the Fee Order or, if sooner, in connection with the particular Professional's Final Fee Application.

   (b) *Ordinary Course Liabilities.* Holders of Administrative Claims based on liabilities incurred by the Debtors in the ordinary course of its business shall not be required to file or serve any request for payment of such Administrative Claims. Such Administrative Claims shall be satisfied pursuant to Section 2.1(b).

   (c) *DIP Claims.* Holders of Administrative Claims that are DIP Claims shall not be required to file or serve any request for payment of such Claims. Such Administrative Claims shall be satisfied pursuant to Section 2.1(c).

   2.4. ***Payment of Priority Tax Claims***.

   (a) *Priority Tax Claims.* Pursuant to section 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed by the holder of a Priority Tax Claim and the Debtors or Reorganized Debtor, each holder of an Allowed Priority Tax Claim shall receive (i) Cash in an amount equal to the Allowed Priority Tax Claim, in full satisfaction of its Allowed Priority Tax Claim either (A) if the Priority Tax Claim is Allowed as of the Effective Date, on the Initial Distribution Date or (B) if the Priority Tax Claim is not Allowed as of the Effective Date, on the next Interim Distribution Date as set forth in Section 8.3 after an order allowing such Priority Tax Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the Reorganized Debtor and the holder of the Priority Tax Claim; or (ii) over a period ending not later than five (5) years after the Petition Date with a total Cash value equal to the Allowed amount of the Priority Tax Claim.

   (b) *Other Provisions Concerning Priority Tax Claims.* Notwithstanding the provisions of Section 2.4(a), any Claim on account of any penalty arising with respect to or in connection with an Allowed Priority Tax Claim that does not compensate the holder for actual pecuniary loss shall be treated as a General Unsecured Claim, and the holder (other than as the holder of a General Unsecured Claim) may not assess or attempt to collect such penalty from the Reorganized Debtor or its property.

# ARTICLE III.

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

   The following table designates the classes of Claims against and Interests in the Debtors and specifies which of those classes are impaired or unimpaired by the Plan and entitled to vote to accept or reject the Plan in accordance with section 1126 of the Bankruptcy Code or deemed to reject the Plan.

| Class | Designation | Impairment | Entitled to Vote |
|-------|-------------|------------|------------------|
| Class 1 | Pre-Petition Loan Facility Claim | Impaired | Yes |
| Class 2 | Other Secured Claims | Unimpaired | No (deemed to accept) |
| Class 3 | Priority Non-Tax Claims | Unimpaired | No (deemed to accept) |
| Class 4 | General Unsecured Claims | Impaired | Yes |
| Class 5 | Landlord Settlement Claim | Impaired | Yes |
| Class 6 | Interests | Impaired | No (deemed to reject) |

3.1.    ***Class 1 Claims (Pre-Petition Loan Facility Claim).***

(a)    *Impairment and Voting.*  Class 1 is impaired by the Plan.  The holder of the Pre-Petition Loan Facility Claim is entitled to vote to accept or reject the Plan.

(b)    *Distributions.*  The holder of an Allowed Pre-Petition Lender Secured Claim in Class 1 shall receive on the Effective Date (i) Cash in an amount equal to the Allowed Claim less an amount equal to the Allowed Pre-Petition Loan Facility Reduction Amount, or (ii) such treatment as mutually agreeable among the holder of such Allowed Claim, the Debtors and the Investor.

3.2.    ***Class 2 Claims (Other Secured Claims).***

(a)    *Classification*:  Class 2 consists of the Other Secured Claims.

(b)    *Treatment*:  On the Effective Date, or as soon thereafter as practicable, each holder of an Allowed Other Secured Claim shall receive, on account of its Claim against the Debtors, one of the following distributions: (i) the payment of such holder's Allowed Other Secured Claim in full in cash; (ii) the sale or disposition proceeds of the property securing any Allowed Other Secured Claim to the extent of the value of its interest in such property; (iii) the surrender to the holder of any Allowed Other Secured Claim of the property securing such Claim; or (iv) such other distributions as shall be necessary to satisfy the requirements of chapter 11 of the Bankruptcy Code.  The manner and treatment of each Allowed Other Secured Claim shall be determined by the Debtors with the Investor's consent and transmitted in writing to the holder of such Other Secured Claim prior to the Effective Date of the Plan.

(c)    *Voting*:  Class 2 is Unimpaired.  The holders of Other Secured Claims in Class 2 are deemed to accept the Plan and, accordingly, are not entitled to vote to accept or reject the Plan.

3.3.    ***Class 3 Claims (Priority Non-Tax Claims).***

(a)    *Impairment and Voting.*  Class 3 is unimpaired by the Plan.  Each holder of a Priority Non-Tax Claim is conclusively presumed to have accepted the Plan and is not entitled to vote to accept or reject the Plan.

(b)    *Distributions.*  Each holder of an Allowed Priority Non-Tax Claim in Class 3 shall receive Cash in an amount equal to the Allowed Priority Non-Tax Claim, in full

185125/001-1888895.11

satisfaction of its Allowed Priority Non-Tax Claim, unless the holder of such Claim agrees to less favorable treatment either (a) if the Priority Non-Tax Claim is Allowed as of the Effective Date, on the Initial Distribution Date or (b) if the Priority Non-Tax Claim is not Allowed as of the Effective Date, on the next Interim Distribution Date as set forth in Section 8.3 after an order allowing such Priority Non-Tax Claim becomes a Final Order or a Stipulation of Amount and Nature of Claim is executed by the Reorganized Debtor and the holder of the Priority Non-Tax Claim, unless otherwise agreed by the holder of a Priority Non-Tax Claim and the Debtors or Reorganized Debtor.

3.4. ***Class 4 Claims (General Unsecured Claims)***.

(a) *Impairment and Voting.* Class 4 is impaired by the Plan. Each holder of a General Unsecured Claim is entitled to vote to accept or reject the Plan.

(b) *Distributions.* Each holder of an Allowed General Unsecured Claim shall receive payments in Cash of its Pro Rata Share of the Class 4 Distribution Pool, in full satisfaction of its Allowed General Unsecured Claim, unless the holder of such Claim agrees to less favorable treatment either (i) if the General Unsecured Claim is Allowed as of the Effective Date, on the Initial Distribution Date or (ii) if the General Unsecured Claim is not Allowed as of the Effective Date, on the next Interim Distribution Date as set forth in Section 8.3. The Class 4 Administrator shall make an initial distribution from the Class 4 Distribution Pool to holders of Allowed General Unsecured Claims on the Initial Distribution Date. The Class 4 Administrator shall be authorized to make such reserves from the Class 4 Distribution Pool as are necessary and appropriate (A) to fund estimated amounts payable to the Professionals retained by the Creditors Committee and the Class 4 Administrator, and (B) to provide for amounts otherwise payable on account of the Pro-Rata Share of any Disputed General Unsecured Claims. As Disputed General Unsecured Claims are resolved or amounts are otherwise made available, the Class 4 Administrator shall make one or more additional distributions, as necessary.

(c) *Non-Consensual Confirmation:* In the event that Class 4 rejects the Plan, the Debtors reserve the right to seek to confirm the Plan under section 1129(b) of the Bankruptcy Code, and, in such event, the Debtors reserve the right, pursuant to Sections 4.3 and 13.1 hereof, to alter, amend or modify the Plan, with the consent of the Investor, the DIP Lender, the Pre-Petition Lender and the Exit Lender to (i) eliminate any provision for the funding of the Class 4 Distribution Pool, (ii) otherwise offer different treatment to Class 4, to the extent that the Debtors determine that such modifications are necessary or appropriate to comply with the requirements of section 1129(b) of the Bankruptcy Code or (iii) provide for distribution of any or all of the Class 4 Gift solely to those holders of claims who vote to accept the Plan.

3.5. ***Class 5 Claims (Landlord Settlement Claim 5)***.

(a) *Impairment and Voting.* Class 5 is impaired by the Plan. Each holder of the Landlord Settlement Claim is entitled to vote to accept or reject the Plan.

(b) *Distributions.* A Landlord Settlement Claim in Class 5 shall be treated as an Administrative Claim and/or General Unsecured Claim in the reduced Landlord Settlement Amount and shall be paid in accordance with the Landlord Settlement Approval Order.

3.6. ***Class 6 Interests (Interests).***

(a) *Impairment and Voting.* Class 6 is impaired by the Plan. Each holder of an Interest is conclusively presumed to have rejected the Plan.

(b) *Distributions.* No distribution shall be made under the Plan on account of the Interests. On the Effective Date, Interests in the Debtors shall be deemed cancelled and extinguished.

# ARTICLE IV.

## ACCEPTANCE, REJECTION, AND REVOCATION
## OR WITHDRAWAL OF THE PLAN

4.1. ***Classes Entitled to Vote***. Each holder of a Claim, as of the Record Date, in an Impaired Class, other than those Classes that are deemed to reject the Plan, shall be entitled to vote to accept or reject the Plan, in its sole and absolute discretion, subject to applicable law.

4.2. ***Acceptance by Class of Claims***. An Impaired Class of Claims shall be deemed to accept the Plan if (a) holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept the Plan and (b) the holders (other than any holder designated under section 1126(e) of the Bankruptcy Code) of more than one half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

4.3. ***Nonconsensual Confirmation***. In the event that any Class of Claims entitled to vote shall not accept the Plan by the requisite statutory majority required by section 1129(a) of the Bankruptcy Code, the Debtors, with the consent of the Investor, reserve the right to (a) request that the Bankruptcy Court confirm the Plan in accordance with section 1129(b) of the Bankruptcy Code with respect to such non-accepting Class, in which case the Plan shall constitute a motion for such relief, or (b) alter, amend or modify the Plan in accordance with Section 13.1 hereof.

4.4. ***Revocation or Withdrawal***.

(a) ***Right to Revoke or Withdraw***. The Plan may be revoked or withdrawn prior to the Confirmation Date (i) by the Debtors (with the consent of the DIP Lender, such consent not to be unreasonably withheld), in their discretion or at the discretion of the Investor, in the event that the Investment Agreement is terminated in accordance with Section 12 thereof, and (ii) in all other circumstances, by the Debtors (with the consent of the DIP Lender, such consent not to be unreasonably withheld), with the consent of the Investor, in its sole discretion.

(b) ***Effect of Withdrawal or Revocation***. If the Plan is revoked or withdrawn prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall be deemed to constitute a waiver or release of any claims or defenses or any admission or statement against interest by any Debtor, the Creditors' Committee, the Investor or any other Person or to prejudice in any manner the rights of the Debtors, the

Creditors' Committee, the Investor or any Person in any further proceedings involving any Debtor.

4.5.    ***Amendment of Plan Documents***.  From and after the Effective Date, the authority to amend, modify, or supplement the Plan Supplement, the Exhibits to the Plan Supplement and the Exhibits to the Plan and any documents attached to such Plan Supplement, Exhibits to the Plan Supplement and Exhibits to the Plan shall be as provided in such Plan Supplement, Exhibits to the Plan Supplement and Exhibits to the Plan and their respective attachments.

4.6.    ***Removal of Debtors***.  At the option of the Investor, with the consent of the Debtors and the consent of the DIP Lender, which consents shall not be unreasonably withheld, a Debtor may be removed from this Plan.  In such event, the Plan will omit any treatment of the assets and liabilities of such Debtor, unless otherwise agreed.  The removal of any Debtor from this Plan will not affect this Plan with respect to any other Debtor.

## ARTICLE V.

## IMPLEMENTATION OF THE PLAN

5.1.    ***Substantive Consolidation***.    The Plan is premised upon the substantive consolidation of the Debtors solely for purposes of voting, confirmation and distribution.  On and after the Effective Date (i) all assets and liabilities of the Debtors shall be treated for purposes of the Plan as though they were merged, (ii) all guarantees of the Debtors of payment, performance or collection of obligations of any other of the Debtors shall be eliminated and cancelled, (iii) all joint obligations of two or more of the Debtors and all multiple Claims against such entities on account of such joint obligations, shall be considered a single Claim against the Debtors, (iv) all intercompany claims and obligations between one Debtor and any of the other Debtors, including as a result of the rejection of any executory contract or unexpired lease, shall be eliminated, extinguished and cancelled, and (v) any Claim filed against any of the Debtors shall be deemed filed against the consolidated Debtors and shall be one Claim against and a single obligation of the consolidated Debtors.   Except as otherwise provided in the Plan or the Restructuring Transactions (a) all property of each Debtor shall vest in the Reorganized Debtor, free and clear of all Claims, Liens, encumbrances, charges or other interests and (b) each Debtor shall continue to exist after the Effective Date as a separate corporate entity, limited liability company, partnership or other form, as the case may be, with all the powers of a corporation, limited liability company, partnership or other form, as the case may be, pursuant to the applicable law in the jurisdiction in which each applicable Debtor is incorporated or formed and pursuant to the respective certificate of incorporation and bylaws (or other formation documents) in effect before the Effective Date.

5.2.    ***Creation of the Reorganized Debtor***.

(a)    On the Effective Date, the Debtors shall convey and transfer to the Reorganized Debtor, subject to the provisions of the Plan, all of the Debtors' interest in the Purchased Assets, which conveyance and transfer (i) shall exclude specifically the Excluded Assets and the Class 4 Gift, and (ii) shall be free and clear of all liens, claims and encumbrances other than the Assumed Liabilities.  The Debtors and the Reorganized Debtor, as the case may

be, will execute all notes and loan documents provided for in the Plan and will make all distributions required to be made by such entities under the Plan on account of the treatment accorded to the various Classes of Allowed Claims (with the Class 4 Administrator making distributions to Class 4 Claimants).

(b)     On the Effective Date, the Investor shall make the Investment by means of a cash contribution to the Reorganized Debtors of Thirteen Million Four Hundred and Twenty-Five Thousand ($13,425,000) Dollars, in exchange for which cash contribution, the Investor shall receive one hundred (100%) percent of the various issued and outstanding equity interests in the Reorganized Debtor .

(c)     On the Effective Date, the Class 4 Gift will be transferred to the Class 4 Administrator for administration for the benefit of the Class 4 Claimants and amounts payable, if any, to the Professionals retained by the Creditors' Committee and the Class 4 Administrator.

5.3.     ***Directors and Officers of the Reorganized Debtor.***  Subject to any requirement of Bankruptcy Court approval pursuant to section 1129(a)(5) of the Bankruptcy Code, the initial members of the board of directors of the Reorganized Debtor shall be set forth on Exhibit B  The initial officers of the Reorganized Debtor will consist of the officers of the Debtors immediately prior to the Effective Date.  Each such director and officer will serve from and after the Effective Date until his or her successor is duly elected or appointed and qualified or until the earlier of his or her death, resignation or removal in accordance with the terms of the Certificate of Formation and Operating Agreement of the Reorganized Debtor and state law.

5.4.     ***Reorganized Debtor Management Incentive Plan***.  On or after the Effective Date, the Recognized Debtor shall implement the Recognized Debtor Management Incentive Plan, substantially in accordance with the terms set forth on the Exhibit C, with interests in the Reorganized Debtor being available for issuance thereunder.  The Recognized Debtor shall allocate the benefit of the Recognized Debtor Management Incentive Plan to the executive officers and senior management of the Recognized Debtor for their management services, including the Existing Management Team.  The identity of recipients, amount of grants and other terms including, without limitation, vesting, will be determined by the Recognized Debtor.

5.5.     ***Effectuating Documents and Further Transactions***.  On or before the Effective Date, and without the need for any further order or authority, the Debtors shall file with the Bankruptcy Court or execute, as appropriate, such agreements and other documents that are in form and substance satisfactory to the Investor as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  Each of the officers of the Debtors, and the Reorganized Debtors is authorized, without the need for any further order or authority, to execute, deliver, file, or record such contracts, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Reorganized Debtors are authorized to execute all documents and enter into all agreements as may be necessary and appropriate in connection with any Exit Financing Arrangement.

5.6.     ***Allocation of Plan Distributions Between Principal and Interest***.  To the extent that any Other Secured Claim or Allowed General Unsecured Claim scheduled to receive a

Distribution under the Plan is comprised of indebtedness and accrued but unpaid interest thereon, such Distribution shall be allocated to the principal amount of the Claim (as determined for federal income tax purposes) first and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

5.7. ***Surrender and Cancellation of Instruments***. Each holder of an instrument evidencing a Claim shall surrender such instrument to the Reorganized Debtor. At the option of the Reorganized Debtors or the Class 4 Administrator, as applicable (in their reasonable discretion), no Distribution hereunder shall be made to or on behalf of any holder of such Claim unless and until such instrument is received or the unavailability of such instrument is reasonably established to the satisfaction of the Reorganized Debtor. In accordance with section 1143 of the Bankruptcy Code, any such holder of such a Claim that fails to surrender or cause to be surrendered such instrument or to execute and deliver an affidavit of loss and indemnity reasonably satisfactory to the Reorganized Debtor and, in the event that the Reorganized Debtor requests, fails to furnish a bond in form and substance (including, without limitation, amount) reasonably satisfactory to the Reorganized Debtor shall be deemed to have forfeited all rights, claims, and interests and shall not participate in any Distribution hereunder.

5.8. ***Letters of Credit***. At or prior to the Effective Date, in the Debtors' discretion, with the consent of the Investor (a) the Existing Letters of Credit and any cash collateral provided thereunder shall be transferred to the Reorganized Debtor, which shall maintain such Existing Letters of Credit in effect on or after the Effective Date, together with all such forms of insurance as are customary to operate a business of the size and type of the Debtors. Notwithstanding the foregoing, following satisfaction of the Pre-Petition Loan Facility Claim in accordance with the terms of the Plan, upon (a) receipt by the Pre-Petition Lender of any return of cash collateral from M&T Bank held in connection with various letters of credit issued by M&T Bank pre-petition, or (b) the extinguishment without draw of any collateral letter of credit issued by Pre-Petition Lender in favor of M&T Bank, the Pre-Petition Lender shall promptly turn over to the Reorganized Debtor an amount equal to such cash collateral remitted, or in the case of any extinguishment of any collateral letter of credit, an amount equal to the obligations extinguished.

5.9. ***Comprehensive Settlement of Claims and Controversies.*** Pursuant to Bankruptcy Rule 9019 and in consideration for the Distributions and other benefits provided under the Plan, the provisions of the Plan, including the releases set forth in Section 10.10, shall constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim or Interest may have with respect to any Claim, Interest, or any Distribution to be made pursuant to the Plan on account of any Allowed Claim or Interest. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, the Reorganized Debtor, and their respective property and Claim and Interest holders, and is fair, equitable and reasonable.

5.10. ***Releases and Satisfaction of Subordination Rights***. All Claims and rights between and among the Debtors and the holders of Claims relating in any manner whatsoever to any claimed subordination rights shall be deemed satisfied by the Distributions under, described

in, contemplated by, and/or implemented in Articles II and III of the Plan. Distributions under, described in, contemplated by, and/or implemented by the Plan to the various Classes of Claims and Interests hereunder shall not be subject to levy, garnishment, attachment, or like legal process by any holder of a Claim or Interest by reason of any claimed subordination rights or otherwise, so that each holder of a Claim or Interest shall have and receive the benefit of the Distributions in the manner set forth in the Plan.

## ARTICLE VI.

## SPECIAL PROVISIONS REGARDING INSURED
## CLAIMS AND INSURANCE POLICIES

6.1. ***Limitations on Amounts to Be Distributed to Holders of Allowed Insured Claims.*** Distributions under the Plan to each holder of an Allowed Insured Claim shall be in accordance with the treatment provided under the Plan for the Class in which such Allowed Insured Claim is classified, but solely to the extent that such Allowed Insured Claim is not satisfied from proceeds payable to the holder thereof under any pertinent insurance policies and applicable law. Nothing in this Section 6.1 shall constitute a waiver of any claims, obligations, suits, judgments, damages, demands, debts, rights, causes of action or liabilities that any entity may hold against any other entity, including the Debtors' insurance carriers.

6.2. ***Reinstatement and Continuation of Insurance Policies.*** From and after the Effective Date, the Debtors' insurance policies in existence as of the Effective Date shall be Reinstated and continued in accordance with their terms and, to the extent applicable, shall be deemed assumed by the Reorganized Debtor pursuant to section 365 of the Bankruptcy Code and Section 11.1.

6.3. ***Insurance Neutrality.***

(a) Notwithstanding anything to the contrary in the Plan, the Disclosure Statement or the Confirmation Order, nothing in the Plan, the Disclosure Statement or the Confirmation Order (including any other provision that purports to be preemptory or supervening), shall in any way operate to, or have the effect of, impairing the insurers' legal, equitable or contractual rights, if any, with respect to any claims. The rights of insurers shall be determined under the relevant insurance policies or insurance settlements, as applicable, and under applicable law.

(b) Nothing in the Plan, including the injunction, exculpation and release provisions contained in Sections 10.6 through 10.11, the Disclosure Statement or Confirmation Order shall preclude any entity from asserting in any proceeding any and all claims, defenses, rights or causes of action that it has or may have under or in connection with any insurance policy or any insurance settlement agreement. Nothing in the Plan, the Disclosure Statement or the Confirmation Order shall be deemed to waive any claims, defenses, rights or causes of action that any entity has or may have under the provisions, terms, conditions, defenses or exclusions contained in such insurance policy or insurance settlement agreements, nor shall such documents be construed as, or be a, determination as to coverage with respect to any Insured Claim under any applicable insurance policy.

(c)     The Plan, Disclosure Statement or Confirmation Order shall not (i) modify the coverage provided under the Debtors' insurance policies, (ii) alter in any way the obligations of the Debtors' insurers under the insurance policies, or (iii) in any way permit any holder of a Workers' Compensation Claim or Insured Claim to any duplicate recovery from the insurers and any other party including, but not limited to, the Debtors or the Reorganized Debtor.

## ARTICLE VII.

## TREATMENT OF DISPUTED CLAIMS

7.1.     *Objections to Claims; Prosecution of Disputed Claims*.

(a)     *The Reorganized Debtor.*   The Reorganized Debtor shall object to the allowance of Claims filed with the Bankruptcy Court with respect to which the Reorganized Debtors, as applicable, dispute liability in whole or in part and for which it is responsible for payment as provided in Article II and Article III.   All objections that are filed and prosecuted by the Reorganized Debtor as provided herein shall be litigated to Final Order by the Reorganized Debtor or settled by the Reorganized Debtor.   Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Reorganized Debtor to Claims shall be served and filed no later than ninety (90) days after the Effective Date.

(b)     *The Class 4 Administrator.*   The Class 4 Administrator shall object to the allowance of General Unsecured Claims filed with the Bankruptcy Court with respect to which the Class 4 Administrator disputes liability in whole or in part.   All objections that are filed and prosecuted by the Class 4 Administrator as provided herein shall be litigated to Final Order by the Class 4 Administrator or settled by the Class 4 Administrator.   Unless otherwise provided herein or ordered by the Bankruptcy Court, all objections by the Class 4 Administrator to General Unsecured Claims shall be served and filed no later than ninety (90) days after the Effective Date.

(c)     *Wind-Down*.  The Debtors, the Reorganized Debtor and the Class 4 Administrator shall cooperate in the wind down of the Debtors estates as will be set forth more fully in the Confirmation Order.

7.2.   *Distributions on Account of Disputed Claims*.   Notwithstanding hereof, a Distribution shall only be made by the Reorganized Debtor or the Class 4 Administrator, as applicable, to the holder of a Disputed Claim when, and to the extent that, such Disputed Claim becomes Allowed.   No interest shall be paid on account of Disputed Claims that later become Allowed except to the extent that payment of interest is required under section 506(b) of the Bankruptcy Code.   No Distribution shall be made with respect to all or any portion of any Disputed Claim pending the entire resolution thereof in the manner prescribed by Section 7.1 hereof.   From time to time after the Effective Date, on each Distribution Date after a Disputed Claim becomes an Allowed Claim or the Reorganized Debtor, or the Plan Administrator, as applicable, shall distribute to such holder the amount distributable to such Claim in accordance with the applicable sections of the Plan.   To the extent that all or a portion of a Disputed Claim is disallowed, the holder of such Claim shall not receive any distribution on account of the portion of such Claim that is disallowed.   To the extent that any funds remain reserved by the

Reorganized Debtor for payment of Allowed Claims after the final resolution of all Disputed Claims that are Administrative Expense Claims or Priority Claims (and all such Disputed Claims that are Administrative Expense Claims or Priority Claims that are subsequently Allowed are fully satisfied in accordance with the terms of the Plan), such funds shall revert to and be fully vested in the Reorganized Debtor, as applicable.  To the extent that any funds remain in the Class 4 Distribution Pool after the final resolution of all General Unsecured Claims that are Disputed Claims (and all such Disputed Claims that are subsequently Allowed are fully satisfied in accordance with the terms of the Plan), such funds shall be paid in further distribution to the holders of the General Unsecured Claims.

7.3.    ***Settlement of Claims***.  At any time after the Confirmation Date and before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtors may settle any or all of the Claims with the approval of the Bankruptcy Court pursuant to Bankruptcy Rule 9019.  After the Effective Date, the Reorganized Debtors or the Class 4 Administrator may, and shall have the exclusive right to, compromise and settle any Claims against them that they have agreed to pay or are required to pay pursuant to ARTICLE II and ARTICLE III and claims they have against another Person or entity, without notice to or approval from the Bankruptcy Court.

# ARTICLE VIII.

# DISTRIBUTIONS

8.1.    ***Distributions under the Plan***.  Whenever any Distribution to be made under this Plan shall be due on a day other than a Business Day, such Distribution shall instead be made, without interest, on the immediately succeeding Business Day, but shall be deemed to have been made on the date due.

8.2.    ***Timing of Distributions under the Plan***.  Except for Distributions made on the Initial Distribution Date, any Distribution to be made by any Debtor or the Class 4 Administrator or the Reorganized Debtors pursuant to the Plan shall be deemed to have been timely made if made within ten (10) days after the time therefore specified in the Plan.  No interest shall accrue or be paid with respect to any Distribution as a consequence of such Distribution not having been made on the Effective Date.

8.3.    ***Allowed Claims***.  On the Initial Distribution Date, each holder of an Allowed Claim shall receive the full amount of the Distributions that the Plan provides for Allowed Claims in the applicable Class. On each Interim Distribution Date, Distributions also shall be made to holders of Disputed Claims in any such Class that were Allowed during the preceding period since the Initial Distribution Date or the last Interim Distribution Date, as applicable, to the extent not distributed earlier at the sole discretion of the Reorganized Debtor, or the Class 4 Administrator, as may be applicable.

8.4.    ***Class 4 Administrator***.  Unless otherwise provided in the Plan, distributions under the Plan to Class 4 Creditors shall be made by the Class 4 Administrator.  All reasonable costs and expenses incurred by the Plan Administrator in carrying out its duties under the Plan shall be paid from the funds in the Class 4 Distribution Pool.  Any dispute regarding the payment of the fees and expenses of the Class 4 Administrator shall be determined by the Bankruptcy Court.

The Class 4 Administrator shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court, and, in the event that the Class 4 Administrator is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be paid from the funds in the Class 4 Distribution Pool.

8.5.  **_Record Date_**.  As of the close of business on the Record Date, the various transfer and claims registers for each of the Classes of Claims as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims.  The Debtors, the Class 4 Administrator and the Reorganized Debtors shall have no obligation to recognize any transfer of the Claims occurring after the close of business on the Record Date.  The Debtors and the Class 4 Administrator shall be entitled to recognize and deal hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable.

8.6.  **_Manner of Payment under the Plan_**.  Unless the Person receiving a payment agrees otherwise, any payment in Cash to be made by the Class 4 Administrator or the Reorganized Debtors shall be made, at the election of the Class 4 Administrator or the Reorganized Debtors (as the case may be), by check drawn on a domestic bank or by wire transfer from a domestic bank, provided that payments to the holder of the Pre-Petition Loan Facility Claim shall be paid by wire transfer .

8.7.  **_Fractional Distributions_**.  Fractional dollars shall be rounded down to the nearest whole dollar.

8.8.  **_Setoffs._**  Except with respect to claims of the Debtors or Reorganized Debtor released pursuant to the Plan or any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the Reorganized Debtor may, pursuant to section 553 of the Bankruptcy Code or applicable nonbankruptcy law, set off against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Claim (before any Distribution is made on account of such Claim) the claims, rights and causes of action of any nature that the Debtors or Reorganized Debtor may hold against the holder of such Allowed Claim; provided, however, that neither the failure to effect a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors or Reorganized Debtor of any claims, rights and causes of action that the Debtors or Reorganized Debtor may possess against the holder of such a claim.

8.9.  **_Distribution of Unclaimed Property_**.  Any Distribution under the Plan that is unclaimed after one hundred eighty (180) days following the date such property is distributed shall be deemed not to have been made and shall revert (a) in the case of an Administrative Claim or Priority Non-Tax Claim payable by the Debtors or the Reorganized Debtor, to the Reorganized Debtor; and (b) in the case of a General Unsecured Claim, to the Class 4 Distribution Pool for further distribution to the remainder of the holders of the Class 4 Claims, in both cases, free and clear of any claims or interests of any Entities, including, without express or implied limitation, any claims or interests of any governmental unit under escheat principles. Nothing contained herein shall affect the discharge of the Claim with respect to which such Distribution was made, and the holder of such Claim shall be forever barred from enforcing such

Claim against the Reorganized Debtor or the Debtors, or the assets, estate, properties, or interests in property of the Debtors or the Reorganized Debtor.

8.10. ***Administrative/Priority Claims Reserve***. *Establishment and Amount.* On the Effective Date, the Reorganized Debtor shall establish the Administrative/Priority Claims Reserve. The amount of the Administrative/Priority Claims Reserve shall be determined by the Debtors, subject to the reasonable consent of the DIP Lender (with the consent of the Investor, such consent not to be unreasonably withheld), and shall be the sum of (a) estimated accrued and unpaid Administrative Expense Claims (excluding (I) any payments of amounts paid or payable to Professionals retained by the Creditors Committee or the Class 4 Administrator under Section 3.4 from the Class 4 Distribution Pool, (II) items of the type referred to in clause (c)(i) of the definition of "Allowed," (III) any payments relating to Change in Control Agreements referred to in the Investment Agreement arising as a result of the occurrence of the Effective Date, and (IV) any severance payments that the Investor consents to or directs the Debtors to pay prior to the Effective Date), including, without limitation, amounts due to professionals as compensation or reimbursement of expenses, and (b) the estimated Priority Claims.

# ARTICLE IX.

# CONDITIONS PRECEDENT

9.1. ***Conditions Precedent to the Effective Date***. The occurrence of the Effective Date of the Plan is subject to the following conditions precedent:

(a) the Bankruptcy Court shall have entered a Confirmation Order with respect to the Plan in form and substance approved by the Investor, the Pre-Petition Lender, the DIP Lender and the Exit Lender, and such Confirmation Order shall be non-appealable, shall not have been appealed within fourteen (14) calendar days of entry or, if such Confirmation Order is appealed, shall not have been stayed pending appeal, and there shall not have been entered by any court of competent jurisdiction any reversal, modification or vacation, in whole or in part, of such Confirmation Order;

(b) all actions, documents, and agreements necessary to implement the Plan, including, without limitation, all actions, documents, and agreements necessary to implement the reorganization and the Investment described in Section 5.2, shall have been effected or executed;

(c) the Debtors shall have received all authorizations, consents, regulatory approvals, rulings, letters, no-action letters, opinions, or documents that are determined by the Debtors to be necessary to implement the Plan and that are required by law, regulation, or order;

(d) the Bankruptcy Court shall have approved any Landlord Settlement at or prior to the Confirmation Date; and

(e) all of the conditions to closing that are contained in Section 9 or 10.1 of the Investment Agreement shall have been satisfied or waived.

The conditions precedent specified above, with the exception of Section 9.1(a) may be waived in whole or in part by the Debtors, with the prior consent of the Investor and the DIP Lender.

Subject to the foregoing, any such written waiver of a condition precedent set forth in this Section 9.1 may be effected at any time, without notice, without leave or order of the Bankruptcy Court, and without any formal action other than proceeding to consummate the Plan. Any actions required to be taken on the Effective Date shall take place and shall be deemed to have occurred simultaneously, and no such action shall be deemed to have occurred prior to the taking of any other such action. If the Debtors decide that one of the foregoing conditions cannot be satisfied, and the occurrence of such condition is not waived in writing by the Debtors with the prior consent of the Investor and the DIP Lender, then the Debtors shall file a notice of the failure of the Effective Date with the Bankruptcy Court, at which time the Plan and the Confirmation Order shall be deemed null and void.

9.2. *Effect of Failure of Conditions to Effective Date*. If all the conditions to effectiveness and the occurrence of the Effective Date have not been satisfied or duly waived on or before the first Business Day that is more than 120 days after the Confirmation Date, or by such later date as is proposed by the Debtors (with the consent of the Investor and the DIP Lender, which shall not be unreasonably withheld), then upon motion by the Debtors (after consultation with the Investor and the DIP Lender) made before the time that all of the conditions have been satisfied or duly waived, the Confirmation Order will be vacated by the Bankruptcy Court; provided, however, that notwithstanding the filing of such a motion, the Confirmation Order will not be vacated if each of the conditions to consummation is either satisfied or duly waived before the Bankruptcy Court enters an order granting the relief requested in such motion. If the Confirmation Order is vacated pursuant to this Section 9.2, this Plan will be null and void in all respects, and (i) no distributions under the Plan shall be made, (ii) the Debtors and all holders of Claims and Equity Interests shall be restored to the status quo ante as of the day immediately preceding the Confirmation Date as though the Confirmation Date never occurred, (iii) the obligations of the Investor under the Investment Agreement will terminate, and (iv) all of the Debtors' obligations with respect to the Claims and Equity Interests shall remain unchanged and nothing contained herein shall be deemed to constitute a waiver or release of any claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any other entity in any further proceedings involving the Debtors.

## ARTICLE X.

## EFFECT OF CONFIRMATION

10.1. *Vesting of Assets*. Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all property of the Debtors, shall vest in the Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests, except as provided in the Plan. From and after the Effective Date, the Reorganized Debtor may operate the Debtors' business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

10.2. *Title to Assets; Discharge of Liabilities*. Except as otherwise provided in the Plan, on the Effective Date, title to all assets and properties and interests in property dealt with by the Plan shall vest in the Reorganized Debtor, the Plan Administrator, or the Administrative/Priority Claims Reserve, as provided in the Plan, free and clear of all Claims,

Equity Interests, Encumbrances, and other interests, and the Confirmation Order shall be a judicial determination of discharge of the liabilities of the Debtors arising prior to the Effective Date, except as may be otherwise provided in the Plan.

10.3. **_Binding Effect_**.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtors, the Reorganized Debtor, the Pre-Petition Lender, and any holder of a Claim against, or Equity Interest in, the Debtors and such holder's respective successors and assigns, whether or not the Claim or Equity Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

10.4. **_Claims Extinguished_**.  As of the Effective Date, any and all alter-ego or derivative claims accruing to the Debtors or Debtors in Possession against present or former officers, managers and directors of the Debtors who were officers, managers or directors of the Debtors at any time during the Chapter 11 Cases shall be extinguished whether or not then pending.

10.5. **_Discharge of Claims and Termination of Equity Interests_**.  Except as provided herein, the rights afforded in the Plan and the payments and distributions to be made hereunder shall discharge all existing debts and Claims, and shall terminate all Equity Interests, of any kind, nature, or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code.  Except as provided herein, upon the Effective Date, all existing Claims against the Debtors and Equity Interests in the Debtors shall be, and shall be deemed to be, discharged and terminated, and all holders of Claims and Equity Interests shall be precluded and enjoined from asserting against the Reorganized Debtor, their respective successors or assignees, or any of their respective assets or properties, any other or further Claim or Equity Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of Claim or proof of Equity Interest, and whether or not the facts or legal bases therefore were known or existed prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtors.

10.6. **_Injunction_**.  Except as otherwise expressly provided in the Plan, all Persons who have held, hold or may hold Claims or Equity Interests and all Persons who have held, hold or may hold claims or causes of action that have been released pursuant to Section 10.10 hereof or are subject to exculpation pursuant to Section 10.9 hereof, and all other parties in interest, including any participants in the Auction, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates, are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action, against the Debtors, the Reorganized Debtor or the Released Parties or any of their respective property or assets or any interest therein, (b) the enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree or order against the Debtors, the Reorganized Debtors or the Released Parties or any of their respective property or assets or any interest therein, (c) creating, perfecting, or enforcing any encumbrance of any kind against the Debtors, the Reorganized

Debtor or the Released Parties or any of their respective property or assets or any interest therein, or (d) asserting any right of setoff, subrogation or recoupment of any kind against any obligation due from the Debtors, the Reorganized Debtors, the Released Parties or against any of their respective property or assets, or any interest therein, with respect to any such Claim or Equity Interest, or such released or exculpated claim or cause of action. Such injunction shall be included in the Confirmation Order and shall extend to any successors of the Debtors, the Reorganized Debtor and the Released Parties and their respective properties and interest in properties.

10.7. **_Term of Injunctions or Stays_**. Unless otherwise provided, all injunctions or stays arising under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, other than injunctions issued pursuant to this Plan (including injunctions under Section 10.6), shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

10.8. **_Injunction Against Interference With Plan of Reorganization_**. Upon the entry of the Confirmation Order, all holders of Claims and Equity Interests and other parties in interest, along with their respective present or former employees, agents, officers, managers, directors, principals and Affiliates shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan.

10.9. **_Exculpation_**. Notwithstanding anything herein to the contrary, as of the Effective Date, none of (a) the Debtors or the Reorganized Debtor, (b) the Creditors' Committee (solely in their capacity as members of the Creditors Committee, and not individually) and any subcommittee thereof, (c) the Investor, (d) the accountants, financial advisors, investment bankers, agents and attorneys for the Debtors, (e) Meridian Acquisition Ventures LLC, (f) Wekselbaum, (g) the Wekselbaum Family Interests, (h) Shull, (i) the Pre-Petition Lender, (j) the DIP Lender, (k) the Exit Lender, (l) Triton, and (m) any direct or indirect present or former director, manager, officer, member, equity holder (and their respective Affiliates), employee, agent, financial advisor, partner, Affiliate, attorney, representative, agent other professional advisor or representative or member or owner (and their members, officers, directors, owners, employees, representatives or agents) (and their respective Affiliates) of the persons or parties described in clauses (a) through (m) of this Section 10.9 or of their respective Affiliates (but solely in their capacities as such) shall have or incur any liability for any claim, cause of action or other assertion of liability for any act taken or omitted to be taken since the Commencement Date in connection with, related to, or otherwise arising out of, the Chapter 11 Cases, the Auction, the formulation, negotiation, preparation, dissemination, implementation, confirmation, consummation, or administration of the Plan, property to be distributed under the Plan, or any other act or omission in connection with the Chapter 11 Cases, the Plan, the Disclosure Statement or, in each case, any contract, instrument, document or other agreement related thereto, including, without limitation, the Investment Agreement; provided, however, that the foregoing shall not affect the liability of any person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence; provided, further, that each Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, the above referenced documents, actions or inactions.

185125/001-1888895.11

10.10. **_Releases_**.  As of the Effective Date, and in consideration of (a) the services provided by the present and former directors, managers, officers, employees, Affiliates, agents, financial advisors, attorneys, and representatives of the Debtors who acted in such capacities after the Commencement Date; (b) the services of the Creditors' Committee (solely in their capacities as members of the Creditors Committee, and not individually) and their Affiliates; (c) the services provided by Triton; (d) the provision of any Exit Financing Arrangement by the Exit Financing Lender; (e) the substantial contribution of the Investor, and their Affiliates; and (f) the substantial contribution of the Pre-Petition Secured Lender, and the DIP Lender: (i) the Debtors or the Reorganized Debtors; and (ii) each holder of a Claim or Equity Interest that votes to accept the Plan, or is deemed to accept the Plan, or abstains from voting on the Plan, shall release unconditionally and forever each Released Party from any and all Claims, demands, causes of action and the like, relating to the Debtors existing as of the Effective Date or thereafter arising from any act, omission, event or other occurrence that occurred on or prior to the Effective Date; provided, however, that nothing in this Section 10.10 shall be construed as a release of any claims against any such Released Party resulting from an act or omission determined by a Final Order to have constituted willful misconduct or gross negligence, provided that each such Released Party shall be entitled to rely upon the advice of counsel concerning its duties pursuant to, or in connection with, its actions or inactions.

10.11. **_Government Releases_**.  Nothing in the Plan or the Confirmation Order shall effect a release of any claim by the United States Government or any of its agencies or any state and local authority whatsoever, including without limitation any claim arising under the Internal Revenue Code, securities laws, the environmental laws or any criminal laws of the United States or any state and local authority against the Released Parties other than the Debtors and the Reorganized Debtors, nor shall anything in the Plan or Confirmation Order enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Parties other than the Debtors and the Reorganized Debtors for any liability whatever, including without limitation any claim, suit or action arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state or local authority, nor shall anything in the Plan or Confirmation Order exculpate any of the Released Parties other than the Debtors and the Reorganized Debtors from any liability to the United States Government or any of its agencies or any state and local authority whatsoever, including any liabilities arising under the Internal Revenue Code, securities laws, environmental laws or any criminal laws of the United States or any state and local authority.

10.12. **_Indemnification Obligations_**.

(a)      Notwithstanding anything to the contrary herein, subject to the occurrence of the Effective Date, the obligations of the Debtors as provided in the Debtors' respective certificates of incorporation, bylaws, or other applicable organizational documents, other agreements or law as of the Commencement Date to indemnify, defend, reimburse, exculpate, advance fees and expenses to, or limit the liability of officers who were officers or employees of such Debtors at any time prior to the Effective Date, and who will be officers of the Debtors or the Reorganized Debtor from and after the Effective Date, against any claims, causes of action or obligations whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, shall survive confirmation of the Plan, remain unaffected thereby after the Effective

Date and not be discharged, irrespective of whether such indemnification, defense, advancement, reimbursement, exculpation or limitation is owed in connection with an event occurring before or after the Commencement Date.

(b)     As of the Effective Date, each Debtor's certificate of incorporation, bylaws or similar organizational documents or other agreement shall provide for the indemnification, defense, reimbursement, exculpation and/or limitation of liability of, and advancement of fees and expenses to, officers who were officers of such Debtor or any of its respective Affiliates at any time prior to the Effective Date and who will continue to be officers or employees of the Debtors or the Reorganized Debtor from and after the Effective Date at least to the same extent as the bylaws of such Debtor in effect on the Commencement Date, against any claims or causes of action whether direct or derivative, liquidated or unliquidated, fixed or contingent, disputed or undisputed, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, and none of the Debtors shall amend and/or restate its certificate of incorporation, bylaws or similar organizational document or other agreement before or after the Effective Date to terminate or materially adversely affect any of the Debtors' obligations or such officers' rights under this Section 10.12(b).

(c)     Any Claim based on the Reorganized Debtor's or the Debtors' obligations set forth in this Section 10.12 shall not be a Disputed Claim or subject to any objection in either case by reason of section 502(e)(1)(B) of the Bankruptcy Code.

10.13. ***Preservation of Rights of Action by the Debtors and the Reorganized Debtor***. Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, the Reorganized Debtor shall retain and may enforce, and shall have the sole right to enforce, any claims, demands, rights and causes of action that the Debtors or their Estate holds or may hold against any entity, including any Recovery Actions and any currently pending actions. The Reorganized Debtor or its successors may pursue such retained claims, demands, rights or causes of action, as appropriate, in accordance with the best interests of the Reorganized Debtor or its successors holding such claims, demands, rights or causes of action. Further, the Reorganized Debtor retains its right to file and pursue, and shall have the sole right to file and pursue, any adversary proceedings against any trade creditor or vendor related to debit balances or deposits owed to any Debtors. Notwithstanding the foregoing, on the Effective Date, the Reorganized Debtor shall be deemed to waive and release any actions arising under Section 547 of the Bankruptcy Code relating to any preference actions held by any Debtor or its Estate or any Reorganized Debtor against any entity.

## ARTICLE XI.

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1. ***Assumption of Executory Contracts and Unexpired Leases***. Any executory contracts or unexpired leases listed in the relevant Exhibit to the Plan Supplement (which Exhibit shall contain those contracts or unexpired leases identified by the Investor, in its sole discretion) or that have not been rejected by the Debtors with the approval of the Bankruptcy Court and that

are not the subject of pending motions to reject on the Confirmation Date, shall be deemed to have been assumed by the applicable Debtor and assigned to the Reorganized Debtor or its designee, at Investor's option, as of the Effective Date, and the Plan shall constitute a motion to assume and assign such executory contracts and unexpired leases. Subject to the occurrence of the Effective Date, entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such assumptions and assignments pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such assumption and assignment is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases. With respect to each such executory contract or unexpired lease assumed and assigned to the Reorganized Debtor, if applicable, unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, the dollar amount required to cure any defaults of the applicable Debtor existing as of the Confirmation Date shall be conclusively presumed to be the amount set forth in an Exhibit to the Plan Supplement with respect to such executory contract or unexpired lease. Unless otherwise provided by order of this Court, (including any Landlord Settlement Approval Order), subject to the occurrence of the Effective Date, any such cure amount shall be treated as an Allowed Administrative Expense Claim under the Plan, and, upon payment of such Allowed Administrative Expense Claim, all defaults of the applicable Debtor existing as of the Confirmation Date with respect to such executory contract or unexpired lease shall be deemed cured.

11.2. ***Rejection of Executory Contracts and Unexpired Leases***. Any executory contracts or unexpired leases of any Debtor that are set forth in the relevant Exhibit to the Plan Supplement (which Exhibit shall contain those contracts and unexpired leases identified by the Investor, in its sole discretion) shall be deemed to have been rejected by the applicable Debtor, and the Plan shall constitute a motion to reject such executory contracts and unexpired leases, and the Reorganized Debtor shall have no liability thereunder except as is specifically provided in the Plan. Entry of the Confirmation Order by the Clerk of the Bankruptcy Court shall constitute approval of such rejections pursuant to section 365(a) of the Bankruptcy Code and a finding by the Bankruptcy Court that each such rejected executory contract or unexpired lease is burdensome and that the rejection thereof is in the best interest of the Debtors, their estates, and all parties in interest in the Chapter 11 Cases.

11.3. ***Claims Arising from Rejection, Termination or Expiration***. Claims created by the rejection of executory contracts or unexpired leases (including, without limitation, the rejection provided in Section 11.2 hereof) or the expiration or termination of any executory contract or unexpired lease prior to the Confirmation Date must be filed with the Bankruptcy Court and served on the Debtors no later than thirty (30) days after (a) in the case of an executory contract or unexpired lease that was terminated or expired by its terms prior to the Confirmation Date, the Confirmation Date, (b) in the case of an executory contract or unexpired lease rejected by the Debtors, the entry of the order of the Bankruptcy Court authorizing such rejection, or (c) in the case of an executory contract or unexpired lease that is deemed rejected pursuant to Section 11.2 hereof, the Confirmation Date. Any rejection claim for which a proof of claim is not filed and served within the time provided herein will be forever barred from assertion and shall not be enforceable against the Debtors, their assets, properties, or interests in property, or the Reorganized Debtor or its estate, assets, properties, or interests in property. Unless otherwise ordered by the Bankruptcy Court, all such Claims that are timely filed as

provided herein shall be treated as General Unsecured Claims under the Plan and shall be subject to the provisions of Article VII of the Plan.

11.4.    ***Insurance Policies and Agreements***.  Notwithstanding anything contained in the Plan to the contrary, unless specifically rejected by order of the Bankruptcy Court, all of the Debtors' insurance policies and any agreements, documents or instruments relating thereto, are treated as executory contracts under the Plan of Reorganization and will be assumed by the applicable Debtor and assigned to Reorganized Debtor, at Investor's option, effective as of the Effective Date.  Nothing contained in this Section 11.4 shall constitute or be deemed a waiver of any cause of action that the Debtors may hold against any entity, including, without limitation, the insurer, under any of the Debtors' policies of insurance.

11.5.    ***Assumption of Utility Service Agreements***.  In the event that there is in effect between the Debtors and any utility immediately prior to the Effective Date, with respect to any operating facility of the Debtors, any utility service agreement or related agreement providing a reduced rate to the Debtors, which agreement has not been previously assumed, rejected or terminated, but is considered to be an executory contract, such agreement shall be deemed to be assumed pursuant to section 365 of the Bankruptcy Code and Section 11.1; <u>provided</u>, <u>however</u>, that no Cure Amount Claim shall be owed with respect to any such agreement, and in the event that a utility asserts any Cure Amount Claim, at the election of the Debtors, such utility's agreement shall not be deemed assumed and shall instead be deemed rejected pursuant to section 365 of the Bankruptcy Code under the Plan, <u>provided</u> <u>further</u> <u>however</u>, any amounts posted as adequate assurance pursuant to the Utilities Order will be released to the Reorganized Debtor.

11.6.    ***Treatment of Compensation and Benefit Programs***

(a)    ***Employee Compensation and Benefit Programs***.  Except to the extent (i) otherwise provided for in the Plan, (ii) previously assumed or rejected by an order of the Bankruptcy Court entered on or before the Confirmation Date, (iii) the subject of a pending motion to reject filed by the Debtors on or before the Confirmation Date, or (iv) previously terminated, all employee compensation and benefit programs of the Debtors in effect during the pendency of the Chapter 11 Case, including all health and welfare plans, 401(k) plans, pension plans within the meaning of Title IV of the Employee Retirement Income Security Act of 1974, as amended, and all benefits subject to sections 1114 and 1129(a)(13) of the Bankruptcy Code, entered into before or after the Petition Date and in effect during the pendency of the Chapter 11 Case, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are assumed and assigned pursuant to section 365 of the Bankruptcy Code and Section 11.1. Nothing contained herein shall be deemed to modify the existing terms of such employee compensation and benefit programs, including, without limitation, the Debtors' and the Reorganized Debtor's rights of termination and amendment thereunder.

(b)    ***Vacation Policies***.  The Debtors' existing vacation policies will be Reinstated on the Effective Date for any employees of the Debtors employed on the Effective Date that have not received a notice of termination prior to or on the Effective Date. Accordingly, those employees will be entitled to a Cash payment of earned but unused vacation time in the event of a subsequent termination of employment after the Effective Date, if such payment is in accordance with the vacation policies.

11.7.  ***Obligations to Indemnify or Provide Advancement to Directors, Officers and Employees.***  The obligations of the Debtors or Reorganized Debtor to indemnify or provide advancement to any Person serving as one of its directors, officers or employees prior to or following the Petition Date by reason of such Person's prior or future service in such capacity to the extent provided in the Certificate of Incorporation, By-Laws or similar constituent documents, by statutory law or by written agreement, policies or procedures of or with the Debtors, shall be deemed to be, and shall be treated as though they are, Executory Contracts that are assumed and assigned pursuant to section 365 of the Bankruptcy Code and Section 11.1. Accordingly, such indemnification and advancement obligations shall survive and be unaffected by entry of the Confirmation Order, irrespective of whether such indemnification or advancement is owed for an act or event occurring before or after the Petition Date.

11.8.  ***Contracts and Leases Entered Into After the Petition Date.***  Notwithstanding any other provisions of the Plan, contracts and leases entered into after the Petition Date by the Debtors, including any Executory Contracts and Unexpired Leases assumed by the Debtors, shall be performed by the Debtors or Reorganized Debtor in accordance with the terms and conditions of such contracts and leases in the ordinary course of its business; provided, however, that nothing in this paragraph shall affect the limitations on a Rejection Claim for a previously assumed nonresidential real property lease under section 503(b)(7) of the Bankruptcy Code. Accordingly, such contracts and leases and other obligations (including any assumed Executory Contracts and Unexpired Leases) shall survive and remain unaffected by entry of the Confirmation Order.

11.9.  ***Management Agreements***.  As of the Effective Date, all existing management agreements between the Debtors and the Existing Management Team will be assumed by the Debtors and assigned to  Reorganized Debtor, provided that such management agreements to be assumed and assigned (a) shall be modified or amended by modified agreements, which terms shall be sustainably as set forth in Exhibit D hereto, and (b) shall be assumed and assigned as modified or amended.  Entry of the Confirmation Order, subject to and upon the occurrence of the Effective Date, shall constitute the approval, pursuant to sections 365(a) and 1123 of the Bankruptcy Code, of the assumption or assumption and assignment, as applicable, of such agreements on the terms set forth in the Plan and Plan Supplement.

## ARTICLE XII.

## RETENTION OF JURISDICTION

Pursuant to sections 105(a) and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain and shall have exclusive jurisdiction over any matter (a) arising under the Bankruptcy Code, (b) arising in or related to the Chapter 11 Cases or the Plan, or (c) to perform any of the following actions:

12.1.  To hear and determine any and all motions or applications pending on the Confirmation Date for the assumption and/or assignment or rejection of executory contracts or unexpired leases to which any Debtor is a party or with respect to which any Debtor may be liable, and to hear and determine any and all Claims resulting therefrom or from the expiration or termination prior to the Confirmation Date of any executory contract or unexpired lease;

12.2.    To determine any and all adversary proceedings, applications, motions, and contested or litigated matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Debtor after the Effective Date, including, without express or implied limitation, any claims to avoid any preferences, fraudulent transfers, or other voidable transfers, or otherwise to recover assets for the benefit of the Debtors' estates;

12.3.    To hear and determine any objections to the allowance of Claims arising prior to the Effective Date, whether filed, asserted, or made before or after the Effective Date, including, without express or implied limitation, to hear and determine any objections to the classification of any Claim and to allow or disallow any Disputed Claim in whole or in part;

12.4.    To hear and determine any disputes relating to the distributions to holders of Allowed Claims as provided herein.

12.5.    To issue such orders in aid of execution of the Plan to the extent authorized or contemplated by section 1142 of the Bankruptcy Code;

12.6.    To consider any modifications of the Plan, remedy any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without express or implied limitation, the Confirmation Order;

12.7.    To hear and determine all applications for allowances of compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code and any other fees and expenses authorized to be paid or reimbursed under the Plan;

12.8.    To hear and determine all controversies, suits, and disputes that may relate to, impact upon, or arise in connection with the Plan (and all Exhibits to the Plan Supplement and Exhibits to the Plan) or its interpretation, implementation, enforcement, or consummation;

12.9.    To the extent that Bankruptcy Court approval is required, to consider and act on the compromise and settlement of any Claim or cause of action by or against any Debtor's Estate;

12.10.  To determine such other matters that may be set forth in the Plan or the Confirmation Order, or that may arise in connection with the Plan, the Disclosure Statement or the Confirmation Order;

12.11.  To hear and determine matters concerning state, local, and federal taxes, fines, penalties, or additions to taxes for which the Debtors, as Debtors or Debtors in Possession, may be liable, directly or indirectly, in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including any request for expedited determination under section 505(b)(2) of the Bankruptcy Code);

12.12.  To hear and determine all questions and disputes arising out of or relating to the Investment Agreement; and

12.13.  To enter an order or final decree closing the Chapter 11 Cases.

# ARTICLE XIII.

## MISCELLANEOUS PROVISIONS

13.1. ***Modification of the Plan***.  This Plan may be altered, amended or modified by the Debtors, upon the written consent of the Investor, the DIP Lender and the Exit Lender, before or after the Confirmation Date, as provided in section 1127 of the Bankruptcy Code.  A holder of an Allowed Claim that has accepted the Plan shall be deemed to have accepted the Plan as modified if the proposed modification does not materially and adversely change the treatment of the Claim of such holder.

13.2. ***Payment of Statutory Fees***.  All fees payable pursuant to section 1930 of title 28 of the United States Code, as determined by the Bankruptcy Court at the Confirmation Hearing, shall be paid by the Debtors on or before the Effective Date.

13.3. ***Rights of Action***.  Any rights, claims, or causes of action accruing to the Debtors pursuant to the Bankruptcy Code or pursuant to any statute or legal theory and any rights to, claims or causes of action for recovery under any policies of insurance issued to or on behalf of the Debtors shall remain assets of the Debtors' estates and, on the Effective Date, shall be transferred to the Reorganized Debtor.  The Reorganized Debtor shall be deemed the appointed representative to, and may, pursue, litigate, and compromise and settle any such rights, claims, or causes of action, as appropriate, in accordance with what is in the best interests of and for the benefit of the Reorganized Debtors.

13.4. ***Dissolution of Creditors' Committee***.  On the Effective Date, the Creditors' Committee shall be released and discharged of and from all further authority, duties, responsibilities, and obligations relating to and arising from and in connection with the Debtors' Chapter 11 Cases, and, except for the limited purpose of presenting final applications for fee and expenses, the Creditors' Committee shall be deemed dissolved; provided, however, (a) if the Effective Date occurs before the Confirmation Order becomes a Final Order, the Creditors' Committee may continue to exist and to serve for the purposes of pursuing any appeal of the Confirmation Order, and (b) if any adversary proceeding in which the Creditors' Committee is participating is pending as of the Effective Date, the Creditors' Committee may continue to exist for the limited purpose of litigating such adversary proceeding.

13.5. ***Notices***.  Any notices, requests, and demands required or permitted to be provided under the Plan, in order to be effective, shall be in writing (including, without express or implied limitation, by facsimile transmission), and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

(1)     If to the Debtors:

> Gracious Home
> 1220 Third Avenue
> New York, New York 10021
> Attention:     Jordan Smilowitz, COO

Email:   jsmilowitz@gracioushome.com
Telephone:
Facsimile:

with copies (which shall not constitute notice) to counsel for GH:

Rosanne T. Matzat, Esq.
Mark T. Power, Esq.
Hahn & Hessen LLP
488 Madison Avenue
New York, New York 10022
Email:   rmatzat@hahnhessen.com
Email:   mpower@hahnhessen.com
Telephone: 212.478.7200
Facsimile: 212.478.7400

And to special counsel for GH:

Drew Hazen, Esq.
The Law Offices of Andrew Hazen,
30 Glenn Street, Suite 301
White Plains, New York 10603
Email:   drew@drewslaw.com
Telephone: 914-761-0381
Facsimile: 914-948-3371

And the financial advisor to GH:

Triton Equity Partners, LLC
Attention: Robert L. Pressman
      Chief Executive Officer
81 Newtown Lane, Suite 351
East Hampton, New York 11937
Email: rpressman@tritonequity.com
Telephone: 631-613-6655
Facsimile: 631-613-6659

(2) if to the Creditors' Committee, to:

[_____]
Attention:
Email:
Telephone:
Facsimile:

with copies (which shall not constitute notice) to:

[_____]
Attention:
Email:
Telephone:
Facsimile:

(3)     if to Investor, to:

GH Acquisition, LLC
28 Leeward Lane
Riverside, CT 06878
 Attention:     Thomas Shull
Email: shulltc@aol.com
Telephone:     (203) 249-6094
Facsimile:     :  (203) 637-5576

with copies (which shall not constitute notice) to:

Rosenfeld Wolff & Klein
Attention:     Morton M. Rosenfeld, Esq.
1901 Avenue of the Stars, Suite 500
Los Angeles, California 90067
Email:     mrosenfeld@rwak.com
Telephone:     (310) 556-1221
Facsimile:     (310) 556-0401

and

Natan Wekselbaum
1220 Third Avenue
New York, New York 10021
Email:     NO E-MAIL
Telephone:
Facsimile:

with copies (which shall not constitute notice) to:

Baker Leshko Saline & Blosser, LLP
One North Lexington Avenue
White Plains, New York 10601-1712
Attention:     Mitchell J. Baker

| | Email: | mbaker@bakerleshko.com |
| | Telephone: | (914) 681-9500 |
| | Facsimile: | (914) 681-9505 |

(4)    if to Pre-Petition Lender, DIP Lender or Exit Lender, to:

NewAlliance Commercial Finance
Westwood Business Centre
690 Canton Street, Suite 214
Westwood, MA  02090
Attention:    Allan J. Marzen, First Vice President

Email:  amarzen@NewAllianceBank.com
Telephone:    (781) 251-5705
Facsimile:

with copies (which shall not constitute notice) to:

Greenberg Traurig LLP
Attention:    Jeffrey M. Wolf, Esq.
               Alan J. Brody, Esq.
One International Place
Boston, MA 02110
Email:    wolfje@gtlaw.com
Email:    brodya@gtlaw.com
Telephone:    (617) 310-6041
Facsimile:    (617) 310-6001

13.6.   ***Headings***.  The headings used in the Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the construction of the provisions of the Plan.

13.7.   ***Severability***.  If, prior to the entry of the Confirmation Order, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court, at the request of the Debtors with the written consent of the Investor, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid void or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration or interpretation, unless agreed otherwise by the Debtors with the written consent of the Investor, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

13.8.  **_Governing Law_**.  Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or by Delaware corporate, partnership or limited liability company law, the laws of the State of New York, without giving effect to the conflicts of laws principles thereof, shall govern the construction of the Plan and any agreements, documents, and instruments executed in connection with the Plan, except as otherwise expressly provided in such instruments, agreements or documents.

13.9.  **_Plan Supplement/Exhibits/Schedules_**.  All exhibits and schedules to the Plan, including the Plan Supplement and the Exhibits to the Plan Supplement, are incorporated into and are a part of the Plan as set forth in full herein.

13.10.  **_Compliance with Tax Requirements_**.  In connection with the Plan, the Debtors and the Class 4 Administrator will comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities, and all distributions hereunder shall be subject to such withholding and reporting requirements.

13.11.  **_Exemption from Transfer Taxes_**.  Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of notes or equity securities under the Plan, the creation of any mortgage, deed of trust, or other security interest, the making or assignment of any lease or sublease, or the making or delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, shall not be subject to any sales and use, stamp, real estate transfer, mortgage recording, or other similar tax.

13.12.  **_Expedited Determination of Postpetition Taxes_**.  The Debtors and the Reorganized Debtors are authorized (but not required) to request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed for, or on behalf of, the Debtors for all taxable periods (or portions thereof) from the Commencement Date through (and including) the Effective Date.

13.13.  **_Sections 1125 and 1126 of the Bankruptcy Code_**.  As of and subject to the occurrence of the Confirmation Date:  (a) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (b) the Debtors, the members of the Creditors' Committee, the Investor, and each of their respective Affiliates, agents, directors, managers, officers, employees, advisors, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation will not be, liable at any time for any violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

13.14.  **_Time_**.  In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 as amended effective December 1, 2009 shall apply.

Dated: New York, New York
       August 24, 2010

                              Respectfully submitted,

                              THE WECK CORPORATION
                              WEST WECK LLC
                              WECK CHELSEA LLC
                              GRACIOUS HOME.COM LLC


                              By:    _____
                              Name:
                              Title:

HAHN & HESSEN LLP
Attorneys for Debtors and
Debtors in Possession
488 Madison Avenue
New York, New York 10022
(212) 478-7200

## **Exhibit A**

Existing Letters of Credit

**<u>Exhibit B</u>**

Reorganized Debtor Initial Board of Directors

## <u>Exhibit C</u>

Reorganized  Debtor Management Incentive Plan Terms and Conditions

**Exhibit D**

Reorganized Debtor Management
Agreement Terms and Conditions, as Modified on Assumption

**<u>Exhibit E</u>**

Investment Agreement