# EXHIBIT C

# BIDDING PROCEDURES

The following procedures (the "Bidding Procedures") will govern the competitive process run by The Weck Corporation, West Weck, LLC, Weck Chelsea, LLC and Gracious Hom.com LLC (collectively, "Debtors") to solicit proposals for the sponsorship and funding of a plan of reorganization for the Debtors (the "Investment"), which includes the purchase of substantially all of the Debtors' assets and the assumption of certain limited liabilities (the "Acquired Assets").

Following completion of the competitive process, the Debtors will seek approval of their restructuring pursuant to the plan of reorganization .

The Bidding Procedures provided herein shall be the exclusive mechanism governing the Investment and the Plan (as such term is defined herein).[1]

## The Plan of Reorganization

On August 24, 2010, the Debtors filed a Plan of Reorganization under Chapter 11 of the Bankruptcy Code (the "Plan") based on an investment and standby purchase agreement (the "Investment Agreement") dated August 11, 2010 entered into between the Debtors and GH Acquisition LLC ("GAH" or the "Plan Investor"). The Plan is supported by the Secured Lender, which has issued a Credit Facility Letter (as precursor to a commitment letter to be provided by the Secured Lender prior to the Auction) (the "Exit Lending Credit Facility Letter") to provide exit financing in connection with the Investment Agreement and the Plan (the Plan and the related Disclosure Statement together with the Investment Agreement and the Exit Lending Commitment Letter, the "Plan Related Agreements").

The Investment Agreement contemplated the commencement of an auction process pursuant to which the Debtors would solicit the highest or best proposals for the sponsorship and funding of a plan of reorganization.

## Bidding Process

### A. ***Preliminary Diligence***

The Debtors may afford any prospective acquirers and/or investors the opportunity to conduct a reasonable due diligence review in the manner determined by the Debtors, in their sole discretion.

The Debtors have and will continue to reach out to certain parties who have either expressed an interest in making a proposal or who the Debtors believe may have an interest in making a proposal with a request for a non-binding written indication of interest to sponsor a plan of reorganization for the Debtors.

[1] Any undefined term contained herein shall have the meaning scribed to such term in the Motion filed in support hereof.

In addition, the Debtors have executed and intend to continue to execute confidentiality and non-disclosure agreements with interested parties who have or will request further information. Upon the execution of an appropriate confidentiality and non-disclosure agreement, those interested parties (subject to reasonable pre-qualification by the Debtors) have been and/or shall be provided with access to certain information, through a virtual data room or otherwise.

The Debtors shall coordinate all reasonable requests for additional information and due diligence access from interested parties. All due diligence requests by the interested parties shall be directed to Triton Equity Partners, LLC, Attn: Robert L. Pressman, CEO and Elizabeth Obloy, Managing Director & Principal. **Interested parties are instructed to contact only Triton Equity Partners LLC as set forth below and not other members of the Debtors' management team, in connection with such requests.**

B. ***Public Announcement of Auction and Funding of Deposits***

On or before September __, 2010, the Debtors shall serve on all parties in interest and those parties who request notice, notice of an auction for the Acquired Assets (the "Auction") and all deadlines related thereto (the "Notice of Auction").

The Notice of Auction shall provide notice to all interested parties that in order to participate in the bidding process and the Auction and be deemed a Qualified Bidder (as defined below), each potential bidder (each, an "Interested Party") must provide a deposit in the amount of $500,000 (the "Deposit") on or before noon on October 5, 2010, with the Escrow Agent (as defined below) pursuant to an Escrow Agreement (as defined below) to be provided by the Debtors to the Interested Parties.

C. ***Proposals***

Each Interested Party, other than the Plan Investor, must deliver a written and duly executed offer (a "Proposal"), **so as to be received (with proof of receipt thereof) by no later than Noon. (Prevailing Eastern Time) on October 5, 2010** ("Proposal Deadline") to the following address (the "Proposal Notice Party"):

Triton Equity Partners, LLC
Attn: Robert Pressman, CEO and
Elizabeth Obloy, Managing Director & Principal
641 Lexington Avenue - Suite 1400
New York, New York 10022
Tel: (631) 613-6655
Fax: (613) 613-6659
Email: rpressman@tritonequity.com and eobloy@tritonequity.com

The Debtors and their professionals will deliver the Proposals received no later than one (1) business day following receipt of the Proposal to (i) advisors to the official

committee of unsecured creditors, if any (the "Creditors' Committee"), (ii) advisors for the Secured Lender and (iii) advisors to the Plan Investor, as follows:

To the Creditors' Committee:

____________________
____________________
____________________
Attn:
Tel:
Fax:
Email:

To the Secured Lender:

Greenberg Traurig LLP
One International Place
Boston, MA 02110
Attn: Jeffrey M. Wolf
Tel: (617) 310-6041
Fax: (617) 279-8447
Email: Wolfje@gtlaw.com

To the Plan Investor:

Rosenfeld, Wolff & Klein
1901 Avenue of the Stars - Suite 500
Los Angeles, CA 90067
Attn: Morton M. Rosenfeld, Esq.
Tel: (310) 556-1220
Fax: (310) 556-0401
Email: mrosenfeld@rwak.com

Each Proposal must:

1. state that such Interested Party offers to purchase the Acquired Assets and fund a Plan upon the terms and conditions substantially as set forth in the Plan Related Agreements or pursuant to an alternative structure;

2. state that such Interested Party's Proposal is not subject to any further due diligence and that such Interested Party has obtained all necessary financing and approvals, which financing and approvals are not subject to any conditions;

3. include evidence of authorization and approval from the Interested Party's board of directors (or comparable governing body) with respect to the submission, execution, delivery and closing of the Proposal and

transactions contemplated thereby, including evidence of a binding and unconditional commitment to provide financing;

4. fully disclose the identity of each party that will be participating in connection with such Proposal, and the complete terms of any such participation;

5. contain a detailed overview of the terms of the Interested Party's sponsorship of a Plan for the applicable Debtors' entities, which terms must include a detailed pro forma capitalization, ownership, amount of a new money investment and all sources of recovery to the Debtors' creditors and contain as much detail as possible on proposed structure, including a list of the relevant entities to be included in any alternative plan;

6. include a detailed provision for treatment of the claim of the Secured Lender, including, in light of the Secured Lender's fully preserved right to credit bid under Sections 363(k) and 1129 of the Bankruptcy Code, provision for payment in full of the pre-petition and debtor-in-possession obligations owed to the Secured Lender;

7. in the Debtors' business judgment, provide incremental value to the Debtors' estates compared to the proposal reflected in the Investment Agreement, including taking into account, in such selection, both issues of feasibility and operation issues as well as those which materially impact future operations in connection with the Debtors' Collective Flagship Eastside Store(s) and the rights of the Secured Lender to credit bid all or any part of its secured debt.

8. not include (i) a right to request or entitlement to any commitment payment, break-up fee or similar type of payment or (ii) reimbursement of fees and expenses other than (a) in connection with the implementation of the Proposal if the Interested Party is the Successful Bidder (as defined below), or (b) after the close of the Auction, by motion to the Bankruptcy Court based on substantial contribution to the Debtors' chapter 11 cases if the Interested Party is not the Successful Bidder;

9. contain a description of the financial assumptions and any other assumptions utilized in each Interested Party's Proposal, including estimated transaction costs, and any major underwriting assumption(s) upon which each Interested Party may have based its Proposal, including working capital, capital expenditure requirements and impact of proposed structure;

10. contain evidence of the source(s) of equity and/or debt financing for the Interested Party's Proposal, including the parties to provide financing, their contact information, and a description of each sponsor and any

additional party or parties funding the Plan and such party's financial position;

11. contain confirmation that the Proposal has received any necessary internal approvals to make a binding Proposal;

12. state each Interested Party's and any other sponsor's experience in the retail industry, including ownership and management of retail assets, feasibility post emergence from Chapter 11 of the business to be operated by each Interested Party, as well as any other information that it thinks could be important to the Debtors in their decision-making process regarding the Proposal;

13. state the specific person(s) whom the Debtors' financial advisors, Triton Equity Partners, LLC, should contact in the event that the Debtors have any questions or wish to discuss the Proposal; and

Each Proposal must be accompanied by a mark-up of the Plan, as well as the Investment Agreement and the other plan-related documents. Such markup must show, among other things, the amount of the proposed Investment, identify any assumed liabilities as part of the Investment, identify which of the Debtors' real property leases and executory contracts the Interested Party intends to assume or reject and/or replacement or new real property leases (e.g., 1133 Third Store) as part of its Proposal, and identify which members of senior management and employees, if any, the Interested Party intends to extend employment offers to post-emergence and on what terms.

Each Interested Party providing a Proposal shall be deemed to acknowledge and represent that it has had an opportunity to conduct due diligence on the Debtors prior to making its Proposal; that it has relied solely upon its own independent review, investigation and/or inspection of any documents and/or the assets in making its Proposal; and that it did not rely upon any written or oral statement, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Debtors, or the completeness of any information provided in connection therewith.

Within one (1) business day of the Proposal Deadline, the Debtors shall provide copies of all proposals or other indications of interest for the Acquired Assets received by the Debtors prior to entry of such order to the professionals for the Creditors' Committee, the Secured Lender and the Plan Investor.

**FOR THE AVOIDANCE OF DOUBT, ANY AND ALL PARTIES SHOULD BE AWARE THAT ANY PARTY THAT DOES NOT SUBMIT A PROPOSAL BY THE PROPOSAL DEADLINE WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE PROPOSAL DEADLINE.**

D. ***Deposits***

The submission of a Proposal by the Proposal Deadline shall and must be accompanied by the $500,000 Deposit with an escrow agent selected by the Debtors (the "Escrow Agent") pursuant to the escrow agreement to be provided by the Debtors to the Interested Parties (the "Escrow Agreement"). The submission of a Proposal and a Deposit by the Proposal Deadline shall constitute a binding and irrevocable offer and any Proposal shall not be subject to, and shall state that it is not subject to, financing, diligence, approvals or other conditions not set forth in the Investment Agreement.

E. ***Review of Proposals***

The Debtors will review those Proposals timely submitted and engage in negotiations with those prospective acquirers and/or investors that submitted Proposals complying with the proceeding paragraphs and as they deem appropriate in the exercise of their business judgment, based upon the Debtors' evaluation of the content of each Proposal as well as other commercial and competitive considerations. Although the Debtors will provide copies of the Proposals to the Creditors' Committee, the Secured Lender, and the Plan Investor, and will consult with the Creditors' Committee and the Secured Lender, the Debtors retain the exclusive right to determine whether an Interested Party that submitted a Proposal may participate in the Auction.

The Debtors will select, in their business judgment, on or before 5:00 PM on October 7, 2010, those timely submitted Proposals of Interested Parties, if any, that qualifies to participate in the Auction (each such party, a "Qualified Bidder" and a "Qualified Proposal," respectively). In evaluating the Proposals, the Debtors will take into consideration, among other factors, the form of consideration, value and certainty of recovery provided to prepetition creditors and shareholders, transaction structure and execution risk, including conditions to closing, availability of financing and financial wherewithal to meet all commitments under the Proposal, approvals required, and the Interested Party's ability to manage the Debtors' business and feasibility of the business after emergence from Chapter 11.

After determining that an Interested Party is a Qualified Bidder and qualifies to participate in the Auction in accordance with these Bid Procedures, the Debtors will notify the party in writing, on or before 5:00 PM on October 8, 2010, with a copy to the Creditors' Committee, the Secured Lender, and the Plan Investor.

**Only those Proposals that (i) were submitted on or before the Proposal Deadline, (ii) in light of the Secured Lender's fully preserved right to credit bid under Section 363(k) and 1129 of the Bankruptcy Code, provide for the Secured Lender to be paid in full its pre-petition and debtor-in-possession obligations in cash upon the effective date of such plan, (iii) provide incremental value to the Debtors' estates as compared to the Investment Agreement in excess of (a) the amount of the BreakUp Fee plus (b) not less than $500,000, (iv) state that they are binding and irrevocable offers, not subject to financing, diligence, approvals or other conditions not set forth in the Investment Agreement, (v) are accompanied by a $500,000 deposit that was submitted on or before Noon on October 5, 2010, and (vi) include the conditions specified above, may be deemed Qualified Proposals**

**(unless waived or modified in the business judgment of the Debtors, and with respect to subsection (ii) of this paragraph, the Secured Lender).**

**FOR THE AVOIDANCE OF DOUBT, ANY AND ALL PARTIES SHOULD BE AWARE THAT ANY PARTY THAT IS NOT DETERMINED TO BE A QUALIFIED BIDDER BY 5:00 PM ON OCTOBER 7, 2010 AND NOTIFIED OF THE FOREGOING BY 5:00 PM ON OCTOBER 8, 2010, RESPECTIVELY, WILL NOT BE ALLOWED TO (1) PARTICIPATE IN THE AUCTION UNDER ANY CIRCUMSTANCES OR (2) SUBMIT ANY OFFER AFTER THE PROPOSAL DEADLINE OR AFTER THE AUCTION.**

The Debtors reserve the right, after consultation with the Creditors' Committee and the Secured Lender, to reject any Proposal if the Debtors determine that such Proposal does not constitute a Qualified Proposal or is otherwise inadequate or insufficient or is otherwise contrary to the best interests of the Debtors.

Notwithstanding anything in these Bidding Procedures, the Plan Investor and the Secured Creditor are deemed a Qualified Bidder, and the Plan Related Agreements shall be deemed a Qualified Proposal for all applicable purposes under these Bidding Procedures with respect to the Auction and otherwise.

Between the date the Debtors notify an Interested Party that it is a Qualified Bidder and the Auction, the Debtors may discuss, negotiate or seek clarification of any Qualified Proposal from a Qualified Bidder. Without the written consent of the Debtors, a Qualified Bidder may not modify, amend or withdraw its Qualified Proposal, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Proposal for the Debtors, during the period that such Qualified Proposal remains binding as specified herein; provided, however, that any Qualified Proposal may be improved at the Auction as set forth herein. The determination of the Qualified Bidders shall become irrevocable and unreviewable once the Auction has commenced.

## The Auction

### A. *Notice of Auction*

If the Debtors determine that they have received a Qualified Proposal in addition to the Plan Related Agreements by the Plan Investor, the Auction will be held **on October 12, 2010 at 10:00 a.m.** (prevailing Eastern Time) at the offices of Hahn & Hessen LLP, 488 Madison Avenue, New York, New York 10022. **On or before 5:00 PM on October 8, 2010.** (prevailing Eastern Time), the Debtors shall provide each Qualified Bidder (including the Plan Investor), the Creditors' Committee and the Secured Lender with the following: (1) written notice that the Auction is proceeding in accordance with the Notice of Auction previously published by the Debtors, and (2) a copy of the Qualified Proposal the Debtors have determined constitutes the highest or otherwise best offer among the Qualified Proposals and with which they intend to commence the Auction (the "Pre-Auction Successful Proposal").

The Auction may be adjourned as the Debtors deem appropriate, after consultation with the Creditors' Committee and the Secured Lender. Reasonable notice of such

adjournment and the time and place for resumption of the Auction shall be given to all of the Qualified Bidders.

B. ***Attendance and Participation in the Auction***

a. In addition to the Debtors and their advisors, the only parties eligible to participate in the Auction shall be: (i) the Plan Investor and its representatives and advisors; (ii) representatives and advisors of the Creditors' Committee; (iii) representatives and advisors of the Secured Lender; (iv) those Qualified Bidders who have submitted a Qualified Proposal to the Debtors (as well as such Qualified Bidder's advisors and representatives); and (v) the Office of the United States Trustee for the Southern District of New York. The Plan Investor and the Qualified Bidders shall appear in person at the Auction, or through a duly authorized representative.

b. Each Qualified Bidder shall be required to confirm that it has not engaged in any collusion with respect to the bidding or the Auction.

c. Each Qualified Bidder shall have provided the Deposit.

C. ***The Auction Process***

The Auction shall run in accordance with the following procedures:

a. The Debtors and their respective professionals shall direct and preside over the Auction.

b. On or before 9:30 AM on October 12, 2010, each Qualified Bidder who has timely submitted a Qualified Proposal (as determined by the Company) must inform the Debtors whether it intends to attend the Auction; provided that in the event a Qualified Bidder does not attend the Auction, such Qualified Bidder's Qualified Proposal shall nevertheless remain fully enforceable against such Qualified Bidder until the date of the selection of the Successful Bid (as defined below) at the conclusion of the Auction.

c. All Qualified Bidders who have timely submitted Qualified Proposals will be entitled to be present for all Subsequent Bids (as defined below) at the Auction with the understanding that the identity of each Qualified Bidder at the Auction will be fully disclosed to all other Qualified Bidders at the Auction and that all material terms of each Subsequent Bid will be fully disclosed to all other Qualified Bidders throughout the entire Auction; provided that all Qualified Bidders wishing to attend the Auction must have at least one individual representative with authority to bind such Qualified Bidder attending the Auction in person. At the

discretion of the Debtors, all proceedings at the Auction shall be conducted before and transcribed by a court stenographer.

d. At the commencement of the Auction, the Debtors shall announce and describe the terms of the Pre-Auction Successful Bid, as determined by the Debtors.

e. The Debtors may employ and announce at the Auction additional procedural rules that are reasonable under the circumstances (e.g., the amount of time allotted to make Subsequent Bids (as defined below)) for conducting the Auction, provided that such rules are (i) not inconsistent with these Bidding Procedures, the Bankruptcy Code, or any order of the Bankruptcy Court, (ii) not inconsistent with the Plan Related Agreements and (iii) disclosed to each Qualified Bidder at the Auction.

f. Bidding at the Auction will begin with the Pre-Auction Successful Bid and continue, in one or more rounds of bidding, so long as during each round at least one subsequent bid (a "Subsequent Bid") is submitted by a Qualified Bidder that the Debtors determine, (i) in the case of the first round, is a higher or otherwise better bid than the Pre-Auction Successful Bid by an amount to be determined by the Debtors and (ii) in the case of subsequent rounds, is a higher or otherwise better bid by the minimum bid increment set by the Debtors for each such round than the best bid of the previous round. Each Qualified Bidder must submit a Subsequent Bid that satisfies the minimum bid increment in each round of bidding to continue participating in the Auction.

g. The Debtors shall announce the material terms of each Subsequent Bid at the Auction, and shall disclose their valuation of the total consideration offered in each such Subsequent Bid (and the basis for its determination) in order to (a) confirm that each Subsequent Bid meets the minimum bid increment set by the Debtors for the round in which such Subsequent Bid was submitted and (b) to provide a floor for further Subsequent Bids.

In the event the Successful Bidder (defined below) fails to consummate the Plan, the Debtor shall be authorized to proceed with confirmation and consummation of a Plan with the Qualified Bidder who submitted the second highest Qualified Bid at the Auction.

h. ***Credit Bidding***

The Secured Lender, or its designee, shall have the right to credit bid its prepetition and/or post petition secured claim (including any

pre and post petition interest and fees accrued and otherwise due) pursuant to Sections 363(k) and 1129 of the Bankruptcy Code.

D. ***Identification of the Successful Bidder***

At the close of the Auction, the Debtors, in their sole discretion and in exercise of their business judgment after consultation with the Creditors' Committee and the Secured Lender, shall identify which Qualified Bidder has the highest or otherwise best bid (the "Successful Bid," and such bidder, the "Successful Bidder"), which will be determined by considering, among other things:

1. The number, type and nature of any modification to the Plan and the Investment Agreement requested by each Qualified Bidder and whether such Qualified Proposal is on different terms than those set forth in the Plan and the Investment Agreement; it being understood that certain modifications (including those that (a) increase the certainty of closing without delay, and (b) increase certainty with respect to liquidated damages for a buyer breach) may be viewed as improving the value of the bid.

2. The extent to which any requested modifications to the Plan and the Investment Agreement are likely to delay the closing, and the likely cost to the Debtors of any such modifications or delay.

3. The total consideration to be received by the Debtors under the terms of each Qualified Proposal.

4. Each Qualified Bidder's ability to timely close a transaction and make any deferred payments, if applicable.

5. The net benefit to the Debtors' estates and the creditors of such estates and the likely timing and amount of distributions to the Debtors' creditors resulting from each proposal.

6. The feasibility of the Plan proposed by each Qualified Bidder and its likelihood of confirmation under Section 1129 of the Bankruptcy Code.

7. In announcing the Successful Bid, the Debtors shall announce the material terms of such bid, the basis for determining the total consideration offered and the resulting calculated benefit of such bid to the Debtors' estates. Upon the close of the Auction, the Debtors shall announce the Successful Bidder, and such Successful Bidder shall promptly thereafter submit fully executed revised documentation memorializing the terms of the Successful Bid.

If no Auction is held, then the proposal of the Plan Investor as represented by the Plan shall be deemed to be the Successful Bid and the Plan Investor shall be deemed to be the Successful Bidder and the Debtors will proceed to effectuate the transactions as set forth in the Plan Related Agreements; provided, however, that nothing in these Bidding Procedures in any way limits the ability of the Debtors and the Plan Investor to mutually agree on improvements in the terms of the Plan Related Agreements.

**Return of Deposits**

Any cash Deposits submitted by Qualified Bidders will be held in escrow by the Debtors' Escrow Agent. Each Deposit will be forfeited to the Debtors if (a) the applicable Qualified Bidder attempts to modify, amend or withdraw its Qualified Proposal, except for proposed amendments to increase the purchase price or otherwise improve the terms of the Qualified Proposal for the Debtors, during the time the Qualified Proposal remains binding and irrevocable under these Bidding Procedures or (b) the Qualified Bidder is selected as the Successful Bidder and fails to consummate the Plan according to these Bidding Procedures and the terms of the Investment Agreement. The Escrow Agent shall release the Deposit by wire transfer of immediately available funds to an account designated by the Debtors two (2) Business Days after the receipt by the Escrow Agent of a joint written notice by a Debtor Authorized Officer and the Qualified Bidder stating that the Qualified Bidder has breached or failed to satisfy its obligations or undertakings.

The Debtors shall promptly return to the applicable Qualified Bidder any Deposit, plus any interest accrued thereon, accompanying (a) a Proposal that the Company determines not to be a Qualified Proposal, and (b) any Qualified Proposal that the Debtors do not select as the Successful Bid at the Auction, two (2) Business Days after the close of the Auction, but in no event later than seven (7) Business Days after the commencement of the Auction; provided however, the Debtors will continue to hold the Deposit of the second highest Qualified Bidder until such time as the plan proposed in the Successful Bid is consummated.

The Deposit of the Successful Bidder shall be applied against the cash investment of the Successful Bidder upon the consummation of the plan proposed in the Successful Bid.

The Debtors and the Qualified Bidder agree to execute an appropriate joint notice to the Escrow Agent for the release of the Qualified Bidder's Deposit, in accordance with the terms of these Bid Procedures. If either party fails to execute such written notice, the Deposit may be released by an order of the Bankruptcy Court.

**Plan Process**

After selecting the Successful Bid, the Debtors, in consultation with the entity or entities which submitted the Successful Bid, will prepare and file a revised plan and related disclosure statement with the United States Bankruptcy Court for the Southern District of New York to effectuate the terms of the Successful Bid. The hearing to consider the adequacy of the Disclosure Statement for the Successful Bid shall occur not later than October __, 2010, unless otherwise agreed by the Debtors and the Successful Bidder.

**Reservation of Rights**

The Debtors reserve the right, in their sole discretion and subject to the exercise of their business judgment, to alter or terminate these Bidding Procedures, to alter the assumptions set forth herein, and/or to terminate discussions with any and all prospective acquirers and investors at any time and without specifying the reasons therefore, to the extent not materially inconsistent with the Bidding Procedures set forth herein.

**End of Auction Process**

Following the selection of the Successful Bid, (A) the Auction shall be closed, (B) the Debtors shall (i) immediately cease and cause to be terminated any ongoing solicitation, discussions and negotiations with respect to any other bids or proposals for the Acquired Assets and (ii) not solicit any inquiries or proposals, or enter into any discussions, negotiations, understandings, arrangements or agreements, relating to any other bid or proposal for the Acquired Assets, and (C) no additional bids or proposals for the Acquired Assets will be accepted or considered by the Debtors, unless and until the earlier of (1) the termination of the Investment Agreement by and among the Successful Bidder and the Debtors and (2) entry of an order of the Bankruptcy Court denying confirmation of the Plan sponsored by the Successful Bidder.

Dated: September [__], 2010