**BECKER, GLYNN, MELAMED & MUFFLY LLP**
299 Park Avenue, 16th Floor
New York, New York 10171
Telephone: 212-888-3033
Facsimile: 212-888-0255
Alec P. Ostrow
aostrow@beckerlgynn.com
Chester B. Salomon
csalomon@beckerglynn.com

*Attorneys for 201 East 69 LLC and TF Cornerstone Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------x   Chapter 11
In re:                                                      :
                                                            :   Case No. 10-14349 (AJG)
THE WECK CORPORATION                                        :
  d/b/a Gracious Home, et al.[1]                   :
                                                            :
        Debtors.    :
------------------------------------------------------------x

## OBJECTION OF 201 EAST 69 LLC AND TF CORNERSTONE INC. TO DEBTORS' MOTION TO OBTAIN POST-PETITION FINANCING FROM NEWALLIANCE BANK

      201 East 69 LLC and TF Cornerstone Inc., respectively the landlord and managing agent of the Debtors' premises at 1201 Third Avenue, New York, New York (collectively, the "1201 Landlord"), objecting to the Debtors' motion to obtain post-petition financing from NewAlliance Bank, respectfully state as follows:

      1.      The Weck Corporation, one of the Debtors, leases retail premises at 1201 Third Avenue, New York, New York from 201 East 69 LLC, pursuant to a lease made as

---

[1] The debtors in this case include The Weck Corporation, West Weck, LLC, GraciousHome.com, LLC and Weck Chelsea, LLC.

of January 17, 2002, with 201 East 69 LLC's predecessor in interest, as amended (the "1201 Lease").  TF Cornerstone Inc. is the managing agent.  The Debtor has not paid rent for the month of August 2010, or the post-petition period thereof.  The pre-petition portion of the August 2010 rent is $51,745.30.  The post-petition portion of the August 2010 rent is $81,930.07.

2.  The 1201 Landlord objects to the Debtors' post-petition financing to the extent that it: (a) affects the 1201 Landlord's rights under the 1201 Lease with the Debtor, the Bankruptcy Code, or the letter of credit given as security under the 1201 Lease; and (b) contains default provisions in connection with Sponsor Plan of Reorganization.

## The 1201 Landlord's Rights Under the 1201 Lease

### Right to Security

3.  The 1201 Landlord has the right to a cash security deposit in Article 31 of the 1201 Lease.  Exhibit B to the 1201 Lease is a Rent Rider, which contains a provision, B.4, that adds provisions to Article 31 of the 1201 Lease, including the following provision, Section 31.6, which states:

> In substitution for the cash security deposit provided for in Article 31, Tenant shall, prior to the Commencement Date, deliver to Owner **and maintain in effect at all times during the Term hereof** and for at least forty-five (45) days after the expiration of the Term, an irrevocable letter of credit, in form and substance substantially in the form annexed hereto as Exhibit B-1 in the amount of the security required pursuant to Article 31 issued by a banking corporation **reasonably satisfactory to Owner and having its principal place of business or its duly licensed branch or agency in the City of New York, Borough of Manhattan.**  Such letter of credit shall have an expiration date no earlier than the first anniversary of the date of the issuance thereof and shall be automatically renewed from

> year to year unless terminated by the issuer thereof by notice to Owner given not less than 45 days prior to the expiration thereof. Except as otherwise provided in this Article 31, Tenant shall, throughout the Term of this Lease deliver to Owner, in the event of the termination of any such letter of credit, replacement letters of credit in lieu thereof (each such letter of credit and such extensions or replacements thereof, as the case may be, is hereinafter referred to as a "Security Letter") no later than 30 days prior to the expiration of the preceding Security Letter. The term of such Security Letter shall be not less than one year and shall be automatically renewable from year to year as aforesaid. **If Tenant shall fail to obtain any replacement of a Security Letter within the time limits set forth in this Section 31.6, Owner may draw down the full amount of the existing Security Letter and retain the same as security hereunder, until Tenant delivers a replacement Security Letter.** [Emphasis added.]

A copy of the portion of the Rent Rider containing Section 31.6 of the 1201 Lease is annexed hereto as Exhibit A.

4. The Debtor has exercised its rights under Section 31.6 of the 1201 Lease and has provided the 1201 Landlord with a letter of credit issued by M&T Bank in the amount of $556,920.89. This letter of credit currently expires on May 12, 2011. Copies of the relevant M&T letter of credit documents are annexed hereto as Exhibit B.

5. The Debtor in Possession Loan and Security Agreement with NewAlliance Bank contains several provisions that may affect the 1201 Landlord's rights under the 1201 Lease and its existing letter of credit with M&T Bank. Section 6.4 prohibits the borrowers from incurring new indebtedness, with an exception for the existing letters of credit. Section 2.10 contains provisions governing the issuance by NewAlliance Bank of letters of credit.

6. It is not clear whether the Debtors intend to take any steps to substitute a letter of credit issued by NewAlliance Bank for the existing letter of credit issued by

M&T Bank. A letter of credit issued by NewAlliance Bank would not currently meet the requirements of Section 31.6 of the 1201 Lease, because NewAlliance Bank does not have its principal place of business or its duly licensed branch or agency in the City of New York, Borough of Manhattan, nor is this relatively new bank reasonably satisfactory to the 1201 Landlord.

**Right to Compliance with Lease Terms and Conditions**

7. In addition to the provisions regarding letters of credit, Section 3.4(a) of the Debtor in Possession Loan and Security Agreement with NewAlliance Bank grants the lender,

> the right, at any time during a Default Period and without notice or consent, to take exclusive possession of all locations where Borrowers conduct their business or have any rights of possession, until the earlier of (i) payment in full and discharge of all Obligations and termination of the Line of Credit, or (ii) final sale or disposition of all items constituting Collateral and delivery of those items to purchasers. During a Default Period, Lender may use the Premises to store, process, manufacture, sell, use, and liquidate or otherwise dispose of items that are Collateral, and for any other incidental purposes deemed appropriate by Lender in good faith.

8. This provision of the post-petition financing agreement purports to give the lender the rights of the Debtor under the 1201 Lease, without any of the obligations of the Debtor, and irrespective of compliance with any of the terms and conditions of the 1201 Lease, such as the obligation to pay rent, to operate the premises consistent with restrictions governing use, mandating compliance with applicable law, and respecting the rights of the 1201 Landlord and other tenants on the property. Moreover, this provision appears to give the lender the right to occupancy and unrestricted use of the premises,

notwithstanding the rejection of the 1201 Lease, which requires an immediate surrender of possession to the 1201 Landlord, under Section 365(d)(4)(A).

**Financing Approval Cannot Abrogate 1201 Landlord's Rights**

9. This Court should not, in the guise of approving debtor in possession financing authorize an abrogation of the 1201 Landlord's rights under the 1201 Lease, the Bankruptcy Code, or its existing letter of credit with M&T Bank. There is nothing in Section 364 of the Bankruptcy Code that permits the abrogation of the 1201 Landlord's rights under the 1201 Lease or the existing letter of credit with M&T Bank. In particular, since the Debtor's obligation in the 1201 Lease to maintain in effect an acceptable, irrevocable letter of credit as security exists "at all times," it is an obligation that arises after the order for relief, and therefore must be performed by the Debtor under Section 365(d)(3) of the Bankruptcy Code. Moreover, in the event of a rejection of the 1201 Lease, there must be an immediate surrender to the 1201 Landlord under Section 365(d)(4)(A) of the Bankruptcy Code.

10. As a result, the approval of the Debtor's post-petition financing must be conditioned on the inability to affect the rights of the 1201 Landlord under the 1201 Lease, the Bankruptcy Code, or the existing letter of credit with M&T Bank.

**Default Provisions Concerning Sponsor Plan of Reorganization**

11. The Debtor in Possession Loan and Security Agreement with NewAlliance Bank contains two default provisions concerning the Sponsor Plan of Reorganization. The Sponsor Plan of Reorganization is defined in Section 1 as the "Debtors' Plan of Reorganization . . . as annexed to that certain Restructuring and Plan Support Agreement entered into among Tom Shull, Meredian Acquisition Ventures LLC,

Wekselbaum, the Pre-Petition Lender and the Debtors . . . ." Section 7.1(m) places the Debtors in default if the Debtors fail to file the Sponsor Plan of Reorganization with 45 days of the petition. Section 7.1(n) places the Debtors in default if the Sponsor Plan of Reorganization fails to become effective on or before the Maturity Date, which is defined in Section 1 as "November 30, 2010 unless extended in accordance with the terms of Section 2.1(b) [sic] hereof." (Section 2.1(d) provides for an extension of the Maturity Date to coincide with the effective date of the Sponsor Plan of Reorganization, provided that the extension cannot go beyond 180 days after the entry of an interim order approving the financing.)

12. Although not defined as such, the Sponsor Plan of Reorganization appears to be the Plan of Reorganization that is one of the subjects of the Debtors' Bidding Procedures Motion, to which the 1201 Landlord is objecting. The 1201 Landlord respectfully refers the Court to its objection to the Bidding Procedures Motion and incorporates that objection herein. Of particular relevance to the post-petition financing is the provision of the Plan of Reorganization attached to the Bidding Procedures Motion (the "Plan").

**Releases**

13. Section 10.10 of the Plan is entitled "Releases" and grants releases by not only the Debtors, but also by "(ii) each holder of a Claim or Equity Interest that votes to accept the Plan, or is deemed to accept the Plan, or abstains from voting on the Plan" to each "Released Party" with respect to "any and all Claims, demands, causes of action and the like, **relating to** the Debtors existing as of the Effective Date or thereafter arising from any act, omission, event or occurrence that occurred prior to the Effective Date,"

except for willful misconduct or gross negligence. [Emphasis added.] Notably, "Release Parties" is defined in Section 1.101 of the Plan to include "(e) Wekselbaum and the Wekselbaum Family Interests." Wekselbaum, the Debtor's principal, is a guarantor of the 1201 Lease.

14. The wording of the release given to Wekselbaum under Section 10.10 of the Plan is arguably broad enough to cover Wekselbaum's guarantee of the Section 1201 Lease. Such a result is impermissible. It is an inappropriate nondebtor release. As the Second Circuit observed in *Deutsche Bank AG v. Metromedia Fiber Network, Inc. (In re Metromedia Fiber Network, Inc.)*, 416 F.3d 136, 142 (2d Cir. 2005):

> [A] nondebtor release is a device that lends itself to abuse. By it, a non-debtor can shield itself from liability to third parties. In form, it is a release; in effect, it may operate as a bankruptcy discharge arranged without a filing and without the safeguards of the Code. The potential for abuse is heightened when releases afford blanket immunity. Here the releases protect against any claims relating to the debtor . . . .

*Accord In re Metcalfe & Mansfield Alternative Investments*, 421 B.R. 685, 694-95 (Bankr. S.D.N.Y. 2010).

15. The *Metromedia Fiber Network* court held: "A nondebtor release in a plan of reorganization should not be approved absent the finding that truly unusual circumstances render the release terms important to the success of the plan, focusing on the considerations discussed above." *Id.* at 143. These considerations include whether "the estate received substantial consideration," "the enjoined claims were 'channeled' to a settlement fund rather than extinguished," "the enjoined claims would directly impact the debtor's reorganization 'by way of indemnity or contribution,'" or "the plan

otherwise provided for the full payment of the enjoined claims." *Id.* at 142; *accord In re Oneida, Ltd.*, 351 B.R. 79, 94 (Bankr. S.D.N.Y. 2006). None of these considerations have been demonstrated in the present case. The release is therefore improper.

16. The Second Circuit also approved the result in *In re Specialty Equipment Cos.*, 3 F.3d 1043, 1047 (7th Cir. 1993), in which the releases were consensually granted. *Metromedia Fiber Network*, 416 F.3d at 142. Significantly, however, the Seventh Circuit observed that abstaining creditors were not bound by the nondebtor release in that case. 3 F.3d at 1047. The opposite is true of the nondebtor releases provided in Section 10.10 of the Debtor's Plan.

17. The 1201 Landlord should not be placed in the position of sacrificing its guarantee claim against Wekselbaum to vote for or abstain from voting on the Debtor's Plan. For this reason, among others, the Plan in its present form is not capable of confirmation.

**Improper Classification of Landlord Claims**

18. The Plan divides landlord claims into two classes. There is a Class 5 of Landlord Settlement Claims. A "Landlord Settlement" is defined in Section 1.77 of the Plan as "the agreement on terms of resolution of claims and rights of the Debtors and the landlord of any Unexpired Lease, as memorialized and approved in any Landlord Settlement Approval Order." Thus, if there is a court-approved agreement between the Debtors and a landlord, such landlord's claim is in Class 5. Otherwise, presumably, the landlord's unsecured claim is in Class 4 of General Unsecured Claims.

19. The treatment of Class 5 in Section 3.5(b) of the Plan is payment in accordance with the Landlord Settlement Approval Order. The Plan does not take a

position as to whether a Class 5 is an Administrative Claim or a General Unsecured Claim, but the Plan does designate Class 5 as impaired and entitled to vote.

20. The result is that if a landlord (whose lease has not been assumed) has a deal with the Debtors, then the landlord's claim is in Class 5, and if the landlord does not have a deal with the Debtors, then the landlord's claim is in Class 4. That is tantamount to separately classifying landlords claims based on whether or not these claims are disputed by the Debtors. This is improper. *In re Weiss-Wolf, Inc.*, 59 B.R. 653, 655 (Bankr. S.D.N.Y. 1986); *In re Mastercraft Record Plating, Inc.*, 32 B.R. 106, 108 (Bankr. S.D.N.Y. 1983), *rev'd on other grounds*, 39 B.R. 654 (S.D.N.Y. 1984); *accord In re Paolini*, 312 B.R. 295, 314 (Bankr. E.D. Va. 2004); *In re Curtis Center Ltd. P'ship*, 195 B.R. 631, 642 (Bankr. E.D. Pa. 1996); *In re ARN Ltd. Limited P'ship*, 140 B.R. 5, 13-14 (Bankr. D.D.C. 1992).

21. Moreover, it seems as though this separate classification is an attempt to gerrymander an impaired, accepting class of claims, to satisfy the confirmation requirement of Section 1129(a)(10), and thus permit a cram down under Section 1129(b). Separate classification for such purpose is also improper. *Boston Post Road Ltd. P'ship v. FDIC (In re Boston Post Road Ltd. P'ship)*, 21 F.3d 477, 482-83 (2d Cir. 1994); *Phoenix Mutual Life Ins. Co. v. Greystone III Joint Venture*, 995 F.2d 1274, 1279 (5th Cir. 1991), *cert. denied*, 506 U.S. 821 (1992). There are only three classes of claims that are designated as impaired: Class 1, the Pre-Petition Loan Facility Claim; Class 4, the General Unsecured Claims; and Class 5, the Landlord Settlement Claims. (Class 6, Interests, is also impaired, but it is not a class of claims.) Class 4 is certainly impaired. Its treatment, as set forth in Section 3.4 of the Plan, is a pro rata share in a fund, the Class

4 Distribution Pool, which may be eliminated if Class 4 rejects. Class 1 is designated as impaired, but it is hard to see how it is impaired. Its treatment, under Section 3.1 of the Plan, is either (i) cash an amount equal to the Allowed Amount of its claim, which in accordance with Section 1.8 of the Plan, includes post-petition interest under Section 506(b) of the Bankruptcy Code, less an undefined "Allowed Pre-Petition Loan Facility Reduction Amount," or (ii) some other mutually agreeable treatment. If Class 1 is not truly impaired, and Class 4 rejects, then cram down depends on the acceptance of Class 5, which, as stated above, is an improperly-constructed separate class of undisputed landlords' claims.

22. The 1201 Landlord should not be placed in the position of having to accept an unfavorable deal with the Debtors to gain a Class 5 Claim, and avoid the consequences of a Class 4 Claim, when the classification is based solely on obtaining the Debtors' agreement.

**Default Should Not Be Based on a Failure to Promote or Confirm a Defective Plan**

23. This Court should not approve a post-petition financing arrangement that places the Debtors in default if this Plan is not filed or does not become effective by the required deadlines.

23. As a result, the approval of the Debtor's post-petition financing must be conditioned on the removal of the events of default related to the Sponsor's Plan of Reorganization.

**WHEREFORE**, the 1201 Landlord respectfully requests that the Debtor's motion to obtain post-petition financing from NewAlliance Bank be denied, unless approval is conditioned on (a) the inability to affect the rights of the 1201 Landlord under

the 1201 Lease, the Bankruptcy Code, or the existing letter of credit with M&T Bank; and (b) the removal of the events of default related to the Sponsor's Plan of Reorganization; and that the 1201 Landlord be granted such other and further relief as is just.

Dated: New York, New York
September 2, 2010

                                  BECKER, GLYNN, MELAMED & MUFFLY LLP

                                  By:   */s/ Alec P. Ostrow*
                                         Alec P. Ostrow
                                         Chester B. Salomon
                                299 Park Avenue
                                New York, NY 10171
                                Tel: (212) 888 - 3033
                                Fax: (212) 888- 0255
                                aostrow@beckerglynn.com
                                csalomon@beckerglynn.com

                                *Attorneys for 201 East 69 LLC and TF Cornerstone Inc.*