UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
_____

| | |
|---|---|
| In re: | : |
| | : |
| THE WECK CORPORATION, *et al.*, | :     Case No. 10-14349 (AJG) |
| | : |
|             Debtors. | :     Chapter 11 |
| | :     (Procedurally Consolidated) |
| | : |
| _____ | : |

## FINAL ORDER PERMITTING THE USE OF CASH
## COLLATERAL AND GRANTING RELATED RELIEF

Upon the Emergency Motion for Order Under 11 U.S.C. §§ 105, 363, 364(c)(1) & (2), and 364(e), Fed. R. Bankr. P. 2002, 4001, and 9014 (I) Authorizing Debtors To Obtain Post-petition Financing On Super-Priority and Secured Basis, (II) Permitting the Use of Cash Collateral, (III) Granting Interim Relief, and (IV) Scheduling a Final Hearing Under Fed. R. Bankr. P. 4001(c), dated August 13, 2010 (the "Motion") filed by The Weck Corporation, West Weck, LLC, Gracious Home.com, LLC and Weck Chelsea, LLC, the debtors and debtors in possession in the above-captioned cases (collectively, the "Debtors"); an interim hearing (the "Interim Hearing") having been held before the Court (the "Bankruptcy Court") on August 17, 2010; the Court having entered an interim order on August 17, 2010 with respect to the Motion (the "Interim Order") (Docket No. 38); a final hearing (the "Final Hearing") having been held before the Court to consider the Motion on a final basis on October 19, 2010; due and sufficient notice of the Motion and the Final Hearing having been given; and upon the entire record made at the Interim Hearing and the Final Hearing before the Court to consider the Motion; and this Court having found good and sufficient cause appearing therefore;

THE DEBTORS STIPULATE AND THE COURT HEREBY FINDS, DETERMINES, AND CONCLUDES THAT:[1]

A.    <u>Jurisdiction</u>.    The Bankruptcy Court has core jurisdiction over the above-captioned chapter 11 cases (the "<u>Cases</u>" or the "<u>Chapter 11 Cases</u>"), the Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334.  Consideration of this Motion constitutes a core proceeding as defined 28 U.S.C. §§ 157(b)(8).

B.    <u>Notice</u>.  Notice of the Motion and the Final Hearing was provided to all secured creditors, the Debtors' twenty (20) largest unsecured creditors and the United States Trustee, which constitutes due and sufficient notice thereof pursuant to Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>" 2002 and 4001(b) and (c).

C.    <u>Petition Date</u>.  On August 13, 2010 (the "<u>Petition Date</u>"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, as amended (the "<u>Bankruptcy Code</u>").  Pursuant to sections 1107(a) and 1108 of the Bankruptcy Code, the Debtors continue to manage their affairs as debtors in possession.  No trustee or examiner has been appointed in the Chapter 11 Cases.  At this time, the Debtors' Cases have been consolidated under Bankruptcy Case No. 10-14349 (AJG) for procedural purposes only.

D.    <u>Debtors' Stipulations</u>.  Without prejudice to the rights, remedies, and claims of the official committee of unsecured Creditors appointed pursuant to Section 1103(a) of the Bankruptcy Code (the "Committee") as set forth in Paragraph 16 hereof, the Debtors acknowledge, admit, and confirm the following:

(a)    The Debtors are party to that certain Secured Revolving Credit Note and Agreement dated as of April 22, 2005, as amended by that certain Increased, Modified and

---

[1] Findings of fact contained herein shall be construed as conclusions of law, and conclusions of law contained herein shall be construed as findings of fact.

Extended Secured Revolving Credit Note and Agreement dated as of November 2, 2007, as further amended by that certain Modified and Decreased Secured Revolving Credit Note and Agreement dated as of August 7, 2009, as further amended by that certain Modified and Decreased Secured Revolving Credit Note and Agreement dated as of November 5, 2009, as further amended by that certain Modified and Extended Secured Revolving Credit Note and Agreement dated as of February 16, 2010, as amended by that certain Forbearance Agreement and Amendment to Modified and Extended Secured Revolving Credit Note dated as of August 11, 2010 (as the same may be further modified, supplemented or otherwise modified from time to time to the Petition Date, the "Pre-Petition Credit Agreement"), pursuant to which the Debtors are indebted to NewAlliance Bank, acting through its NewAlliance Commercial Finance operating division (as successor to Manufacturers and Traders Trust Company) (the "Pre-Petition Lender"), on account of certain loans and financial accommodations and letter of credit exposure (including, without limitation, accrued but unpaid interest, fees and expenses, collectively, the "Pre-Petition Obligations").

(b)     The Debtors are truly and justly indebted and liable to the Pre-Petition Lender for the Pre-Petition Obligations without defense, counterclaim or offset of any kind in respect of loans made pursuant to the Pre-Petition Credit Agreement, and that as of the Petition Date, such Pre-Petition Obligations amount equaled approximately $11,347,123.68 (inclusive of interest, facility fees, costs and expenses).

(c)     To induce the Pre-Petition Lender to extend loans and financial accommodations under the Pre-Petition Credit Agreement, each of the Debtors executed a General Security Agreement (the "Pre-Petition Security Agreements"), pursuant to which each of the Debtors granted liens on, and irrevocable pledges and security interests in, all of its personal

property and assets (the "<u>Pre-Petition Collateral</u>") to and/or for the benefit of the Pre-Petition Lender to secure the Pre-Petition Obligations (collectively, the "<u>Pre-Petition Liens</u>").

(d)     The Pre-Petition Liens are (i) valid, binding, perfected, enforceable liens on the Pre-Petition Collateral and, subject to section 552 of the Bankruptcy Code, on all post-petition proceeds, products, offspring, rents and profits thereof, (ii) not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination under the Bankruptcy Code or applicable non-bankruptcy law, and (iii) subject and subordinate only to (A) the Adequate Protection Liens (as such term is defined herein), (B) the Carve-Out (as such term is defined herein and to which the Adequate Protection Liens are subject) and (C) valid, existing, prior perfected liens, if any.   The Pre-Petition Credit Agreement and Pre-Petition Security Agreements are valid and binding agreements and obligations of the Debtors.

(e)     The Pre-Petition Obligations constitute legal, valid, and binding obligations of the Debtors, enforceable in accordance with their terms and no objection, offset, defense, or counterclaim of any kind or nature to the Pre-Petition Obligations exists.   The Pre-Petition Obligations, and any amounts previously paid to the Pre-Petition Lender on account thereof or with respect thereto, are not subject to avoidance, recharacterization, reduction, disallowance, impairment, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.   The Debtors do not have any claims, counterclaims, causes of action, defenses, or setoff rights, whether arising under the Bankruptcy Code or otherwise, with respect to the Pre-Petition Obligations or against the Pre-Petition Lender and its predecessors-in-interest, affiliates, subsidiaries, agents, officers, directors, employees, and attorneys, with respect to the Pre-Petition Obligations, the Pre-Petition Security Agreements and the Pre-Petition Credit Agreement.

(f)     The Pre-Petition Lender perfected its security interests and the Pre-Petition Liens in and on the Pre-Petition Collateral by, among other methods, the filing of UCC-1 financing statements, instruments filed in federal, state, and county offices, mortgages, and other required documents against the Debtors and such Pre-Petition Collateral with the proper federal, state, and county offices for the perfection of such security interests and Pre-Petition Liens.

E.     Events of Default Under the Pre-Petition Credit Agreement.  Various Events of Default have occurred and are continuing under the Pre-Petition Credit Agreement (including, without limitation, the failure of the Debtors to repay the Pre-Petition Obligations on the scheduled maturity date of the Pre-Petition Credit Agreement), and as a result, the Pre-Petition Lender had the right, subject to the Pre-Petition Credit Agreement and the provisions of the Bankruptcy Code, to accelerate the Pre-Petition Obligations, foreclose on the Pre-Petition Collateral (with relief from the automatic stay), and cease advancing funds pursuant to the Pre-Petition Credit Agreement.

F.     Cash Collateral.  For purposes of this Order, the following constitute "Cash Collateral" of the Pre-Petition Lender within the meaning of section 363(a) of the Bankruptcy Code: (a) all funds of the Debtors which constitute the Pre-Petition Collateral (including any funds subject to a right of setoff in favor of the Pre-Petition Lender, any funds on deposit or maintained in any account with the Pre-Petition Lender or subject to a control agreement with the Pre-Petition Lender, and any proceeds of the Pre-Petition Collateral) as of the Petition Date, and (b) all cash proceeds of Pre-Petition Collateral received after the Petition Date.

G.     Pre-Petition Lender's Consent.  The Pre-Petition Lender consents to the Debtors' use of the Pre-Petition Lender's Cash Collateral, solely on the terms and conditions set forth in

this Order, and solely in accordance with the budget annexed hereto as Exhibit "A" (the "Budget"). The adequate protection provided herein and other benefits and privileges contained herein are consistent with and authorized by the Bankruptcy Code and are necessary in order to obtain such consent.

H. **Findings Regarding the Use of Cash Collateral**. (a) Good cause has been shown for the entry of this Order. The Debtors have an immediate and critical need to use the Cash Collateral in order to continue to effectuate an orderly sale or liquidation of their businesses. The Debtors' use of Cash Collateral is expected to be sufficient to meet the Debtors' immediate post-petition liquidity needs through a sale of its assets, subject to the terms of this Order, and all other agreements, documents, notes, or instruments delivered pursuant hereto or thereto or in connection herewith or therewith, including, without limitation, the Budget.

(b) The ability of the Debtors to have sufficient available sources of working capital to effectuate an orderly sale or liquidation of their businesses, and maximize the value of their assets depends upon the Debtors' use of the Cash Collateral. The Debtors have requested that the Pre-Petition Lender consent to (i) the use of its Cash Collateral, to be used by the Debtors solely in accordance with the terms of this Order and the Budget. In consideration of such accommodations, the Pre-Petition Lender shall be granted adequate protection (including, without limitation, the Adequate Protection Liens (as such term is defined herein)), as more particularly described herein.

(c) Based on the record presented to the Court at the Interim Hearing and the Final Hearing, good, adequate and sufficient cause has been shown to justify the immediate grant of the relief requested in the Motion as set forth herein to avoid irreparable harm to the Debtors' estates pursuant to Bankruptcy Rule 4001(b)(2). The terms of the Debtors' use of the Cash

Collateral, as more fully set forth herein, are (i) fair and reasonable, (ii) reflect the Debtors' prudent exercise of business judgment consistent with their fiduciary duties, (iii) constitute reasonably equivalent value and fair consideration for the Pre-Petition Lender's consent thereto, and (iv) are essential and appropriate for the continued operation and management of the Debtors' businesses and the preservation of their assets and properties.  Entry of this Order is in the best interests of the Debtors' estates and all parties in interest in these Chapter 11 Cases.

     I.   <u>Reasonable Terms; Good Faith</u>.

     (a) The terms of the proposed use of Cash Collateral are fair and reasonable, are supported by reasonably equivalent value and fair consideration, and reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties.

     (b) The terms of use of the Cash Collateral has been negotiated in good faith and at arm's-length among the Debtors and the Pre-Petition Lender.

     (c) The Pre-Petition Lender is permitting the use of its Cash Collateral in express reliance upon the protections afforded to the Pre-Petition Lender and, accordingly, shall be entitled to the full protections of the Bankruptcy Code in the event this Order or any provision hereof is vacated, reversed or modified.

     IT IS HEREBY ORDERED, ADJUDGED AND DECREED EFFECTIVE IMMEDIATELY, AND AGREED AMONG THE PARTIES THAT:

     1.   <u>Authorization to use Cash Collateral</u>.  Subject to the terms and conditions set forth in this Order (including, without limitation, the granting of the Adequate Protection Obligations and the Adequate Protection Liens provided herein), upon entry of this Order, the Debtors are authorized, pursuant to section 363(c)(2)(B) of the Bankruptcy Code, to use the Cash Collateral solely and exclusively for the disbursements set forth in the Budget (provided that such use is

within the Permitted Variances set forth in paragraph 2 of this Order) for the period of time from the date hereof until the earliest to occur of (a) the date that this Order ceases to be in full force and effect, or (b) the occurrence of the Termination Date in accordance with Paragraph 12 hereof, at which time all accrued interest and allowed fees and all other Adequate Protection Obligations shall, subject to section 506(b) of the Bankruptcy Code, be immediately due and payable and the Pre-Petition Lender shall have all other rights and remedies provided in this Order and under applicable law and the Debtors' authority to use the Cash Collateral shall automatically terminate without further order or relief from the Court. Notwithstanding anything herein to the contrary, all of the rights, remedies, benefits, and protections provided to the Pre-Petition Lender under this Order shall survive the Termination Date.

2. <u>Budget Permitted Variances</u>.

a. Commencing Week 11 of the Budget ending Sunday, October 24, 2010 and for every week thereafter,

      i. The Debtors' actual "Closing Cash Balance (before Accruals)", as set forth in the Budget, shall not be less than ninety-five percent (95%) of the budgeted "Closing Cash Balance (before Accruals)", for that given budget week (the "<u>Closing Cash Variance</u>");

      ii. The Debtors' actual "Closing Perpetual Inventory" (excluding supplies, samples and custom framing inventory), shall not be (a) less than (i) ninety eight percent (98%) of the amount of the "Closing Perpetual Inventory" set forth in the Budget (excluding supplies, samples and custom framing inventory) for that given budget week, plus (ii) inventory for which the Debtors have made

payment and/or have outstanding checks (not outstanding for more than two weeks) for goods not yet delivered, or (b) greater than one hundred five (105%) of the amount of the budgeted "Closing Perpetual Inventory" (excluding supplies samples and custom framing inventory) set forth in the Budget for that given Budget week.

iii.     The following line items set forth in the Budget are subject to a ten (10%) percent variance for the particular period in the Budget: Rent and Real Estate Taxes, Sales Taxes and Payroll, <u>provided, however,</u> that (a) if the actual amount of the line item amount for Sales Taxes is higher the Debtors shall pay the actual amount of the Sales Taxes for such particular period and (b) if the Court directs the Debtor to pay a higher amount for rent/occupancy charges than the amount in the Budget, the Debtors' payment of such amount shall be permitted. In aggregate, the use of Cash Collateral during any given week and on a cumulative basis in excess of the Budget is subject to the Closing Cash Variance.

b.     Commencing Week 10 of the Budget ending Sunday, October 17, 2010, and for every week thereafter, if any amount in the Budget is not used for a particular line item in the Budget during the period for which use of Cash Collateral is authorized for such line item, the Debtors may spend any such unused amount during future periods in the Budget, providing that the aggregate amounts expended during any such future periods do not exceed the amounts budgeted plus the Permitted Variances (as defined herein).

c.       All budgeted cash expenditures for professionals and U.S. Trustee fees shall either be paid or escrowed as set forth in the Budget, which payments and/or escrow shall reduce the Closing Cash Balance (before Accruals) accordingly.

d.       For the purposes of calculating the aforementioned Closing Cash Variance, the amounts by which actual charges for the Pre-Petition Lender's costs, charges, fees and expenses (attorneys' and otherwise) exceed those set forth in the Budget, shall be excluded.

e.       Variances to the Budget set forth in subparagraph (a), (b), (c) and (d) of this paragraph 2 shall, collectively, be referred to as the "Permitted Variances."

3.       Adequate Protection Obligations. The Pre-Petition Lender is entitled, under sections 363(e) of the Bankruptcy Code, to adequate protection of its interest in the Pre-Petition Collateral, including the Cash Collateral, for and equal in amount to the amount of the aggregate diminution in the value of the Pre-Petition Lender's interests in the Pre-Petition Collateral since the Petition Date, including any such diminution resulting from (a) the use of Cash Collateral, (b) the sale, lease, or use by the Debtors of the Pre-Petition Collateral, and (c) the imposition of the automatic stay under section 362 of the Bankruptcy Code (the aggregate amount of such diminution, being the "Adequate Protection Obligations"). The Debtors shall each be jointly and severally liable for the Adequate Protection Obligations.

4.       Super-Priority Claims.

a.       The Pre-Petition Lender is hereby granted in each of the Debtors' Chapter 11 Cases, an allowed, super-priority administrative expense claim (the "Cash Collateral Super-Priority Claim") under section 507(b) of the Bankruptcy Code with respect to all Adequate Protection Obligations.  The Cash Collateral Super-Priority Claim shall have priority over all administrative expenses of the kind specified in, or ordered pursuant to, any provision of the

Bankruptcy Code, including, without limitation, those specified in, or ordered pursuant to, sections 105, 326, 328, 330, 503(b), 506(c), 507(a), 507(b), 546(c), 726, and 1114 of the Bankruptcy Code, or otherwise (whether incurred in any of the Chapter 11 Cases or any conversion thereof to a case under chapter 7 of the Bankruptcy Code or any other proceeding related hereto or thereto), which Cash Collateral Super-Priority Claims shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof, but excluding all claims and causes of action under Chapter 5 of the Bankruptcy Code, including, without limitation, recoveries and proceeds of avoidance actions under sections 544, 545, 547, 548, 549, 550, 551 or 553 of the Bankruptcy Code (the "Avoidance Actions").  The Cash Collateral Super-Priority Claim shall be subject and subordinate only to the Carve-Out.

  5. Liens.

   a. To secure the Adequate Protection Obligations, the Pre-Petition Lender shall be granted a valid, perfected, priming, security interest in and liens on all of the Debtors' now owned and hereafter acquired, created or arising Collateral (as hereinafter defined), but excluding Avoidance Action Recoveries, subject only to the Carve-Out (all such liens and security interests granted to the Pre-Petition Lender to secure the Adequate Protection Obligations pursuant to this Order, being the "Adequate Protection Liens"), which liens are deemed effective and perfected as of the Petition Date and without the necessity of the Debtors incurring the expense for the execution, recordation of filings of mortgages, security agreements, control agreements, pledge agreements, financing statements or other similar documents, or possession or control of applicable assets.  For purposes hereof, "Collateral" is defined as all now owned and hereafter acquired assets and property of the Debtors and their estates, including without limitation all present and future accounts, deposit accounts, chattel paper, equipment,

documents, general intangibles, intellectual property, held items, investment property, instruments, inventory, items of payment, owned real property and proceeds of real property leases (each, a "Lease")[2], if applicable, proceeds, products, records and all other collateral described in the DIP Loan Agreement (as hereinafter defined). The Adequate Protection Liens shall extend and attach to all Collateral and any proceeds of Collateral which is presently in existence or hereafter arises or acquired (whether arising or acquired prior to or subsequent to the Petition Date) and which is owned by the Debtors or in which Debtors have any interest, whether held by any of Debtors or by others for any of Debtors' account, wherever located, but excluding Avoidance Actions and the proceeds thereof.

6.     Automatic Stay; Remedies.

a.     Upon the occurrence of an Event of Default or a breach of this Order, all stays and injunctions in these Cases, including, but not limited to, the automatic stay arising under section 362(a) of the Bankruptcy Code will be terminated automatically as to the Pre-Petition Lender, thereby permitting the Pre-Petition Lender, without further order of the Bankruptcy Court and without the need for filing any motion for relief from the automatic stay or any other pleading, to declare the Debtors' right to use Cash Collateral to be terminated, where upon the same shall forthwith terminate; provided that, (i) with the written agreement of the Pre-Petition Lender or (ii) pursuant to an order of the Court upon emergency motion and upon no less than three full business days' notice to the Pre-Petition Lender (which may be filed by the Debtors or the Committee), the Debtors may use only that amount of Cash Collateral necessary to preserve and protect the Collateral, which may include ongoing operations for a period not to

---

2. For the avoidance of doubt, the liens granted in this Order with respect to a Lease, extend only to the proceeds of such leased real property and not a direct lien on any such leased real property or on the Lease itself.

exceed five (5) days or such additional period of time to which the Pre-Petition Lender agrees in its sole discretion.

b.    Notwithstanding anything herein to the contrary, and notwithstanding the applicability of section 362 of the Bankruptcy Code (to the extent necessary to exercise such remedies, relief from automatic stay shall be deemed granted), upon notice of the occurrence of an Event of Default (as such term is defined herein) by the Pre-Petition Lender to the Debtors and the Debtors' failure to cure any such Event of Default within five (5) days after receipt of such notice, the Pre-Petition Lender shall also be entitled to immediately exercise any of the following rights and remedies, without further order of the Bankruptcy Court and without the need for filing any motion for relief from the automatic stay or any other pleading in order, during which time the Debtors may seek an order of the Court that an Event of Default has not occurred or has been cured, thereby enjoining the Pre-Petition Lender from such exercise (provided, however, that in the event the Debtors seek a court hearing with respect to such notice of an Event of Default, the sole issue to be adjudicated shall be whether an Event of Default has occurred or has been cured):

i.    Subject to paragraph 6(c) below, the Pre-Petition Lender may exercise and enforce any rights and remedies available upon default to a secured party under the Uniform Commercial Code, including, without limitation, the right to take possession of Collateral (without posting a bond or other form of security), to proceed with or without judicial process (without a prior hearing or notice of hearing), and to sell, lease or otherwise dispose of Collateral for cash or on credit (with or without giving warranties as to condition, fitness, merchantability or title to Collateral, and in the event of a credit sale in such manner and at such places (including Debtors' premises) as the Pre-Petition Lender determines is commercially reasonable, including, conducting one or more going out of business or liquidation sales, in the Pre-Petition Lender's own right or by one or more agents or contractors, which sales may be conducted upon any premises owned, leased, or occupied by Debtors. The Debtors will upon the

Pre-Petition Lender's demand assemble the Collateral and make it available to the Pre-Petition Lender at any place designated by the Pre-Petition Lender which is reasonably convenient to Debtors and the Pre-Petition Lender. Debtors' obligations to the Pre-Petition Lender shall be reduced only to the extent that payments are actually received by the Pre-Petition Lender;

ii. Lender may exercise any other rights and remedies available to it by law or agreement (including, without limitation, the Pre-Petition Loan Documents and related loan documents all of which shall survive for these purposes); and

iii. Without notice to or demand upon Debtors, make such payments and do such acts as the Pre-Petition Lender considers necessary or reasonable to protect its security interest in the Collateral. Debtors authorize the Pre-Petition Lender to enter any premises where the Collateral is located, to take and maintain possession of the Collateral, or any part of it, and to pay, purchase, contest, or compromise any lien in the Collateral that in the Pre-Petition Lender's determination appears to conflict with the Pre-Petition Lender's security interest and to pay all expenses incurred in connection therewith and to charge Debtors' loan account therefor;

c. Solely with respect to real property leasehold premises, or any Lease with respect thereto, the rights and remedies of the Pre-Petition Lender shall in all respects be limited to the (i) rights granted under applicable non-bankruptcy law, (ii) rights that individual landlords consent to in writing, and/or (iii) rights granted by this Court in this Order or a subsequently entered order (with proper notice and opportunity to respond given to affected landlords). All rights of landlords under their respective leases, other agreements and documents, the Bankruptcy Code and applicable non-bankruptcy law, are preserved.

d. The automatic stay imposed by section 362 of the Bankruptcy is hereby modified to the extent necessary to permit or effectuate the terms of this Order, including, without limitation, to permit the execution and recordation of documents in the Pre-Petition

Lender's discretion to evidence the creation and perfection of the Pre-Petition Lender's Adequate Protection Liens on the Collateral.

7.  Use of Proceeds; Bank Accounts.

a.  The Debtors shall use the Cash Collateral solely in accordance with and subject to the conditions set forth in this Order and the Budget (including Permitted Variances). Nothing in this Order shall be construed to require the Pre-Petition Lender to make advances or extensions of credit or other financial accommodations to permit the Debtors to make any payments, except to the extent expressly provided for in this Order.

b.  Any proceeds of the sale, lease or other disposition of the Collateral shall be used only (i) strictly in accordance with Budget, (ii) to pay down the Pre-Petition Obligations, or (iii) for payment in immediately available cash (A) on or before December 3, 2010 in the case of a Going Concern Sale (as herein defined) or (B) on or before December 15, 2010 in the case of a GOB Sale (as herein defined) of the proceeds of any such sale to the Pre-Petition Lender on account of the principal amount of the Pre-Petition Obligations in an amount not to exceed $9,100,000.00 (the "Agreed Payoff Amount"), by the Debtors' estates.  Upon receipt of the Agreed Payoff Amount (by the dates set forth in (A) and (B) above) and the exchange of the Mutual Releases (as defined herein) in favor of the Pre-Petition Lender (subject to Paragraph 29), the Pre-Petition Lender (i) shall be deemed to have released and discharged any and all pre- or post-petition liens, claims and encumbrances against the Debtors and their estates (ii) shall release any restricted cash being held by the Pre-Petition Lender; and (iii) shall remit to the Debtors' estates any and all amounts turned over to it by M&T Bank in connection with undrawn pre-petition letter of credit obligations.

c.    The maximum amount of the Debtors' cash not held in an account with the Pre-Petition Lender shall not exceed the sum of $50,000 (exclusive of the sales tax escrow account (which will be used exclusively for that purpose), payroll account (which will be used exclusively for that purpose) and cash in the registers at the stores).

8.    <u>Perfection of Liens and Replacement Liens</u>.

a.    This Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the Adequate Protection Liens, without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law of any jurisdiction or the taking of any other action to validate or perfect such liens or security interests in the Collateral or to entitle the Pre-Petition Lender to the priorities granted herein.  The automatic stay imposed by Section 362 is modified to permit the Pre-Petition Lender, but not require the Pre-Petition Lender, to file or record financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments in any jurisdiction, or take possession or control of collateral, or take any other action in order to validate and perfect the liens and security interests granted to it hereunder.  Whether or not the Pre-Petition Lender shall, in its sole discretion, choose to file such financing statements, trademark filings, copyright filings, mortgages, notices of lien or similar instruments, or take possession or control of collateral, or otherwise confirm perfection of the liens and security interests granted to it hereunder, such liens and security interests shall be deemed valid, perfected, allowed, enforceable, non-avoidable and not subject to challenge, dispute or subordination, at the time and on the date of entry of this Order.  Upon the request of the Pre-Petition Lender, the Debtors, without any further consent of any party or further order of this Bankruptcy Court, are authorized to take, execute and deliver such instruments and agreements (including, without

limitation, delivery of control agreements and possessory collateral) to enable the Pre-Petition Lender to further validate, perfect, preserve and enforce the Adequate Protection Liens.

b.      A certified copy of this Order may, in the discretion of the Pre-Petition Lender, be filed with or recorded in filing or recording offices in addition to or in lieu of any financing statements, mortgages, notices of lien or similar instruments, and all filing offices are hereby authorized to accept such certified copy of this Order for filing and recording.

9.      <u>Preservation of Rights Granted Under This Order</u>.

a.      Except for the Carve-Out and, with respect to the Adequate Protection Liens, no claim or lien having a priority superior to or *pari passu* with those granted by this Order to the Pre-Petition Lender shall be granted or allowed while any portion of the Pre-Petition Obligations (or the Agreed Payoff Amount if paid by the dates set forth in Paragraph 7(b)) remains outstanding, and the Adequate Protection Liens shall not be subordinated to or made *pari passu* with any other lien or security interest, whether under section 364(d) of the Bankruptcy Code or otherwise.

b.      Unless all of the Pre-Petition Obligations (or the Agreed Payoff Amount if paid by the dates set forth in Paragraph 7(b)) shall have been indefeasibly paid in full, the Debtors shall not, and shall not seek to, (i) in any way prime or otherwise adversely affect the liens granted under this Order by granting a subsequent lender or any party in interest a superior or *pari passu* lien or claim pursuant to sections 364(c)(1), 364(d) or section 507(b) of the Bankruptcy Code or otherwise, (ii) in any way grant junior encumbrances on any Collateral, or (iii) otherwise encumber otherwise unencumbered assets or estate property of the Debtors.

c.      Unless all of the Pre-Petition Obligations or the Agreed Payoff Amount (if paid by the dates set forth in Paragraph 7(b)) shall have been indefeasibly paid in full, it shall

constitute an Event of Default if the Debtors seek, or if there are entered, any modifications or extensions of this Order without the prior written consent of the Pre-Petition Lender, and no such consent shall be implied by any other action, inaction or acquiescence by the Pre-Petition Lender.

d.      If any or all of the provisions of this Order are hereafter reversed, modified, vacated or stayed, such reversal, stay, modification or vacation shall not affect (i) the validity of any of the Adequate Protection Obligations incurred prior to the actual receipt of written notice of the effective date of such reversal, stay, modification or vacation or (ii) the validity or enforceability of any lien or priority authorized or created hereby.  Notwithstanding any such reversal, stay, modification or vacation, any use of Cash Collateral by the Debtors prior to the actual receipt of written notice of the effective date of such reversal, stay, modification or vacation shall be governed in all respects by the original provisions of this Order, and the Pre-Petition Lender shall be entitled to all the rights, remedies, privileges and benefits granted by the Bankruptcy Code and this Order with respect thereto.

e.      Nothing contained in this Order or any subsequent Order shall affect (i) the validity of any loans made or repaid under the Post-Petition Facility prior to this Order or (ii) the validity or enforceability of any lien or priority authorized or created by the Interim Order or pursuant to the DIP Loan Agreement (as such term is defined in the Interim Order) with respect to the Post-Petition Facility.  Any use of the Post-Petition Facility established under the DIP Loan Agreement and the Interim Order by the Debtors prior to the entry of this Order shall be governed in all respects by the provisions of the Interim Order, and the Lender (as such term is defined in the Interim Order) shall be entitled to all the rights, privileges, and benefits granted by section 364(e) of the Bankruptcy Code, the Interim Order and the DIP Loan Agreement with

respect to the Post-Petition Facility, _provided_, _however_, that the Lender has no obligation to provide any additional funding thereunder.

      f.     Except as expressly provided in this Order or as agreed in writing by the Pre-Petition Lender, the Adequate Protection Liens, the Cash Collateral Super-Priority Claim and all other rights and remedies of the Pre-Petition Lender granted by the provisions of this Order shall survive, and shall not be modified, impaired or discharged by (i) the conversion of the Chapter 11 Cases, (ii) the dismissal of any of the Chapter 11 Cases, or (iii) the entry of an order confirming a chapter 11 plan in the Case. The terms and provisions of this Order shall continue in the Chapter 11 Cases, in any successor cases if any of the Chapter 11 Cases cease to be jointly administered, or in any superseding chapter 7 case under the Bankruptcy Code, and the Adequate Protection Liens, Cash Collateral Super-Priority Claim and all other rights and remedies of the Pre-Petition Lender granted by the provisions of this Order shall continue in full force and effect until the Pre-Petition Obligations (or the Agreed Payoff Amount if paid by the dates set forth in Paragraph 7(b)) is indefeasibly paid in full.

      10.     Limitation on Use of Collateral. Notwithstanding anything herein or in any other order of the Bankruptcy Court to the contrary, none of the Collateral (including cash and cash equivalents and Cash Collateral) or the Carve-Out, may be used to (i) object, contest or raise any defense to, the validity, perfection, priority, extent or enforceability of any amount due under the DIP Loan Documents (as such term is defined in the Interim Order), the liens or claims granted under this Order or the DIP Loan Documents, the Pre-Petition Obligations or the liens or claims granted under the Pre-Petition Security Agreements and Pre-Petition Credit Agreement, or (ii) assert any claims, counterclaims, defenses, causes of action, objections or contests (including, without limitation, any claims or causes of action arising under chapter 5 of the Bankruptcy Code)

against the Pre-Petition Lender or Lender (as such term is defined in the Interim Order) or its respective agents, affiliates, representatives, attorneys or advisors, provided, however, that nothing in this paragraph shall be deemed to preclude the use of Collateral and/or the Carve-Out by the Committee's professional for the purposes of (a) objecting to the Motion, or (b) using up to $35,000 of such amounts prior to the entry of this Order to investigate any claims or causes of action against the Pre-Petition Lender including in respect of the Pre-Petition Obligations or the Pre-Petition Liens securing the Pre-Petition Obligations. Nothing herein shall be construed as consent to the allowance of any fees and expenses of any professional retained in the Chapter 11 Cases, or shall affect the rights of the Pre-Petition Lender or any other interested party to object to the allowance and payment of such fees and expenses.

11.     <u>Events of Default</u>. An "Event of Default" means any of the following:

a.     The auction with respect to the sale of substantially all of the Debtors' assets (the "<u>Sale</u>") has not occurred on or before November 29, 2010;

b.     The Court has not entered an Order authorizing the Sale on or before November 30, 2010, in form and substance satisfactory to the Pre-Petition Lender;

c.     The Sale has not closed on or before December 3, 2010;

d.     The Agreed Payoff Amount shall not have been paid in full by the dates set forth in Paragraph 7(b) or as otherwise agreed to by the Pre-Petition Lender in writing;

e.     An Event of Default, other than an Event of Default existing at the time of entry of this Order, occurs under the Pre-Petition Loan Documents, which Event of Default the Debtors fail to cure within ten (10) days after the earlier of (i) the date upon which an officer of the Debtors obtains knowledge of such default or (ii) the date upon which the Debtors have received a record of such default from Pre-Petition Lender;

f.      The filing of a motion by the Debtors for entry of an order staying or otherwise prohibiting the prosecution of any enforcement action by Pre-Petition Lender or any motion or pleading seeking to challenge the Pre-Petition Lender's liens or otherwise commencing any cause of action against the Pre-Petition Lender;

g.      Debtors (except following the Pre-Petition Lender's prior written request or with Pre-Petition Lender's express prior written consent (and no such consent shall be implied from any other action, inaction, or acquiescence of Pre-Petitioner Lender)) shall file a motion with the Bankruptcy Court or any other court with jurisdiction in the matter seeking an order, or an order is otherwise entered, modifying, reversing, revoking, staying, rescinding, vacating, or amending this Order;

h.      Conversion of any of the Chapter 11 Cases to a Chapter 7 case under the Bankruptcy Code, or dismissal of any of the Chapter 11 Case or any subsequent Chapter 7 case either voluntarily or involuntarily;

i.      An examiner or officer with special powers is appointed pursuant to Section 1104(a) of the Bankruptcy Code;

j.      The entry of an order which provides relief from the automatic stay otherwise imposed pursuant to Section 362 of the Bankruptcy Code, which order permits any creditor, other than Pre-Petition Lender, to realize upon, or to exercise any right or remedy with respect to, any asset of the Debtors or to terminate any license, franchise, or similar agreement, where such stay relief or termination could have a Material Adverse Effect;

k.      The Debtors file any motion or application, or the Bankruptcy Court allows the motion or application of any other person, which seeks approval for or allowance of any claim, lien, security interest ranking equal or senior in priority to the claims, liens and

security interests granted to Pre-Petition Lender under this Order or the Pre-Petition Loan Documents or any such equal or prior claim, lien, or security interest shall be established in any manner, except, in any case, as expressly permitted under this Order;

l.       This Order shall cease to be in full force and effect from and after the date of entry thereof by the Bankruptcy Court;

m.       The occurrence of any default or event of default under, or the failure of the Debtor to abide by any of the terms and conditions of, this Order; or

n.       This Order shall be modified, reversed, revoked, remanded, stayed, rescinded, vacated or amended on appeal or by the Bankruptcy Court without the prior written consent of the Pre-Petition Lender (and no such consent shall be implied from any other authorization or acquiescence by the Pre-Petition Lender);

o.       Any non-compliance with the Budget, subject to Permitted Variances.

12.      Termination.  The agreement by the Pre-Petition Lender to allow the use of Cash Collateral pursuant to the terms of this Order shall continue until the earlier of (i) December 3, 2010, which may be extended solely at the option of the Pre-Petition Lender and the Debtors in writing, without the need for any further Court approval, or (ii) the occurrence of an Event of Default (hereinafter, the "Termination Date").

13.      For purposes hereof, the "Carve Out" shall mean:  (a) all fees required to be paid to the Clerk of the Bankruptcy Court and to the Office of the U.S. Trustee under section 1930(a) of title 28 of the United States Code; (b) to the extent not otherwise payable from proceeds of Collateral, all allowed fees and expenses incurred in the Chapter 11 Case by professionals retained by the Debtors or by the Committee (collectively, the "Retained Professionals") in amount not to exceed the sum of (i) all allowed fees and expenses incurred by the Retained

Professionals prior to the occurrence of the Termination Date (whether allowed before or after the Termination Date) in amounts not in excess of the amounts set forth in the Budget[3] for such Retained Professional through the Termination Date, plus (ii) after the occurrence of the Termination Date, an amount not to exceed (A) $60,000 in the aggregate for the Retained Professionals of the Debtors, (B) $15,000 in the aggregate for the Retained Professionals of the Committee and (C) $5,000 in the aggregate for the Chapter 7 Trustee, if any; and (c) retention and incentive bonuses to the Debtors' employees that have provided services to the Debtors through the closing of the Sale in an amount not to exceed $150,000 in the aggregate set forth in a schedule reasonably acceptable to the Pre-Petition Lenders (the "Retention Bonus Carve Out"), provided, however, that the Retention Bonus Carve Out shall not be included in the Carve Out in the event of (i) shrinkage of the Debtors' Perpetual Inventory, excluding supplies, in an amount greater than two (2%) percent, or (ii) the failure of the Pre-Petition Lender to receive the Agreed Payoff Amount paid by the dates set forth in Paragraph 7(b).

14.    Limits on the Pre-Petition Lender's Liability.  Nothing in this Order or the Pre-Petition Loan Documents or any other documents related to the financing transactions authorized hereby shall in any way be construed or interpreted to impose or allow the imposition upon the Pre-Petition Lender of any liability for any claims arising from the pre-petition or post-petition activities by the Debtors in the operation of their businesses, or in connection with their restructuring efforts.  The Pre-Petition Lender shall not, in any way or manner, be liable or responsible for (a) the safekeeping of the Collateral, (b) any loss or damage thereto occurring or arising in any manner or fashion from any cause, (c) any diminution in the value thereof, or

---

[3]    For purposes of the Carve Out, the Budget shall include the budget annexed to the Interim Order entered on Motion as Exhibit B [Docket No. 21] for the period through Week 7.

(d) any act or default of any carrier, servicer, bailee, custodian, forwarding agency or other person, and all risk of loss, damage or destruction of the Collateral shall be borne by the Debtors.

15.    <u>No Waiver by Pre-Petition Lender</u>.  Notwithstanding anything to the contrary herein, the entry of this Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair any of the rights of the Pre-Petition Lender under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the right of the Pre-Petition Lender to (a) request the conversion of any of the Chapter 11 Cases to cases under chapter 7 of the Bankruptcy Code or the appointment of a chapter 11 trustee, examiner, fiduciary, or responsible person with expanded powers, (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans of reorganization or liquidation for the Debtors, or (c) request modification of the automatic stay pursuant to section 362 of the Bankruptcy Code.

16.    <u>Committee Review Period</u>

a.    In consideration of, *inter alia*, the Pre-Petition Lender's agreement to reduce the amount of the Pre-Petition Obligations to the Agreed Payoff Amount as set forth herein, the Committee waives its right to file a complaint pursuant to Bankruptcy Rule 7001 asserting claims against the Pre-Petition Lender or seeking to invalidate, subordinate, recharacterize or otherwise challenge (collectively, the "<u>Challenges</u>") the Pre-Petition Obligations or the Pre-Petition Liens, and any and all claims and defenses against the Pre-Petition Lender shall be deemed, immediately and without further action, to have been forever relinquished, released, and waived as to the Committee and any other person or entity.

b.    Upon entry of this Order, (i) the Pre-Petition Obligations shall constitute allowed secured claims for all purposes in the Chapter 11 Cases and any subsequent cases or

proceedings under the Bankruptcy Code, including, without limitation, any chapter 7 proceedings if any Chapter 11 Case is converted to a case under chapter 7 of the Bankruptcy Code (each, a "Successor Case"), (ii) the Pre-Petition Liens shall be deemed legal, valid, binding, enforceable, perfected liens not subject to recharacterization, subordination (except as expressly specified in this Order as to the Carve-Out, the DIP Liens and the Adequate Protection Liens) or avoidance for all purposes in the Chapter 11 Cases and any Successor Case, and (iii) the Pre-Petition Obligations, the Pre-Petition Liens, and prior payments on account of or with respect to the Pre-Petition Obligations shall not be subject to any other or further claims, cause of action, recharacterization, objection, contest, setoff, defense, or challenge by any party in interest for any reason, including, without limitation, by any successor to or estate representative of any Debtor. Nothing in this paragraph or otherwise in this Order shall impact the right of (a) the Debtors and/or the Committee to seek a determination of the secured portion of the amount of the Pre-Petition Lender's claim pursuant to section 506(b) of the Bankruptcy Code or (b) the Committee to assert that the proceeds of the sale of any of the Debtors' real property leases, other than as part of a Going-Concern Sale (as defined herein) are not subject to the Pre-Petition Liens.

17. <u>Section 506(c) Waiver</u>. Except for the Carve-Out, no costs or expenses of administration which have been or may be incurred in the Chapter 11 Cases or any future proceedings or cases related hereto, at any time, shall be charged against the Pre-Petition Lender, its claims, or the Collateral, pursuant to sections 105, 506(c) or 522 of the Bankruptcy Code, or otherwise, without the prior written consent of the Pre-Petition Lender and no such consent shall be implied from any other action, inaction, or acquiescence by the Pre-Petition Lender.

18.     _Avoidance Actions_.  Upon the entry of this Order and in consideration for the agreements by the Committee and the Pre-Petition Lender to the terms of this Order, except to the extent otherwise set forth herein, all Avoidance Actions against parties other than insiders (as such term is defined in section 101(31) of the Bankruptcy Code) of any of the Debtors shall be waived and released.

19.     _Successors and Assigns_.  To the extent permitted by law, the provisions of this Order shall be binding upon the Pre-Petition Lender and the Debtors and each of their respective successors and assigns (including any chapter 7 or chapter 11 trustee hereinafter appointed or elected for the estate of any of the Debtors or any examiner appointed pursuant to section 1104 of the Bankruptcy Code in the Chapter 11 Cases or any subsequent chapter 7 case) and the Committee, and shall inure to the benefit of the Pre-Petition Lender and the Debtors and (except with respect to any trustee hereinafter appointed or elected for the estate of the Debtors) their respective successors and assigns; _provided_, _however_, that the Lender shall have no obligation to extend any financing to any chapter 7 trustee or similar responsible person appointed for the estate of the Debtors.

20.     _Subsequent Liens_.  If the Court grants liens or security interests to others pursuant to Section 364(d) of the Bankruptcy Code or any other provision of the Bankruptcy Code in the Collateral (collectively, the "_Subsequent Liens_"), any proceeds of the loans or extensions of credit secured by Subsequent Liens shall be first applied to payment of the Pre-Petition Obligations.

21.     _Binding Nature of Findings_.  The findings contained in this Order shall be binding upon all parties in interest.

22.    Immediate Effectiveness.  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), 7062, or 9014 of the Bankruptcy Rules or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Order shall be immediately effective and enforceable upon its entry and there shall be no study of execution or effectiveness of this Order.

23.    Rights of Recoupment or Setoff.  Notwithstanding anything to the contrary in this Order, nothing in this Order shall (a) compromise, modify or affect the ability of any party in interest to assert a right of recoupment or setoff with respect to amounts allegedly owed to the Debtors, or (b) create any right of recoupment or setoff with respect to amounts allegedly owed to the Debtors.

24.    No Third Party Beneficiaries.  Nothing in this Order shall create any right for the direct or indirect benefit of any person other than the parties to the Pre-Petition Loan Documents and the Committee, as applicable. Notwithstanding the foregoing, all parties in interest, including, without limitation, landlords, are entitled to enforce the provisions of this Order to the extent that this Order preserves their rights or imposes limitations on the rights or actions of the Debtor, the Lender and the Committee.

25.    Retention of Jurisdiction.  The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from this Order and its implementation.

26.    Authority.  The Debtors are authorized to perform all acts, and execute and comply with the terms of such other documents, instruments and agreements the Pre-Petition Lender may reasonably require, as evidence of the Adequate Protection Liens, or which otherwise may be deemed reasonably necessary by the Pre-Petition Lender to effectuate the terms and conditions of this Order.

27.     <u>Marketing Reports</u>.  No less than every two (2) business days, the Debtors shall provide the Pre-Petition Lender and the Committee with an updated schedule setting forth the status of the marketing of the Debtors' assets, including, but not limited to, a list of all entities that have (a)  signed confidentiality agreements, (b)  accessed due diligence materials (including the date of last access by such entities), (c)  met (telephonically and physically) with the Debtors with respect to the Sale (including the date of such meeting(s), and (d)  performed site visits to the Debtors' premises (including the date of such site visits).  The Debtors shall provide to the Committee any reports it provides to the Pre-Petition Lender, subject to the entry of confidentiality agreements by the members of the Committee.

28.     <u>Inventory</u>.   No less than every two (2) business days, the Debtors shall provide the Pre-Petition Lender and the Committee with an updated schedule of the Perpetual Inventory. The Debtors shall consult with the Pre-Petition Lender and the Committee with respect to purchases of new inventory.

29.     <u>Costs and Expenses</u>.   The Debtors shall pay the reasonable fees and disbursements of use of the Lender's professionals in connection with the Post-Petition Facility and the use of the Pre-Petition Lender's Cash Collateral, including, without limitation, all expenses related to the Interim Order, this Order and all Lender Expenses (as such term is defined in the DIP Loan Agreement).  The Pre-Petition Lender shall provide copies of all invoices for such fees and disbursements to counsel for the Committee.

30.     <u>No Proof of Claim</u>.   The Pre-Petition Lender is hereby relieved of the requirements to file a proof of claim in the Chapter 11 Cases or any proceeding cases with respect to the Pre-Petition Obligations.

31.     Severance/Retention Program.         The Committee and the Pre-Petition Lender shall negotiate in good faith with the Debtors with respect to a retention incentive program for employees, which retention incentive program is anticipated by the Debtors to seek payments on behalf of employees of approximately $350,000.00 in aggregate, $150,000.00 of which shall constitute the Retention Bonus Carve-Out, and which retention incentive program shall be subject to approval by the Bankruptcy Court.

32.     Agreements and Consents with Respect to Sale.     As additional adequate protection of the Pre-Petition Lender's interest in the Pre-Petition Collateral and as a material inducement to each of the Debtors, the Pre-Petition Lender and the Committee to consent to the entry of this Order and to the Court's entry of an "Order Pursuant To Sections 105(A) And 363 of the Bankruptcy Code Approving Bidding Procedures And Notice of the Auction Relating Thereto And Granting Related Relief" in the form annexed hereto as Exhibit "B", the following agreements and consents with respect to any Sale are hereby approved and shall be binding upon the parties:

a.     For purposes of the following subparagraphs of this Order, the following terms shall have the following respective meanings:

i.      "Backstop Amount" shall mean an amount not to exceed $750,000.00 but otherwise equal to the difference, if any, between (i) the Agreed Payoff Amount and (ii) the Net Sale Proceeds.

ii.     "Net Sale Proceeds" shall mean the cash proceeds of Sale of the Debtors' assets received by the Pre-Petition Lender from any and all sources, including without limitation cash, collections of accounts receivable, inventory proceeds, augmented inventory profits or otherwise, less the Carve-Out and all Budgeted expenses of the Sale.

iii.    "Mutual Releases" shall mean mutual general releases, in form and substance reasonably satisfactory to the Debtors, the Committee and the Pre-Petition Lender, to be given by the Debtors and the Committee (but not by the individual members of the Committee)

jointly and severally (collectively, the "Estate Parties") in favor of Natan Wekselbaum ("NW") and his insiders (collectively, the "NW Parties")[4] and in favor of the Pre-Petition Lender, by the Pre-Petition Lender in favor of the Estate Parties and in favor of the NW Parties, and by the NW Parties in favor of the Estate Parties and in favor of the Pre-Petition Lender, together with each such releasee's respective representatives, agents, administrators, successors, assigns, members, managers, officers, directors and attorneys, pursuant to which the respective releases shall be released from any and all obligations, debts, losses, damages, liabilities, contracts, controversies, agreements, premises, claims, causes of action, and demands of any kind whatsoever at law or in equity, direct or indirect, known or unknown, discovered or undiscovered, asserted or unasserted, arising from the beginning of time to the date thereof, including without limitation claims and causes of action under Chapter 5 of the Bankruptcy Code, which the respective releasers or their successors and assigns, ever had, now has, or hereafter can, shall or may have, arising out of, by reason of, or relating in any way whatsoever to the Debtors and their estates.

b.      Any Sale, whether denominated as a "going out of business sale", "store closings sale", "liquidation sale" or otherwise, that provides for the disposition of substantially all of the Debtors' assets other than as a going concern (a "GOB Sale"), shall exclude all of the Debtors' intellectual property assets, including without limitation all licenses and assets associated with the Debtors' websites (collectively, the "IP Assets"), provided that in any GOB Sale the Debtors shall provide the purchaser(s) of their assets that are the subject of the GOB Sale (the "Non-IP Assets") with a limited license for the use of the IP Assets on reasonable and customary terms sufficient to permit such purchasers to use and/or dispose of the Non-IP Assets. Nothing in this Order shall constitute advance approval of any GOB Sale.

c.      NW shall, within five (5) business days after the date of entry of this Order, as collateral security for his obligation to make the "Backstop Payment" (as such term is

---

[4] For purposes of clarity, the NW Parties shall not include Meridian Acquisition Ventures, LLC, GH Acquisition, LLC, Thomas Shull or Paul Jen or any relatives, affiliates, directors, officers, employees, shareholders or members thereof.

defined below) to the Pre-Petition Lender, pledge to the Pre-Petition Lender a brokerage account (the "NW Brokerage Account") with a value of and to be maintained at not less than $800,000.00 in cash, bonds or securities reasonably acceptable to the Pre-Petition Lender, on terms and conditions reasonably satisfactory to the Pre-Petition Lender. Notwithstanding the foregoing, NW shall be permitted to use any cash balance maintained in the NW Brokerage Account, notwithstanding the interests therein granted to the Pre-Petition Lender, (a) in amounts in excess of $800,000.00 or (b) for payment in whole or in part of either (i) any good-faith deposit required of qualified bidders should NW seek to bid for the Debtors' assets in any "Going-Concern Sale" (as such term is defined below) and/or (ii) the cash portion of the purchase price should NW bid for the Debtors' assets and be determined by the Court to have made the highest and best bid therefor. The Pre-Petition Lender shall release its interests in the NW Brokerage Account and the assets maintained therein (i) upon the earlier to occur of its receipt of Net Sale Proceeds and/or the Backstop Payment in aggregate amount equal to Agreed Payoff Amount, or (ii) upon the occurrence of a Going Concern Sale consistent with subparagraph "f".

    d.    In the event that the Sale is a GOB Sale:

        i.  If the Net Sale Proceeds are equal to or greater than the Agreed Payoff Amount, then upon the Pre-Petition Lender's receipt of Agreed Payoff Amount, which receipt shall be unavoidable and indefeasible (subject to Paragraph 29), the parties shall exchange the Mutual Releases, and the Pre-Petition Lender shall be deemed to release its liens, mortgages, pledges, security interests and/or other interests (collectively, "Liens") in the Debtors' pre-petition and post-petition assets and shall execute, deliver and/or file, as appropriate, such UCC-3 termination statements or other documents as may be reasonably requested by the Debtors and/or the Committee to effectuate such release of Liens. Any Net Sale Proceeds in excess of the Agreed Payoff Amount shall be held by the Debtors for the benefit of their estates and creditors.

ii. If the Net Sale Proceeds are less than the Agreed Payoff Amount, then within five (5) business day after receipt of written demand from the Pre-Petition Lender therefor, NW shall pay the Backstop Amount in cash to the Pre-Petition Lender (the "Backstop Payment").

iii. Upon payment to the Pre-Petition Lender of the Net Sales Proceeds and, if triggered, the Backstop Payment (A) the Pre-Petition Lender shall be deemed to have assigned to NW, without recourse, its pre-petition and post-petition claims against the Debtors to the extent of the Backstop Payment, which claim as held by NW (the "NW Assigned Lien & Claim") shall not bear interest, shall be allowed and unavoidable, and shall be secured by an unavoidable lien and security interest in and to Pre-Petition Collateral, including the IP Assets but otherwise without recourse to the Debtors and/or the Debtors' other assets, (B) subject to Paragraph 29, the parties shall exchange the Mutual Releases, and the Pre-Petition Lender shall be deemed to release its Liens in the Debtors' pre-petition and post-petition assets and shall execute, deliver and/or file, as appropriate, such UCC-3 termination statements or other documents as may be reasonably requested by the Debtors and/or the Committee to effectuate such release of Liens, except that the foregoing Mutual Releases and/or release of Liens shall not affect, impair, prejudice or release (a) the NW Assigned Lien & Claim and/or NW's interests in the Pre-Petition Collateral, including the IP Assets or (b) claims of individual Committee members or third parties against the NW Parties on account of, *inter alia*, guarantees by the NW Parties of the Debtors' obligations. Any Net Sale Proceeds received from such GOB Sale in excess of the Agreed Payoff Amount, shall be paid to NW in full or partial satisfaction of the NW Assigned Lien & Claim, up to the amount of the Backstop Payment.

iv. The Debtors shall thereafter sell the IP Assets at auction pursuant Section 363 of the Bankruptcy Code, free and clear of NW's interests therein, at which auction NW shall be deemed a qualified bidder should he elect to bid, and shall be entitled to credit-bid the NW Assigned Lien & Claim against the purchase price of the IP Assets. The credit-bid amount and/or the first net cash proceeds of such sale shall be indefeasibly applied against the amount of the NW Assigned Lien & Claim.

e. The Pre-Petition Lender shall be deemed to have consented to the Court's approval of any Sale that pays the Pre-Petition Lender the Net Sales Proceeds on or before December 3, 2010 that is a going-concern sale (a "Going-Concern Sale") provided that the Net

Sale Proceeds thereof are reasonably believed by the Pre-Petition Lender to be at least equal to or greater than the Agreed Payoff Amount.  Such Going-Concern Sale shall be free and clear of the Pre-Petition Lenders' claims against and interest in the Debtors and their assets.  Upon the closing of such Going-Concern Sale and the Pre-Petition Lenders' receipt of the Agreed Payoff Amount, which receipt shall be unavoidable and indefeasible, the parties shall exchange the Mutual Releases, and, subject to Paragraph 29, the Pre-Petition Lender shall be deemed to release its Liens in the Debtors' pre-petition and post-petition assets and shall execute, deliver and/or file, as appropriate, such UCC-3 termination statements or other documents as may be reasonably requested by the Debtors and/or the Committee to effectuate such release of Liens. Thereafter, any Net Sale Proceeds in excess of the Agreed Payoff Amount shall be held by the Debtors for the benefit of their estates and creditors.

     f.  The Debtors shall neither accept, seek nor support the Court's approval of any Going-Concern Sale if the Net Sale Proceeds thereof are reasonably believed by the Pre-Petition Lender to be to less than the Agreed Payoff Amount, unless (i) the Pre-Petition Lender consents in writing to such Going-Concern Sale or (ii) NW, in his absolute and sole discretion, has paid, or caused to be paid, the Backstop Amount to the Pre-Petition Lender.  In either of such cases, such Going-Concern Sale shall be free and clear of the Pre-Petition Lenders' claims against and interest in the Debtors and their assets.  Upon the closing of such Going-Concern Sale and the Pre-Petition Lenders' receipt of the Net Sale Proceeds of up to the Agreed Payoff Amount less the Backstop Amount if paid to the Pre-Petition Lender, which receipt of Net Sale Proceeds shall be unavoidable and indefeasible, the parties shall exchange the Mutual Releases, and, subject to Paragraph 29, the Pre-Petition Lender shall be deemed to release its Liens in the Debtors' pre-petition and post-petition assets and shall execute, deliver and/or file, as appropriate,

such UCC-3 termination statements or other documents as may be reasonably requested by the Debtors and/or the Committee to effectuate such release of Liens. Thereafter, any Net Sale Proceeds in excess of the Agreed Payoff Amount less the Backstop Amount if paid to the Pre-Petition Lender shall be held by the Debtors for the benefit of their estates and creditors.

33.     No Outstanding Obligations Under Post-Petition Facility. The Debtor and the Pre-Petition Lender acknowledge that there are no outstanding obligations owed by the Debtor under the Post-Petition Facility of the DIP Loan Agreement (as such term is defined in the Interim Order). Nothing in the DIP Loan Agreement shall serve as an independent basis for exercise by the Pre-Petition Lender of any default remedies.

34.     No Issuance of Replacement Letters of Credit Under Post-Petition Facility. The Debtor and the Pre-Petition Lender acknowledge that they will not attempt under the DIP Loan Agreement (as such term is defined in the Interim Order) to replace an existing letter of credit issued in favor of a landlord with one issued by the Pre-Petition Lender.

35.     In the event the Pre-Petition Lender seeks any additional fees set forth in the August 12, 2010 "Fee Letter", the Pre-Petition Lender shall provide no less than seven (7) days notice to the Debtors, the Committee and the objecting landlords prior to payment of such fees.


**s/Arthur J. Gonzalez**
Hon. Arthur Gonzalez
Chief United States Bankruptcy Judge


Dated:    October 22, 2010