FIRST AMENDMENT TO
ASSET PURCHASE AGREEMENT

This First Amendment to Asset Purchase Agreement dated as of November 26, 2010 (this "First Amendment"), is entered into by and among The Weck Corporation, West Weck, LLC, Gracious Home.com, LLC, and Weck Chelsea, LLC (each a "Seller" and collectively, "Sellers"), and Americas Retail Flagship Fund LLC or its designees and assigns (the "Purchaser").

WHEREAS, Purchaser and Sellers are parties to that certain Asset Purchase Agreement dated as of November 18, 2010 (the "Agreement");

WHEREAS, Section 12.3 of the Agreement permits amendment of the Agreement by a written instrument executed by each of the parties to the Agreement; and

WHEREAS, the parties to the Agreement desire to amend certain provisions of the Agreement pursuant to this First Amendment,

NOW, THEREFORE, in consideration of the foregoing and the mutual representations, warranties, covenants and agreements set forth herein, and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto, intending to be legally bound hereby, agree as follows:

Section 1    Definitions.  Capitalized terms used herein and not otherwise defined shall have the meaning ascribed to them in the Agreement.

Section 2    Closing Date Working Capital.  The definition of "Closing Date Working Capital" in Section 1.1. of the Agreement is hereby amended by deleting the first sentence thereof and adding the following sentence in its place:

> "Closing Date Working Capital" shall mean: (i) the value as of the Closing Date of the Purchased Assets constituting only current assets, minus (ii) the value as of the Closing Date of the Assumed Liabilities constituting only Sellers' current liabilities (provided, that the amount of Capped Assumed Liabilities to be included in the calculation of Closing Date Working Capital shall not exceed $1,800,000 in the aggregate; and provided further that (A) (x) accrued payroll and payroll related obligations that are not assumed by the Purchaser, (y) accrued sick time and vacation time and (z) accrued sales taxes shall not be included as current liabilities to be included in the calculation of Closing Date Working Capital, and (B) accrued payroll and payroll related obligations that are not assumed by the Purchaser and accrued sales taxes shall not be Assumed Liabilities).

Section 3    Payroll Related Obligations.  Section 1.1 of the Agreement is hereby amended by inserting the new defined term "Payroll Related Obligations" in alphabetical order in such section, to read as follows:

"Payroll Related Obligations" shall mean employer taxes, medical and dental premiums, life insurance premiums, worker's compensation and long term disability.

Section 4   References to Payroll Related Obligations.  All references in the Agreement to "payroll related obligations" shall be deleted and replaced with references to the new defined term "Payroll Related Obligations".

Section 5   Purchase Price.  Section 2.2 of the Agreement is hereby amended and restated in its entirety as follows:

The total consideration for the Purchased Assets (the "Purchase Price") is comprised of (i) a cash payment of Eleven Million Three Hundred Fifty Thousand Dollars ($11,350,000), subject to adjustment pursuant to the terms of this Agreement (the "Cash Purchase Price"), plus (ii) a note in the aggregate amount of One Million One Hundred Fifty Thousand Dollars ($1,150,000), the terms of which shall be reasonably agreed among the parties substantially in accordance with the term sheet set forth as Exhibit F hereto (the "Note"), plus (iii) certain transition services to be provided by Purchaser and/or Affiliates of Purchaser to Sellers valued at One Hundred Thousand Dollars ($100,000) pursuant to a transition services agreement to be mutually agreed among the parties prior to the Closing (the "Transition Services Agreement"), plus (iv) the assumption of Assumed Liabilities.

Section 6   References to the Note.  All references in the Agreement to the defined term "Notes" shall be deleted and replaced with references to the defined term "Note".

Section 7   Apportionment.  Section 2.8 of the Agreement is hereby amended by deleting the first and second sentences thereof and adding the following three sentences in their place:

The following are to be apportioned as of 12:00 midnight on the day preceding the Closing Date (the "**Apportionment Date**") to the extent such (a) are valid postpetition claims or are subject to non-avoidable liens and (b) are not current assets or current liabilities that are included in the computation of Closing Date Working Capital: rent (including percentage rent and additional rent) under any of the Leases, water, sewer and utility charges and real estate taxes, to the extent payable under the Leases and such other apportionment and adjustments as are customarily apportioned in transactions of this nature, including insurance premiums payable to landlords for Leased Property, any merchant association dues and amounts payable under Assigned Contracts, and any payroll and payroll related obligations for any pay period that begins prior to Closing and ends thereafter.  With respect to

2

such payroll and payroll related obligations, if the majority of the pay period falls prior to Closing, Sellers will be responsible for causing all of the payroll and payroll related obligations to be provided to employees for the entire pay period, and if the majority of the pay period falls after Closing, Purchaser will be responsible for causing all of the payroll and payroll related obligations to be provided to employees for the entire pay period (in each case subject to adjustments to the Cash Purchase Price pursuant to the third following sentence). For the avoidance of doubt, accrued vacation time and sick leave time shall not be prorated pursuant to this Section 2.8.

Section 8  <u>Consents</u>.  Notwithstanding any covenant, representation or Closing condition set forth in the Agreement, the Purchaser hereby acknowledges that (A) consents may be required in connection with the assignment to Purchaser, and the assumption by Purchaser, of the contracts listed on Schedule 1 to this First Amendment (the "Supplemental Notice Contracts") and (B) the other parties to such proposed Supplemental Notice Contracts have not received notice, at least 10 days prior to the Sale Hearing, of the proposed assumption and assignment of such Supplemental Notice Contracts and any Cure Costs related thereto. Purchaser also hereby agrees that the failure to obtain such consents and/or provide such notice at or prior to the Closing shall not constitute a breach of any representation, warranty or covenant and shall not result in a Closing condition to fail to be satisfied. Notwithstanding anything contained in the Agreement to the contrary, the Agreement shall not constitute an agreement to assign any of the Supplemental Notice Contracts described in this Section 8 if an assignment thereof requires the consent of a third party thereto and such consent is not obtained, or such Supplemental Notice Contracts are not assigned pursuant to Section 365 of the Bankruptcy Code, at or prior to the Closing, in which case the provisions of Section 5.5 (Further Assurances) and Section 6.1 (All Reasonable Best Efforts) of the Agreement shall apply. In furtherance of the foregoing, and not in limitation thereof, Sellers shall, in the event and to the extent that Sellers are unable to obtain any required consent, approval or amendment required to assign any Supplemental Notice Contract to Purchaser, use commercially reasonable efforts for a period of time ending no later than the earlier of (i) March 31, 2011 or (ii) the effective date of a plan of reorganization or liquidation of the Sellers, to, at no cost or expense to the Sellers, (i) if legally permissible, continue to hold, and to the extent required by the terms applicable to such Supplemental Notice Contract, maintain such Supplemental Notice Contract, for the benefit of Purchaser, and be bound thereby, (ii) cooperate in any arrangement, reasonable and lawful as to Sellers and Purchaser, designed to provide to Purchaser the benefits arising under such Supplemental Notice Contract, including accepting such reasonable direction as Purchaser shall request of Sellers and (iii) enforce at Purchaser's request, or allow Purchaser to enforce in a commercially reasonable manner, any rights of Purchaser under such Supplemental Notice Contract against the other party or parties thereto (including the right to elect to terminate such of the foregoing in accordance with the terms thereof upon the request of Purchaser); <u>provided</u>, <u>however</u>, that Purchaser shall (i) cooperate with Sellers in order for Sellers to provide the benefits contemplated by this Section 8, (ii) promptly pay any and all costs and expenses incurred by Sellers in connection with the performance by Sellers of their obligations under this Section 8, and (iii) indemnify and hold the Sellers harmless from all costs, expenses, damages, losses and liabilities incurred by Sellers in connection with the performance by Sellers of their obligations under this Section 8. Nothing in

3

this Section 8 shall prohibit Sellers from ceasing operations or winding up their affairs after the Closing. Notwithstanding anything to the contrary in the Agreement or this First Amendment, the aggregate amount of Cure Costs to be paid by Sellers in connection with any assignment and assumption of the Supplemental Notice Contracts shall not exceed $25,000.

Section 9  Section 5.6(d). Section 5.6(d) of the Agreement is hereby amended by adding the following sentence to the end of Section 5.6(d):

> In the event Sellers have not deposited an aggregate amount of additional security deposits equal to Five Hundred Thousand Dollars ($500,000) on or prior to Closing for the demised premises located at each of 1220 Third Avenue, New York, New York and 179 East 70th Street New York, New York, if and to the extent required pursuant to this Section 5.6(d), in each case with the existing landlords or, in the case of any new lease for premises replacing such leased premises, one or more new landlords, then the Cash Purchase Price shall be reduced by an amount equal to the difference between $500,000 and the actual amount of additional security deposits actually posted by the Sellers on or prior to the Closing on behalf of Purchaser. In the event of such a reduction of the Purchase Price, Sellers obligations under this Section 5.6(d) shall be deemed satisfied.

Section 10  Section 5.7(a). Section 5.7(a) of the Agreement is hereby amended by deleting it in its entirety and replacing it with:

> Subject to Section 5.7(d) the Sellers shall, (i) on or prior to the Closing, pay all Cure Costs with respect to Assigned Contracts as provided in the Cure Order or the Sale Order, and (ii) within 2 Business Days of receipt of any revised or amended cure order, pay all Cure Costs with respect to Assigned Contracts provided in any such revised or amended cure order, so that such Assigned Contracts may be assumed by the Sellers and assigned to the Purchaser as applicable in accordance with the provisions of section 365 of the Bankruptcy Code.

Section 11  Section 6.6. Section 6.6 of the Agreement is hereby amended by deleting it in its entirety and replacing it with:

> "[Reserved.]"

Section 12  Section 6.7. Section 6.7 of the Agreement is hereby amended by deleting it in its entirety and replacing it with:

> "[Reserved.]

Section 13  Section 6.8. Section 6.8 of the Agreement is hereby amended and restated in its entirety as follows:

4

Seller shall grant Purchaser a license (the "**Headquarters License**") to use the leased property located at the Corporate Office for a term beginning on the Closing and terminating on the earlier of the end of the term of the lease underlying the Corporate Office (the "**Corporate Office Lease**") or thirty (30) days following notice from Purchaser to Sellers of Purchaser's intent to terminate such Headquarters License which Headquarters License is permitted pursuant to the terms of the Corporate Office Lease or is authorized by the Sale Order. Purchaser shall pay the rent in the amount of $33,849 per month (which includes all required taxes payable as additional rent under the Corporate Office Lease for such month) and covenants and agrees (i) subject to the following sentence, to comply with the terms of the Corporate Office Lease, including without limitation by using the premises for general office purposes only in accordance with the permitted uses of the Corporate Office Lease and (ii) to surrender the premises in broom clean condition and remove all of its property when it vacates the premises. Notwithstanding Purchaser's use of the leased premises in accordance with the Corporate Office Lease and payment of rent thereunder, except as provided above Purchaser shall not otherwise have any obligation to Sellers, the landlord of the Corporate Office Lease or any other Person to pay any fees, post any security, remove any alterations, restore the demised premises or to take any other actions with respect to the property. Following termination of the Headquarters License in accordance with this Section 6.8, all cash deposited with landlord of the Corporate Office Lease or as a result of draws on letters of credit previously given as security for the Corporate Office Lease together with accrued interest thereon shall be the property of Sellers, and Purchaser shall make no claim on any such cash.

Section 14    <u>Section 6.9</u>. The parties acknowledge and agree that the Purchaser has provided its consent to the inclusion of the schedules to the Agreement in accordance with Section 6.9 of the Agreement.

Section 15    <u>Section 9.4</u> of the Agreement is hereby amended by deleting the first sentence thereof and adding the following sentence in its place:

Anything in this Agreement to the contrary notwithstanding, this Agreement and the transactions contemplated hereby may be terminated in any of the following ways at any time before the Closing with respect to subsections (a) through (h) of this Section 9.4 (any such termination shall be effected by the provision of written notice of termination by the terminating party to the other party), and in no other manner:

Section 16    Section 9.4(i). Section 9.4(i) of the Agreement is hereby amended by deleting it in its entirety and replacing it with:

"[Reserved.]

Section 17    Designation Time. The definition of Designation Time is hereby amended and restated in its entirety as follows:

**"Designation Time"** means 12:00 p.m. EDT on November 29, 2010

Section 18    Section 9.5(c). Section 9.5(c) of the Agreement is hereby amended and restated in its entirety as follows:

In the event that this Agreement is terminated pursuant to Sections 9.4(c) or (d), or this Agreement is terminated by Purchaser pursuant to Section 9.4(k), then the Sellers shall pay to the Purchaser the Expense Reimbursement. In the event that this Agreement is terminated pursuant to Sections 9.4(g) or (h) or is terminated by Purchaser pursuant to Section 9.4(e), then the Sellers shall pay to the Purchaser the Expense Reimbursement and the Break-Up Fee. Each of the Break-Up Fee and the Expense Reimbursement shall be paid as an administrative expense of the Sellers with priority over any and all other administrative expenses of the kind specified in Section 503(b) or 507(b) of the Bankruptcy Code subject solely to the Super-Priority granted to NewAlliance Bank pursuant to the Final Order Permitting The Use Of Cash Collateral And Granting Related Relief, dated as of October 22, 2010, and to the extent payable as the result of or in relation to an Alternative Transaction, shall be payable from, and constitute a senior lien on, the proceeds of the Alternative Transaction, subject solely to the Super-Priority granted to NewAlliance Bank pursuant to the Final Order Permitting The Use Of Cash Collateral And Granting Related Relief, dated as of October 22, 2010.

Section 19    Transferred Employees. Section 11.1 of the Agreement is hereby amended by deleting the last sentence thereof and adding the following two sentences in its place:

Purchaser has determined to offer employment to all of the Sellers' Employees as of the date hereof (with the exception of one member of Sellers senior management), which employees are listed on Schedule 2.3(d) (and may also determine to offer employment to seasonal employees, whose names and compensation information shall be provided by Sellers to Purchaser). Prior to the Sale Hearing, Purchaser will deliver Schedule 11.1 to Sellers, which shall set forth a description of all

employment and equity arrangements made with members of Sellers' senior management.

Section 20    Sale Order.  New paragraphs in substantially the following form shall be added to the Sale Order:

To the extent not previously done, the landlords to the Leases are hereby authorized and directed to draw down on any letters of credit they may hold as security deposits under any such Leases and to hold such funds in escrow as replacement security deposit pending Purchaser's furnishing post-Closing a replacement letter of credit in exchange for the surrender of such cash deposit.  The automatic stay in 11 U.S.C.§362, to the extent applicable, is hereby modified to permit the landlords to declare a default under any such Leases and draw down on the letter of credit security deposit.

The Headquarters License provided for in the Asset Purchase Agreement is hereby authorized and approved.

Section 21    Notes Term Sheet.  Exhibit F to the Agreement is deleted and a new Exhibit F in the form attached to this First Amendment is inserted in its place

Section 22    Limited Effect.  Except as expressly amended and modified by this First Amendment, the Agreement shall continue to be, and shall remain, in full force and effect in accordance with its terms.

Section 23    Amendment.  This First Amendment may be amended, modified and supplemented only by a written instrument signed by all of the parties hereto expressly stating that such instrument is intended to amend, modify or supplement this First Amendment.

Section 24    Counterparts.  This First Amendment may be executed in two or more counterparts (delivery of which may occur via facsimile or as an attachment to an electronic mail message in "pdf" or similar format), each of which shall be binding as of the date first written above, and, when delivered, all of which shall constitute one and the same instrument.  This First Amendment, to the extent signed and delivered by means of a facsimile machine or as an attachment to an electronic mail message in "pdf" or similar format, shall be treated in all manner and respects as an original agreement or instrument and shall be considered to have the same binding legal effect as if it were the original signed version thereof delivered in person.

Section 25    Governing Law.  This First Amendment shall be construed, performed and enforced in accordance with, and governed by, the laws of the State of New York, without giving effect to the principles of conflicts of laws thereof.  For so long as the Sellers are subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this Agreement, and consent to the jurisdiction of, the Bankruptcy Court.  After the Sellers are no longer subject to the jurisdiction of the Bankruptcy Court, the parties hereto irrevocably elect as the sole judicial forum for the adjudication of any matters arising under or in connection with this

Agreement, and consent to the jurisdiction of, the courts of the County of New York, State of New York or of the United States of America for the Southern District of New York.

**[SIGNATURES ON FOLLOWING PAGE]**

IN WITNESS WHEREOF, Purchaser and Sellers have executed this First Amendment or caused this First Amendment to be executed by their respective officers thereunto duly authorized as of the date first written above.

THE WECK CORPORATION

By:_____
Name:
Title:

WEST WECK, LLC

By:_____
Name:
Title:

GRACIOUS HOME.COM, LLC,

By:_____
Name:
Title:

WECK CHELSEA, LLC

By:_____
Name:
Title:

AMERICAS RETAIL FLAGSHIP FUND LLC

By:_____
Authorized Signatory