**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------- x
                                 :

**In re**                       :      **Chapter 11**

**THE WECK CORPORATION**, *et al.*  :

                          :      **Case No. 10-14349 (AJG)**

              **Debtors.**   :

                          :      **Jointly Administered**

---------------------------------------------------------------- x

## ORDER PURSUANT TO SECTIONS 105(a), 363 AND 365 OF THE BANKRUPTCY CODE AND BANKRUPTCY RULES 6004 AND 6006 FOR APPROVAL OF (I) THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES TO THE HIGHEST BIDDER AT AUCTION, (II) ASSUMPTION AND ASSIGNMENT OF CERTAIN LEASES AND EXECUTORY CONTRACTS IN CONNECTION THEREWITH, AND (III) CERTAIN RELATED RELIEF

Upon the motion, dated November 10, 2010 (the "<u>Motion</u>")[1], of The Weck Corporation, d/b/a Gracious Home, West Weck, LLC, Gracious Home.com, LLC and Weck Chelsea, LLC, as debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for an entry of an order pursuant to sections 105, 363 and 365 of title 11 of the United States Code (the "<u>Bankruptcy Code</u>"), and Rules 6004 and 6006 of the Federal Rule of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>") approving the sale of all or substantially all of the Debtors' assets free and clear of liens, claims, interests and encumbrances to the highest bidder at auction, and the assumption and assignment of certain leases and executory contracts in connection therewith and

---

[1] Capitalized terms used but not defined herein shall have the respective meanings ascribed to them in the Motion or the APA. The Motion restates in part requests for relief previously made in the Debtors' Supplement to Debtors Motion for Entry of an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Approving Bidding Procedures and Notice of the Auction Relating Thereto and Granting Related Relief, Including (A) Scheduling of Hearing Approving Sale of Assets (B) Extending the Deadline to Assume or Reject Unexpired Leases of Nonresidential Real Property Pursuant to 11 U.S.C. 365(d)(4); and (C) Mutual Release of Claims Under Pre-Petition Investment Agreement filed on September 28, 2010 [Docket No. 133].

certain relief (collectively, the "Transaction"), all as more fully described in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334; and consideration of the Motion and the relief requested therein being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to New Alliance Bank, the Debtors' secured creditor, (c) counsel to the Official Committee of Unsecured Creditors, (d) the counterparties to the Potential Assigned Leases and Contracts (as defined in the Debtors' Motion Pursuant to Section 365 of the Bankruptcy Code Fixing the Cure Amounts of Various Unexpired Leases and Executory Contracts [Docket No. 179] (the "Cure Cost Motion"), including counterpraties to the Assigned Contracts, and (e) all other parties who have timely filed requests for notice under Rule 2002 and it appearing that no other or further notice need be provided; and the Court having entered on October 22, 2010 an Order Pursuant to Sections 105(a) and 363 of the Bankruptcy Code Approving Stalking Horse Selection Process, Bidding Procedures, Notice of Auction Relating Thereto, Scheduling Sale Hearing and Granting Related Relief [Docket No. 167] (the "Bid Procedures Order"); and the Court having entered on November 17, 2010 an order granting the Cure Cost Motion, as modified therein [Docket No. 220] (the "Cure Cost Order"); and the Debtors having selected American Retail Flagship Fund LLC ("American Retail" or "Purchaser") as the Stalking Horse Bidder (the "Stalking Horse") as set forth in the Asset Purchase Agreement by and between the Debtors and the Stalking Horse Bidder dated as of November 18, 2010 [Docket No. 224]; and the Debtors having subsequently selected American Retail as the Successful Bidder having submitted the only qualified bid for substantially all of the

Debtors' assets (the "Successful Bidder") [Docket No. 237]; and the Debtors and American Retail having entered into the First Amendment to the APA dated as of November 26, 2010; and a hearing having been held to consider the relief requested in the Motion (the "Hearing"); and the Court having found and determined that the relief sought in the Motion is in the best interests of the Debtors, their estates and creditors; and that the legal and factual bases set forth in the Motion establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor, it is hereby

FOUND AND DETERMINED that:

A.     The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.     To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.     The Court has jurisdiction over the Motion and the transactions contemplated by the APA pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (N). Venue of these cases and the Motion in this district is proper under 28 U.S.C. §§ 1408 and 1409.

D.     The statutory predicates for the relief sought in the Motion are sections 105, 363 and 365 of the Bankruptcy Code, and Bankruptcy Rules 2002, 6004, 6006 and 9014.

E. Due, proper, adequate and sufficient notice of the Motion, the Auction, the assumption and assignment of the Assigned Contracts, and the Hearing, has been provided in accordance with sections 102(1), 363 and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9014, (ii) such notice was good and sufficient, and appropriate under the particular circumstances, and (iii) no other or further notice of the Motion, the Transaction, the Auction, the assumption and assignment of the Assigned Contracts, or the Hearing is or shall be required.

F. Subject to entry of this Order, the Debtors (i) have full corporate power and authority to execute the Assignment and Assumption Agreements, that certain Asset Purchase Agreement dated as of November 18, 2010 between the Debtors and American Retail and the First Amendment to the Asset Purchase Agreement dated as of November 26, 2010 (as amended, the "APA" and collectively, with this Order, the "Sale Documents"), (ii) have all of the corporate power and authority necessary to consummate the transactions contemplated by the Sale Documents, and (iii) have taken all corporate action necessary to authorize and approve the Sale Documents and the consummation by the Debtors of the transactions contemplated thereby, and no consents or approvals, other than those expressly provided for in the Sale Documents, are required for the Debtors to consummate the Transaction.

G. As demonstrated by (i) the testimony and/or other evidence proffered at the Hearing, and (ii) the representations of counsel made on the record at the Hearing, the Debtors have conducted the sale process fairly and openly in a manner reasonably calculated to produce the highest or otherwise best offer for the Purchased Assets under the circumstances and in compliance with the Bid Procedures Order. The highest or otherwise best offer received by the Debtors for the Purchased Assets at or before the Hearing was the offer by the Purchaser,

as such offer is reflected in the APA.  The Back-up Bidder with respect to this proposed sale will be selected at a subsequent Auction to be noticed separately by the Debtors to take place not earlier than Wednesday December 1, 2010, in order to select a Back-up Successful Bidder in the event the Successful Bidder fails to close on the APA.  Such auction will be held at the offices of Hahn & Hessen LLP and qualified bidders can participate telephonically.

H.      Approval of the Sale Documents and consummation of the Transaction at this time are in the best interests of the Debtors, their estates, creditors, equityholders, and other parties in interest.

I.      The Debtors have demonstrated both (i) good, sufficient, and sound business purposes and justifications, and (ii) compelling circumstances for the Transaction pursuant to section 363(b) of the Bankruptcy Code.

J.      A reasonable opportunity to object or be heard with respect to the Motion and the relief requested therein has been afforded to all interested persons and entities, including: (i) U.S. Trustee; (ii) the Creditors' Committee; (iii) NewAlliance Bank, as secured creditor, (iv) the counterparties to the Assigned Contracts; (v) all parties that indicated in writing to the Debtors or their advisors an interest in purchasing any of the Debtors' assets; and (vi) all parties who have filed notices of appearance requesting service of pleadings in these cases in accordance with Bankruptcy Rule 2002 as of the date of the Motion (collectively, the "Notice Parties").

K.      The Purchaser is a good faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby.  The APA was negotiated, proposed and entered into by the Debtors and the Purchaser without collusion,

in good faith, and from arm's-length bargaining positions. The terms of the APA are fair and reasonable. Neither the Debtors, nor the Purchaser have engaged in any conduct that would cause or permit the APA or any part of the Transaction to be avoided, or for the imposition of costs and damages against the Purchaser under Section 363(n) of the Bankruptcy Code.

L.     The Purchaser is not an "insider" of any of the Debtors, as that term is defined in section 101(31) of the Bankruptcy Code and no common identity of incorporators, directors or stockholders exist between the Purchaser and the Debtors. Pursuant to the APA, the Purchaser is not purchasing all of the Debtors' assets in that the Purchaser is not purchasing any of the Excluded Assets, and the Purchaser is not holding itself out to the public as a continuation of the Debtors. The Transaction does not amount to a consolidation, merger or de facto merger of the Purchaser and the Debtors or the Debtors' estate, there is not substantial continuity between the Purchaser and the Debtors, there is no continuity of enterprise between the Debtors and the Purchaser, the Purchaser is not a mere continuation of the Debtors or the Debtors' estates, and the Purchaser does not constitute a successor to the Debtors or the Debtors' estates to the extent allowed under state law.

M.     For purposes of section 363(b)(1) of the Bankruptcy Code, the Debtors have, in connection with offering product or service, previously disclosed to one or more individuals a policy prohibiting the transfer of "personally identifiable information" (as defined in 11 U.S.C. section 101(41A)) about individuals to persons that are not affiliated with the debtors, but the sale or lease proposed is consistent with that policy because the policy requires the buyer to honor the policy.

N.       As of the closing of the Transaction (the "Closing"), and in accordance with, subject to and as required by the terms of the APA, the transfer of the Debtors' assets to the Purchaser will be a legal, valid, enforceable, and effective transfer of the Debtors' Purchased Assets, and, to the fullest extent permitted under section 363 of the Bankruptcy Code, will vest the Purchaser with all right, title and interest of the Debtors in the Purchased Assets free and clear of all Liens and Excluded Liabilities, whether known or unknown, contingent or otherwise, whether arising prior to or subsequent to the commencement of these bankruptcy cases, and whether imposed by agreement, understanding, law, equity or otherwise, including but not limited to claims otherwise arising under (i) any bulk transfer statutes and similar laws or (ii) doctrines of successor liability (collectively, the "Interests"), with the exception of Assumed Liabilities.

O.       The Purchaser would not have entered into the APA if the sale of the Purchased Assets was not free and clear of all Interests, other than Assumed Liabilities.

P.       The Debtors may sell the Purchased Assets free and clear of all Interests of any kind or nature whatsoever because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Holders of Interests who did not object, or who withdrew their objections, to the Transaction or the Motion are deemed to have consented to the Transaction pursuant to section 363(f)(2) of the Bankruptcy Code. Holders of Interests who did object fall within one or more of the other subsections of section 363(f) of the Bankruptcy Code.

Q.     Holders of Interests are adequately protected by having their Interests, if any, attach to the Sale Proceeds ultimately attributable to the property against or in which they claim an Interest.

R.     To the maximum extent permitted under applicable law, the Purchaser is not a successor to the Sellers, their estates, or by reason of any theory of law or equity, and the Purchaser shall not assume or in any way be responsible for any liability or obligation of the Sellers, their estates, except as otherwise expressly provided in the APA.

S.     Approval of the Sale Documents and consummation of the Sale of the Purchased Assets at this time are in the best interests of the Debtors, their estates, creditors, equityholders and other parties in interest.

T.     Pursuant to that certain notice of the Motion, all Assigned Contract counterparties have received adequate notice of any and all Cure Costs existing under such executory contracts and unexpired leases.  The Cure Costs set forth in the Cure Cost Order for each Assigned Contract (i) shall be binding upon the respective party for all purposes, (ii) are the sole amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all monetary defaults and pay all actual pecuniary losses under the Assigned Contracts.   The counterparties to the Assigned Contracts shall be barred from objecting to the Cure Cost set forth in the Cure Cost Order, and barred from asserting any additional cure amount due with respect to their respective Assigned Contract(s).

U.     The requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code relating to adequate assurance of future performance by the Purchaser have been satisfied with respect to the Assigned Contracts.

V.     The APA was not entered into for the purpose of hindering, delaying or defrauding creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia.  The consideration under the APA provided by the Purchaser is the highest and otherwise best offer received by the Debtors, and such consideration constitutes reasonably equivalent value for the Purchased Assets under the Bankruptcy Code and other applicable law.

W.     The Transaction does not constitute a <u>sub rosa</u> chapter 11 plan for which approval has been sought without the protections that a disclosure statement would afford.  The Transaction neither impermissibly restructures the rights of the Debtors' creditors, nor impermissibly dictates a liquidating plan of reorganization for the Debtors.

Now therefore, it is hereby

ORDERED, ADJUDGED, AND DECREED that:

1.     The Motion is granted, as further described and to the extent set forth herein.

**Approval of the APA**

2.     The APA and all of the terms and conditions thereof is hereby approved.

3.     Pursuant to section 363(b) of the Bankruptcy Code, the Sellers are authorized to perform their obligations under and comply with the terms of the APA, and consummate the Transaction, subject to and in accordance with the terms and conditions of the APA.

4.     The Debtors and their affiliates, offices, employee, and agents are authorized to execute and deliver, and empowered to perform under, consummate and implement, the APA, together with all additional instruments, documents, and agreements that may be reasonably necessary or desirable to implement the APA, and to take all further actions as may be requested by the Purchaser for the purpose of assigning, transferring, granting, conveying and conferring to the Purchaser or reducing to possession, free and clear of all Interests, the Purchased Assets, or as may be necessary or appropriate to the performance of the obligations as contemplated by the APA.

5.     This Order and the APA shall be binding in all respects upon all creditors (whether known or unknown) of the Debtors, all persons or entities claiming an Interest in the Debtors' property, all successors and assigns of the Purchaser, the Debtors and their affiliates and subsidiaries, and any subsequent trustees appointed in the Debtors' chapter 11 cases or upon a conversion to chapter 7 under the Bankruptcy Code, and shall not be subject to rejection.

6.     The APA and any related agreements, documents, or other instruments may be modified, amended or supplemented by the parties thereto in a writing signed by both parties and in accordance with the terms thereof, without further order of the Court, provided that (a) with respect to any such modification, amendment, or supplement which does not have a material adverse effect on the Debtors' estates the Debtors shall provide notice to the Committee and NewAlliance Bank ("NAB") of any such modification, amendment, or supplement; and (b) with respect to any such modification, amendment, or supplement which does have a material adverse effect on the Debtors' estates the Debtors shall provide notice to the Committee and NAB of any such modification, amendment, or supplement and the Committee and NAB shall have one (1) business days to object thereto.

**Transfer of Assets**

7.        Except as specifically provided for in the APA or this Order, pursuant to sections 105(a) and 363(f) of the Bankruptcy Code, the Purchased Assets shall be transferred to the Purchaser, and upon consummation of the APA, shall be free and clear of all Interests of any kind or nature whatsoever (other than Assumed Liabilities) with all such Interests to attach to the Sale Proceeds to the fullest extent required by law in the order of their priority, with the same validity, force and effect which they now have in or against the Purchased Assets, subject to any claims and defenses the Debtors may possess with respect thereto.

8.        Subject to paragraph 9 hereof, the Sellers are hereby authorized to satisfy, or reserve for, any Interests, including but not limited to, liens of taxing authorities that have asserted Liens against property of the Debtors, with the Sale Proceeds; provided however, that notwithstanding the foregoing, any such Liens shall attach to the Sale Proceeds in the order of their priority, with the same validity, force and effect which they have as of the date of entry of this Order as against the Debtors' assets, subject to the rights and defenses, if any, of the Debtors with respect thereto.

9.        At the Closing, the Debtors are authorized and shall pay NAB from the Net Sale Proceeds (as such term is defined in the Final Order Permitting the Use of Cash Collateral and granting Related Relief entered by the Court on October 22, 2010 (the "Final Cash Collateral Order") in accordance with the terms of the Final Cash Collateral Order.

10.       Except as expressly provided by the APA or this Order, to the fullest extent permitted by law, all persons and entities, including, but not limited to, all equity security holders, governmental, tax, and regulatory authorities, parties to executory contracts, customers,

lenders, trade and other creditors, holding Interests (other than Assumed Liabilities) of any kind or nature whatsoever against or in the Purchased Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, senior or subordinated), arising under or out of, in connection with, or in any way relating to, the Debtors or the Debtors' assets, hereby are forever barred, estopped, and permanently enjoined from asserting such Interests against the Purchaser, affiliates of the Purchaser, its successors or assigns, its property, or the Purchased Assets.

11.     The transfer of the Purchased Assets to the Purchaser pursuant to the APA shall constitute a legal, valid, and effective transfer of the Purchased Assets, and shall vest the Purchaser with all right, title, and interest of the Debtors in and to the Purchased Assets free and clear of all Interests of any kind or nature whatsoever (other than Assumed Liabilities).

12.     On the Closing Date, the Debtors and each of the Debtors' creditors are hereby authorized and directed to execute and file termination statements, instruments of satisfaction, or other proper releases of all such Interests (other than with respect to Permitted Liens and Assumed Liabilities) relating to filed financing statements, mortgages, mechanic's liens, lis pendens, or other documents or agreements evidencing Interests in the Purchased Assets, and the Purchaser is hereby authorized to file, register, or otherwise record a certified copy of this Order, which, once filed, registered or otherwise recorded, shall constitute conclusive evidence of the release of all such Interests.

13.     All entities that are presently, or on the Closing Date may be, in possession of some or all of the Purchased Assets are hereby directed, upon the written request of the Purchaser, to promptly surrender possession of the Purchased Assets to the Purchaser.

14.     Subject to the requirement to provide adequate assurance of future performance, the Purchaser is hereby authorized in connection with the consummation of the Transaction to allocate the Purchased Assets, including the Assigned Contracts, among its Affiliates, and to assign, sublease, sublicense, transfer or otherwise dispose of any of the Purchased Assets, including the rights under any of the Assigned Contracts, to its Affiliates, with such Affiliates having all of the rights and protections accorded under this Order and the APA.

**Assigned Contracts**

15.     The requirements of sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code are hereby deemed satisfied with respect to the Assigned Contracts, upon the Purchaser's satisfaction of the Cure Costs in connection with such Assigned Contracts. The Debtors are hereby authorized, in accordance with sections 105(a), 363 and 365 of the Bankruptcy Code, to: (a) assume and assign and transfer, free and clear of all Interests, to the Purchaser the Assigned Contracts; and (b) execute and deliver to the Purchaser such assignment documents as may be necessary to confirm such assignment and transfer. In accordance with the Cure Cost Order, the Debtors will cure, and have provided adequate assurance of cure, of any default or breaches required to be cured under any of the Assigned Contracts, if any, within the meaning of section 365(b)(1)(A) and (B) of the Bankruptcy Code as of the Closing Date. The Purchaser has provided adequate assurance of its future performance of and under the Assigned Contracts, within the meaning of section 365(b)(1)(C) of the Bankruptcy Code.

16.     Notwithstanding any provision in a Assigned Contract that prohibits or restricts assignment (including those of the type described in sections 365(b)(2), (e)(1) and (f)(1) of the Bankruptcy Code), the Assigned Contracts shall be assumed by the Debtors and assigned

to the Purchaser in accordance with their respective terms. There shall be no rent accelerations, assignment fees, increases (including, but not limited to, increases in the amount of security, restoration, or other deposits) or any other fees charged to the Purchaser as a result of the assumption and assignment of the Assigned Contracts; provided, however, that with respect to that certain lease at 1220 Third Avenue (the "Townsend Lease") between the Debtors and The Townsend House Corporation ("Townsend"), the Debtors will reserve out of the Purchase Price $350,000 (the "Townsend Reserve") to be held in an escrow account by Hahn & Hessen LLP, which amount will be transferred from the escrow account to (A) Townsend at the earlier of: (i) the execution of a lease extension between Townsend and the Purchaser, or (ii) upon the final determination by this Court that the provision of the Townsend Lease requiring an additional security deposit upon a change of control of the Debtors is enforceable under section 365 of the Bankruptcy Code, with a hearing on such issue to occur on the first available omnibus court date following Townsend providing written notice to the Debtors of their desire to have such issue decided by the Court or (B) to the Purchaser or its designee pursuant to the terms of the APA in the event this Court shall enter a final order finding that such change of control provision is not enforceable. Any provisions in any Assigned Contract that prohibit or condition the assignment of such Assigned Contract or allow the party to such Assigned Contract to terminate, recapture, impose any penalty, require or increase the amount of a security, restoration, or other deposit, condition on renewal or extension, or modify any term or condition upon the assignment of such Assigned Contract, constitute unenforceable anti-assignment provisions that are void and of no force and effect; provided, however, that the Court makes no determination at this time with respect to the provision referenced in this paragraph with regard to the Townsend Lease. Any party that may have had the right to consent to the assignment of its Assigned Contract is

determined to have consented for the purposes of Section 365(e)(2)(A)(ii) of the Bankruptcy Code. After the Assigned Contracts are assigned to the Purchaser, pursuant to section 365(k) of the Bankruptcy Code, the Debtors shall be relieved from any further liability with respect to such Assigned Contracts; provided, however, that Townsend reserves all rights with respect to the Townsend Reserve. Upon the Closing, the Purchaser shall be fully and irrevocably vested in all right, title and interest of each Assigned Contract.

17. Notwithstanding the inclusion of the lease between the Debtors and Lincoln Metrocenter Partners L.P. relating to the store located at 1992 Broadway (the "Westside Lease") on schedule 1.3 of the APA, provided that the Closing occurs not later than December 3, 2010, the Debtors shall not assume and assign the West Side Lease at Closing, but rather Purchaser is hereby given the right to designate such lease for assumption and assignment (the "Designation Rights") on or before the earlier of (a) the effective date of a plan of reorganization to be confirmed in these cases or (b) March 11, 2011 (the "Designation Expiration Date"). Not later than thirty (30) days prior to the Designation Expiration Date, Purchaser shall be required to give written notice (a "Rejection Notice") to the Debtors of Purchaser's intention not to exercise such Designation Rights, in which event (a) the Westside Lease shall be deemed rejected pursuant to section 365(a) of the Bankruptcy Code as of the last day of the month in which such notice is given (the "Rejection Date") and (b) the Purchaser shall be required as of the Rejection Date to vacate the premises, surrender the premises in broom clean condition and remove all of its property when it vacates the premises. In the event the Purchaser fails to timely submit to Debtors a Rejection Notice, the Purchaser shall be deemed to have exercised its Designation Rights and as of the Designation Expiration Date, if not earlier exercised, the Westside Lease shall be assumed by the Debtors and assigned to the Purchaser pursuant to the section 365 of the

Bankruptcy Code. In no event shall the Debtors be obligated to pay any amount in excess of the Cure Cost applicable to such Westside Lease as listed on schedule 1.3 of the APA. Commencing as of the Closing Date through and including the Designation Expiration Date or the Rejection Date (the "Designation Period"), the Debtors grant Purchaser a license to use the leased property pursuant to terms of the Westside Lease. During the Designation Period, Purchaser shall perform all tenant obligations under the Westside Lease, including, without limitation, timely paying the rent, real estate taxes and any other charges due thereunder. Purchaser shall indemnify and hold Debtors harmless from any and all obligations and liabilities arising under or incurred during the Designation Period under the Westside Lease.

18.     Upon assignment of the Assigned Contracts to the Purchaser, no default shall exist under any Assigned Contracts and no non-Debtor party to any Assigned Contract shall be permitted to declare a default by the Purchaser under such Assigned Contract or otherwise take action against the Purchaser as a result of the Debtors' financial condition, bankruptcy or failure to perform any of their obligations under the Assigned Contracts. Upon entry of this Order and assumption and assignment of the Assigned Contracts, the Purchaser shall be deemed in compliance with all terms and provisions of the Assigned Contracts, including, but not limited to, any provision in any assigned Lease that requires the tenant, or the tenant's assignee, to provide a security deposit to the landlord, or security for any other of the tenant's obligations (including, but not limited to, restoration obligations) under the Lease.

19.     In the event and to the extent any third party guaranty (a "Guaranty") was executed by a non-Debtor ("Guarantors") in favor of any landlord (the "Landlords") of any assigned Lease (the "Assigned Leases") in connection with any Assigned Leases, nothing contained herein or in the Sale Documents shall be construed as a waiver of any (a) rights of the

Landlords or the Guarantors with respect to the validity or effectiveness of the Guaranty, whether prior to or upon assignment of the Assigned Leases in accordance with this Sale Order, or (b) defenses of the Guarantors under the Guaranty, all of which rights and defenses are preserved in full. The Debtors shall not seek to take any further actions in these Chapter 11 proceedings with regard to such guarantees or the parties' rights or defenses thereunder.

20.     The Court hereby determines that the Cure Costs established pursuant to the Cure Cost Order constitute all of the cure amounts that are required to be paid in order to assume and assign the Assigned Contracts. Except for the right to payment of the Cure Costs, pursuant to sections 105(a), 363 and 365 of the Bankruptcy Code, all parties to the Assigned Contracts are forever barred and enjoined from raising or asserting against the Debtors and the Purchaser any assignment fee, default, breach or claim or pecuniary loss, or condition to assignment, arising under or related to the Assigned Contracts existing as of the Closing or arising by reason of the Closing. Any party that may have had the right to consent to the assignment of its Assigned Contract is deemed to have consented to such assignment for purpose of section 365(e)(2)(A)(ii) of the Bankruptcy Code and otherwise if it failed to object to the assumption and assignment.

21.     With respect to the additional contracts to be assumed pursuant to schedule 1 to the First Amendment to the APA ("Additional Contracts"), the Court has determined that the cure costs listed on schedule 1 are the only cure costs required to assume and assign such contracts, and that the same relief granted in the Cure Cost Order and this Order is hereby granted with respect to the Additional Contracts.

22.     To the extent not previously done, the landlords to the Leases are hereby authorized and directed to draw down on any letters of credit they may hold as security deposits under any such Leases and to hold such funds in escrow as replacement security deposit pending Purchaser's furnishing post-Closing a replacement letter of credit in a form and issued by a bank reasonably satisfactory to the landlord in exchange for the surrender of such cash deposit. The automatic stay in 11 U.S.C.§ 362, to the extent applicable, is hereby modified to permit the landlords to declare a default under any such Leases and draw down on the letter of credit security deposit.

23.     Notwithstanding the foregoing paragraph, within two business days of Closing, Hanover Estates LLC ("Hanover"), the landlord of the Debtors store located at 45 West 25th Street (the "Hanover Lease"), is hereby authorized and directed to draw down the letter of credit it is holding as security deposit under the Hanover Lease and to hold any funds received on account thereof as a cash security deposit in accordance with the Hanover Lease pending Purchaser's furnishing within thirty (30) days of Closing a replacement letter of credit in accordance with the lease in exchange for the surrender of such cash security deposit. The automatic stay in 11 U.S.C.§ 362, to the extent applicable, is hereby modified to permit the Hanover to declare a default under the Hanover Lease and draw down on the letter of credit security deposit.

24.     To the extent not previously done, Shoppers' Charge/TDI is hereby authorized and directed to draw down on any letters of credit they may hold as security deposits for the private label credit card and to hold such funds in escrow as replacement security deposit pending Purchaser's furnishing post-Closing a replacement letter of credit in a form reasonably satisfactory to Shoppers' Charge/TDI in exchange for the surrender of such cash deposit. The

automatic stay in 11 U.S.C.§ 362, to the extent applicable, is hereby modified to permit the Shoppers' Charge/TDI to declare a default under the private label credit card agreement and draw down on the letter of credit security deposit.

## Additional Provisions

25.     The Headquarters License provided for in the APA is hereby authorized and approved.

26.     The amount of monthly rent due for the Headquarters License listed in section 6.8 of the APA is hereby amended from "$33,849 per month (which includes all required taxes payable as additional rent under the Corporate Office Lease for such month)" to "$29,608.28 (inclusive of water, sewer and sprinkler charges) and such additional amounts for electricity as required under the lease."

27.     The consideration to be provided to the Debtors for the Purchased Assets under the APA is reasonably equivalent value and fair consideration under the Bankruptcy Code.

28.     Except as otherwise expressly provided in the APA, the Purchasers shall not assume or have any responsibility for the Excluded Liabilities (as defined in the APA).

29.     To the maximum extent permitted under applicable law, except for the Assumed Liabilities or as specifically provided for in the APA or this Order, the Purchaser shall have no liability or responsibility for any liability or other obligation of the Debtors arising under or related to the Purchased Assets.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein and in the APA, the Purchaser shall not be liable for any Claims (as such term is defined in section 101(5) of the Bankruptcy Code) against the

Debtors or any of their predecessors or affiliates, and the Purchaser shall have no successor liabilities of any kind or character, including, but not limited to, any theory of antitrust, environmental, successor or transferee liability, labor law, de facto merger or substantial continuity, whether known or unknown as of the Closing Date, now existing or hereinafter arising, whether asserted or unasserted, fixed or contingent, liquidated or unliquidated, with respect to the Debtors or any obligations of the Debtors arising prior to the Closing Date, including, but not limited to, liabilities on account of any taxes arising, accruing, or payable under, out of, or in connection with, or in any way relating to the operation of the business prior to the Closing Date.

30.     Upon the Closing, counsel for the Debtors shall establish a separate segregated account solely for the purpose of receiving principal and interest proceeds on account of the Note, excluding proceeds of the Note due on the Initial Payment Date.  Such proceeds, once received into the segregated account, shall be distributed pursuant to the terms of a confirmed plan of liquidation in these cases to the holders of allowed general unsecured claims or as otherwise provided therein or directed by further order of this Court.

31.     Following the Closing, no holder of an Interest in or upon the Debtors or the Purchased Assets shall interfere with the Purchaser's title to or use and enjoyment of the Purchased Assets based on or related to such Interest, or any actions that the Purchaser may take in these chapter 11 cases.

32.     Notwithstanding Bankruptcy Rules 6004(h) and 6006(d), this Order shall be effective and enforceable immediately upon entry and its provisions shall be self-executing.

In the absence of any entity obtaining a stay pending appeal, the Debtors and the Purchaser are free to close under the APA at any time, subject to the restrictions and requirements of the APA.

33.     Pursuant to section 363(m) of the Bankruptcy Code, the reversal or modification on appeal of the authorization provided herein to consummate the Sale shall not affect the validity of the sale of the Purchased Assets to the Purchaser, unless such authorization is duly stayed pending such appeal.

34.     The terms and provisions of the APA and this Order: (a) shall be binding in all respects upon, and shall inure to the benefit of the Debtors, their estates, and their creditors and equityholders, the Purchaser, and its respective affiliates, successors and assigns, and any affected third parties including, but not limited to, all persons asserting Interests in the Purchased Assets, notwithstanding any subsequent appointment of any trustee(s) under any chapter of the Bankruptcy Code, as to which trustee(s) such terms and provisions likewise shall be binding; and (b) shall be binding upon and shall govern the acts of all entities including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of the Purchased Assets.

35.     Nothing contained in any order entered after entry of this Order, nor in any chapter 11 plans confirmed in these chapter 11 cases, shall conflict with or derogate from the provisions of the APA or the terms of this Order.

36.     In the event of a conflict between the terms and conditions of the APA or any other Sale Document, on the one hand, and this Order, on the other hand, this Order shall govern.

37.     This Court retains jurisdiction to enforce and implement the terms and provisions of this Order, the APA, and all amendments thereto, any waivers and consents thereunder, and of each of the Sale Documents executed in connection therewith in all respects, including, but not limited to, retaining jurisdiction to (a) compel delivery of the Purchased Assets to the Purchaser, (b) compel performance of any obligations owed to the Debtors, (c) except as otherwise set forth in the APA, resolve any disputes arising under or related to the APA, (d) interpret, implement, and enforce the provisions of this Order, and (e) protect the Purchaser against any Interests in the Debtors or the Purchased Assets, of any kind or nature whatsoever, except for the Assumed Liabilities.

Dated:   November 30, 2010
         New York, New York

                              **s/Arthur J. Gonzalez**
                              CHIEF UNITED STATES BANKRUPTCY JUDGE