1

2    UNITED STATES BANKRUPTCY COURT

3    SOUTHERN DISTRICT OF NEW YORK

4    Case No. 10-14349(AJG)

5    - - - - - - - - - - - - - - - - - - - - - -x

6    In the Matter of:

7

8    THE WECK CORPORATION,

9

10           Debtor.

11

12   - - - - - - - - - - - - - - - - - - - - - -x

13

14              United States Bankruptcy Court

15              One Bowling Green

16              New York, New York

17

18              November 30, 2010

19              11:02 AM

20

21   B E F O R E:

22   HON. ARTHUR J. GONZALEZ

23   CHIEF U.S. BANKRUPTCY JUDGE

24

25

1

2    HEARING re Motion by debtors for approval of the sale of all or

3    substantially all of the debtors' assets.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Penina Wolicki

1

2  A P P E A R A N C E S :

3  HAHN & HESSEN LLP

4        Attorneys for Debtor

5        488 Madison Avenue

6        New York, NY 10022

7

8  BY:   MARK POWER, ESQ.

9        ROSANNE THOMAS MATZAT, ESQ.

10       JOSEPH ORBACH, ESQ.

11

12  LOWENSTEIN SANDLER PC

13       Attorneys for Creditors' Committee

14       65 Livingston Avenue

15       Roseland, NJ 07068

16

17  BY:   THOMAS A. PITTA, ESQ.

18

19  U.S. DEPARTMENT OF JUSTICE

20       Office of the U.S. Trustee

21       33 Whitehall Street

22       21st Floor

23       New York, NY 10004

24

25  BY:   SUSAN D. GOLDEN, ESQ.

```
 1
 2   SARNA & ASSOCIATES PC
 3        Attorneys for Townsend House Corp.
 4        328 North Broadway
 5        2nd Floor
 6        Upper Nyack, NY 10960
 7
 8   BY:   JAMES A. SARNA, ESQ.
 9
10
11   KLESTADT & WINTERS, LLP
12        Attorneys for 179 E. 28th Street Corp.
13        292 Madison Avenue
14        17th Floor
15        New York, NY 10017
16
17   BY:   PATRICK J. ORR, ESQ.
18
19
20   BECKER, GLYNN, MELAMED & MUFFLY LLP
21        Attorneys for 201 E. 69 LLC and TF Cornerstone Inc.
22        299 Park Avenue
23        New York, NY 10171
24
25   BY:   ALEC P. OSTROW, ESQ.
```

1

2  PAUL, HASTINGS, JANOFSKY & WALKER, LLP

3       Attorneys for Commercial Holding Co. LLC

4       75 East 55th Street

5       New York, NY 10022

6

7  BY:  HARVEY A. STRICKON, ESQ.

8

9

10  PRYOR CASHMAN LLP

11       Attorneys for Hanover Estates

12       7 Times Square

13       New York, NY 10036

14

15  BY:  SETH H. LIEBERMAN, ESQ.

16

17

18

19

20

21

22

23

24

25

1              P R O C E E D I N G S

2          THE COURT:  Please be seated.  Are you ready?

3          The Weck Corporation matters.

4      (Pause)

5          MR. POWER:  Good morning, Your Honor.  Mark Power from

6  Hahn & Hessen, counsel to the debtor.  Your Honor, sorry for

7  the delay.  We were trying to resolve a few last-minute loose

8  ends.

9          Your Honor, I am -- we have one matter on for today,

10  which is the debtor's motion for sale of substantially all of

11  its assets, pursuant to 363 and 365.  I'm very, very pleased to

12  advise the Court and all the parties in the room that we have a

13  successful bidder for a going-concern purchase of the company,

14  which will result, we think, in an ability to confirm a plan in

15  this case and make a distribution to creditors, as well as keep

16  approximately 250 employees' jobs continuing, and the company

17  will continue to operate basically as-is with the new buyer.

18          The purchaser -- the successful purchaser will be

19  America's Retail Flagship Fund LLC.  I'll refer to it as

20  America's Retail in terms of -- or as purchaser in terms of the

21  proffers I make, Your Honor.

22          Your Honor, the proposed purchase price is 12,600,000

23  dollars.  It's subject to working capital adjustment.  It's

24  comprised of three components.  First there's cash of

25  11,350,000 dollars, payable at closing.  There is a promissory

1    note payable in two installments of 1,150,000 dollars.  In

2    addition to that, the buyer has agreed to provide post-closing

3    services to the debtor's estate to assist them in basically

4    administering the bankruptcy case and wrapping things up as we

5    get into a liquidating plan.  And we value those services at

6    100,000.  So all in, the total value of this offer is

7    12,600,000.

8          This bidder had previously submitted a stalking-horse

9    bid.  It was the only going-concern stalking-horse bid that we

10   had.  That bid was for a value of -- well face value of

11   12,450,000 dollars.  They were selected as the stalking-horse

12   bidder.  There were two issues with the bid.  It had conditions

13   in it that we had to resolve in order for the bid to be

14   unconditional going into an auction.  In addition to that, we

15   had to get a waiver of those conditions.

16          What we did, Your Honor, is we determined the deadline

17   for competing bids to come in.  We received a number of

18   liquidation bids.  But we evaluated them, and our investment

19   banker evaluated those bids, and determined that no other --

20   none of those bids were qualified or exceeded the value of the

21   original stalking-horse bid, which was a face amount of

22   12,450,000.

23          Notwithstanding that they were the highest bid at the

24   time, Your Honor, we were very successful, with several late

25   nights, in negotiating changes to the original stalking-horse

1  deal, which not only enhanced the value to creditors by an

2  additional 150,000 dollars in the form of a note, but also,

3  most important, waived all the conditions that were contained

4  in the asset purchase agreement regarding the extensions of

5  various leases.

6       The critical issue here and one of the big problems

7  the debtor had, Your Honor, is its flagship store is comprised

8  of one location on 3rd Avenue on the Upper East Side, which is

9  comprised of two leases, both of which the landlords are co-op

10  boards.  Those leases mature in the end of March of 2012.  And

11  we had received serious concern from all the bidders about

12  whether they'd be willing to bid as a going concern unless that

13  issue was resolved, and they were either satisfied that they

14  had to get an extension of those leases or have alternative

15  space to move into in sixteen months.

16       We had worked very hard, and the investment banker had

17  worked very hard, in negotiating an alternative lease in a

18  space approximately two blocks up -- down from that location.

19  But I think, thankfully for this bidder -- this buyer, they

20  were very constructive and very active in negotiating with the

21  landlords.  We set up meetings with every major landlord in the

22  case in a very short period of time, on the eve of

23  Thanksgiving, quite frankly.  And the buyer, because of those

24  meetings, because of the successful negotiations, was satisfied

25  that they could, as a business decision, take the risk of

1    getting the extensions to the leases.

2         So they were willing to waive those conditions.  And

3    that satisfied the bank that we have a solid offer as well as

4    the creditors' committee, going into the auction.

5         So with that, Your Honor, we have entered into a first

6    amendment to the asset purchase agreement which was filed with

7    the Court prior to -- Friday of -- the Friday after

8    Thanksgiving, which basically removes those conditions and

9    improves the deal in terms of the compensation to creditors,

10   and makes a number of other changes which we think are

11   favorable to the estate.

12        Your Honor, I believe there are two outstanding

13   issues.  We think we've resolved all the objections in the

14   case.  But there are two outstanding issues.  The first, I

15   think counsel for the West Side has indicated, just coming --

16   just prior to coming up to the podium, that he has an issue

17   with the assignment of his lease, and I'd like to explain that

18   issue.

19        Then what I would suggest is -- there's one other

20   issue with one other lease.  I'd suggest I make a proffer, if

21   that's acceptable to the parties and Your Honor, and then the

22   parties have reserved the right to cross-examine our witness

23   for the proffer.  Then I would turn it over to the objectors

24   and see if there's any objection.

25        THE COURT:  All right, go ahead.

1    MR. POWER:  With respect to the two issues that are

2    outstanding, one is the negotiation with one of the landlords

3    in the flagship store on the East Side, regarding the security

4    deposit and whether that increases or not.  The existing lease

5    has a provision in it which basically provides that upon a

6    change of control, if the Wekselbaum family -- that's the

7    founders of the company -- are not involved in the new

8    controlling buyer, that the security deposit will increase by

9    350,000 dollars.

10    The debtor has taken the view that that is not an

11    enforceable provision, that it is a limitation on the

12    alienation rights, and it's not enforceable pursuant to 365.

13    The landlord has taken the view that they think it is

14    enforceable and would like to have that litigation -- that

15    issue tried before this Court and determined.

16    What we discussed last night was basically punting

17    that issue to see if the parties could resolve it.  The buyer

18    is currently in negotiations with the landlord about an

19    extension.  And with that would be new provisions regarding a

20    security deposit.  The debtor has agreed that regardless of

21    what happens, those funds will be made available, either to the

22    buyer -- the 350,000 -- either to the buyer or to the landlord

23    as security.  So basically, it's going to come out of the

24    purchase price from our perspective.

25    So we want to basically tee that issue up for Your

1    Honor later on, if necessary.  The only issue that's

2    outstanding then, a request has been made, is rather than hold

3    those funds in escrow, the request has been made that the

4    purchaser be obligated to pay that by court order, if Your

5    Honor decides that the amount is owed.  So that is a request

6    that's been made.  And the landlord's lawyer is currently

7    speaking to his client.  That's outstanding.

8         On the West Side, Your Honor.  The West Side location,

9    quite frankly, is -- the buyer is still not sure whether that

10   location is sufficiently profitable and can be operated in

11   order to improve its operations and performance.  My

12   understanding is the buyer has made some concession requests of

13   the landlord; the landlord hasn't agreed to those or is still

14   considering them.

15        So what we have provided for in the asset purchase

16   agreement is, in form, a designation right, as opposed to an

17   assignment today, where the buyer has until March 11th, which

18   is the end of our 210 day period in which we have to either

19   assume or assign that lease, to designate whether or not they

20   want to take that lease as part of the sale.

21        In the interim, they've agreed to indemnify the estate

22   and pay all the rent and all the obligations under the lease

23   and comply with all the terms of the lease.  We will agree,

24   basically, the cure amounts which the debtor has to pay in the

25   purchase price, will be reserved pending the determination as

1    to whether that's going to be assumed or assigned.

2          My understanding -- and this is all kind of last-

3    minute negotiations -- that issue may not -- the landlord may

4    have an objection to that process as opposed to assuming or

5    assigning it right now.  So I'll leave that to him to argue in

6    a little bit.

7          Your Honor, with respect to the proffer, we would call

8    to testify Robert L. Pressman, who is the principal of our

9    investment banking firm, Triton Equity Partners, and is

10   available in the courtroom to testify and available for cross

11   if necessary.

12         Mr. Pressman would testify that he is a principal of

13   Triton Equity Partners; that he has been -- his retention in

14   this case as both the expert in leases and as the investment

15   banker and the financial advisor to the debtor, has been

16   approved by this Court; that he has basically been in charge of

17   the engagement to try to identify and locate a going-concern or

18   a liquidation buyer for the company, if no going-concern buyer

19   could be located.

20         He would testify that initially, when he was hired

21   pre-bankruptcy, he had done a number of efforts to locate a

22   buyer; and that while we had located a buyer and had basically

23   proposed that stalking horse buyer as part of a plan, that

24   buyer had some issues and wasn't able to close, so withdrew his

25   offer.  Mr. Pressman would say not only did he make efforts to

1    sell the company pre-petition, but in addition, as soon as that

2    buyer's offer withdrew, he reached -- he prepared an

3    information memorandum that was sent to over 400 potential

4    buyers from a broad spectrum of interested parties, including

5    hedge funds, equity funds and strategic buyers; that over 50

6    nondisclosure agreements were executed between the debtor and

7    potential parties who were looking at the acquisition; that

8    there were approximately 12 active potential parties who met

9    with -- who were very interested in the business, had done a

10   lot of due diligence.  A number of them had met with management

11   and had meetings with management, sometimes multiple times.

12         At the end, leading up to the bid deadline, there were

13   several parties who were active in looking at the company,

14   including retaining counsel and had their accountants look at

15   the business.  At the end of the day, the only offer that the

16   debtors received, which was the highest and best offer as a

17   going concern, was from American Retail.

18         He would testify that the American Retail was

19   financially qualified to submit the bid and financially

20   qualified to pay the purchase price at the closing.  They have

21   the resources available, plus significant expertise, both in

22   operations of retail as well as in the real estate area and

23   construction.

24         Mr. Pressman would further testify that he has been

25   involved actively in all the negotiations with the buyer; that

1    the buyer, in his view, has acted in good faith, and has been

2    involved in arm's-length negotiations, many times till 2 or 3

3    in the morning, to try to resolve a deal and get to the point

4    where we are today.

5         He'd further testify to his knowledge, that the

6    principals of the buyer are not related at all to the

7    principals of the debtor and that they are not insiders as

8    defined in the Bankruptcy Code.  Further, in his view, the sale

9    process was fair and an open sales process; that every

10   potential bidder was greeted and given an opportunity to look

11   at the company, and the questions were all responded to.  And

12   in his view, based on the process that was conducted, that the

13   final offer received is the highest and best offer for

14   substantially all the debtor's assets.

15        He would then testify that in his view, it is the --

16   this sale being approved is in the best interests of the estate

17   and the creditors, and offers the best return to the

18   constituents in this case.

19        Your Honor, that would be the end of his proffer.  I'd

20   now open it up for anybody who has cross.  Oh, actually, Your

21   Honor, I do have an adequate assurance proffer.  Should I

22   proceed with that as well?

23        THE COURT:  From the same person?

24        MR. POWER:  Yes, Your Honor.

25        THE COURT:  Go ahead.

1          MR. POWER:  All right.  With respect to the adequate

2     assurance, Mr. Pressman would testify that in his view, he has

3     had over thirty years of experience both in the retail area and

4     in investment banking.  He has done that his entire career.  He

5     is a professor, and has taught in that area.

6          He has looked at the balance sheet on emergence of

7     this buyer.  He believes it is very well capitalized with

8     approximately 6.750 in equity in addition to a standard asset-

9     based loan for the company.  And it is, in fact, better

10    capitalized than most of the retailers he would see of this

11    size.

12          Based on experience of the principals involved, Mr.

13    Joel Kier, Mr. Isidore Mayrock and several other principals,

14    they have extensive experience both in operating retail, both

15    at Fortunoff, before it became a bankrupt entity before this

16    Court, they were -- operated successfully as well of other

17    retailers.  They have a lot of experience in the real estate

18    area in Manhattan; have the ability to -- and knowledge in

19    construction as well as real estate.

20          So from an operational point of view and experience

21    point of view, he views this as a highly qualified bidder who

22    has a lot of ability.

23          In terms of financial qualifications, his testimony

24    would be that they have an extremely strong balance sheet, that

25    they -- that clearly this balance sheet shows they have

1    adequate assurance of future performance under these lease

2    obligations, and that in his view, they are able to perform all

3    the obligations going forward under the lease.

4           As to the cure amounts, Your Honor, and the security

5    deposits that may be owed, those are going to be deducted from

6    the purchase price and paid to the landlords for the leases

7    that are being assumed and assigned at closing.  So those would

8    be satisfied pretty much immediately, and those are satisfied.

9           That would be Mr. Pressman's testimony as to adequate

10   assurance.

11          THE COURT:  Where is the witness?  Would you stand,

12   please?

13      (Witness sworn)

14          THE COURT:  Would the statements made by counsel on

15   your behalf be your direct testimony this morning, if called

16   upon to testify?

17          THE WITNESS:  Yes, Your Honor.

18          THE COURT:  Does anyone wish to cross examine the

19   witness?

20          No requests, being heard, I'll accept the offer of

21   proof.  Thank you.

22          MR. POWER:  Thank you, Your Honor.  Your Honor, with

23   that, the debtor would move for approval of the sale motion.

24   We reserve the right to respond to the objector.

25          MR. STRICKON:  Good morning, Your Honor.

1          THE COURT:  Good morning.

2          MR. STRICKON:  Harvey Strickon from Paul, Hastings,

3    Janofsky & Walker.  We represent Lincoln Square Commercial

4    Holding Co. LLC, which is the landlord of the West Side

5    premises at 1992 Broadway.  The lease is referred to as a lease

6    from Metro Center Partners, but that lease was subsequently

7    assigned, and our client is currently the landlord of those

8    premises.

9          Sometime yesterday, I believe it was the afternoon, we

10   got a call from debtor's counsel advising us that the debtor

11   could not make a decision -- or at least the purchaser could

12   not make a decision on whether to assume or reject the lease,

13   and suggested to us that the purchaser may be asking for the

14   inclusion of designation rights in the order approving the

15   sale.

16         We had not heard back from the debtor's counsel any

17   time during the day, had requested a copy of the proposed order

18   approving the sale.  And the fact of the matter is, it was

19   several minutes before midnight last -- yesterday when the form

20   of the order was first circulated and filed with the Court.

21   The order provides for what we know generally as designation

22   rights, giving the purchaser the right to decide no later than

23   March 11th whether to take an assignment of the lease or to

24   request that the debtor reject the lease.

25         I'll be very brief.  Quite frankly, I have not

1    followed the case law lately on the statutory authorization for

2    designation rights, but we still see that there are no

3    statutory authorizations for granting designation rights for a

4    buyer.  The amendment to the sale order recites the fact that

5    the buyer is being granted a license to use the premises

6    between now and the time it vacates, which we believe is

7    nothing more than a sublease in disguise, and that the debtor

8    had not taken the proper steps to get authority from the Court

9    to sublease the premises.

10    In addition, while the leases that are being assumed

11    and assigned are all going to be cured at closing, there does

12    not appear to be any provision in the sale order that requires

13    that our client's lease be cured in the same manner at the

14    closing; that the defaults be cured; that the security deposit

15    be restored; and that all past-due rent obligations be brought

16    current at that point.

17    In addition, the purchaser is authorized, after giving

18    notice of any intent not to take an -- assign the lease, to

19    vacate the store and return it to the landlord in broom-clean

20    condition.  Yet there is no security that's being posted with

21    the landlord to assure that that work is done properly and in a

22    workmanly-like (sic) manner.

23    So for all those reasons -- and in addition, the

24    debtor is also circumventing the landlord's right to

25    administrative expense claim, should a lease be assumed and

1  subsequently be rejected, which we think is the only vehicle

2  available to the debtor under the circumstances.

3        So, with that said, we would respectfully request that

4  the Court not approve the designation rights and require the

5  buyer to decide today whether to take an assignment of the

6  lease as part of the purchase of the debtor's business.  Thank

7  you, Your Honor.

8        THE COURT:  All right.

9        MR. POWER:  Your Honor, when we filed -- we filed a

10  supplemental pleading on September 28th which actually asked

11  specifically for the relief, including the potential relief of

12  designation rights with respect to a lease.  So we had properly

13  noticed this and briefed it in our motion.

14        Having said that, Your Honor should be aware of a few

15  facts.  This was an extremely tightly negotiated bankruptcy

16  case.  It could have been a major battle with the lender and

17  the committee and the debtor regarding use of cash collateral.

18  If Your Honor recalls, we were here several times working

19  through a very delicate timeline in terms of getting this case

20  to a sale.

21        We are really pleased that we have gotten to a point

22  of a going-concern sale and preserving all the jobs and the

23  value of this estate.  Our cash collateral order expires this

24  Friday.  So we are in a situation where we have to close with

25  this buyer as soon as possible, under the -- you know, under

1    the current cash collateral order.  Otherwise we have a serious

2    problem and will be here before Your Honor in an emergency next

3    week, or we'll do an emergency GOB sale.

4          We're trying to avoid that.  The buyer's in a position

5    where he has basically, in a very short period of time, jumped

6    in here, tried to buy this company, solve a lot of problems.

7    This lease and this store, quite frankly, is on the border, in

8    terms of whether it is operationally profitable or not.  So the

9    buyers asked for the right for designation rights.  He's

10   basically agreed to comply with all the lease terms, pay all

11   the rent.  We're not going beyond the statutory requirements

12   for the assumption or rejection.

13         The cure amounts that counsel mentions will be

14   reserved.  They have to be paid out of the purchase price.  So

15   if the lease is assumed, we will pay them, and they'll be

16   satisfied.  So there really isn't any -- it will be the same

17   buyers, the same management, that's going to be running this

18   company post-closing.

19         And as far as we're concerned, Your Honor, this Court

20   and many courts throughout the land have approved designation

21   rights throughout this process.  And we don't see this as any

22   different.  All we're asking is that the final decision

23   basically for the buyer to be liable on the lease beyond the

24   exercise of designation rights, that that decision would be

25   delayed till later.

1       So we think it's appropriate to approve it under these

2  circumstances.  We don't see how there's any prejudice to the

3  landlord at all.

4       THE COURT:  All right.  Anyone else?

5       MR. STRICKON:  Just one point, Your Honor, because it

6  came out very quickly.  Mr. Power said that the amounts

7  necessary to cure the defaults under the lease will be reserved

8  and will be paid if the lease is assumed.  So that if it is

9  clear now in my mind that under the terms of the order there is

10  no intention of curing any of the defaults under the lease as a

11  condition to allowing the purchaser to have these designation

12  rights going forward.

13       THE COURT:  Well, why should they?

14       MR. STRICKON:  Because they're getting a free ride,

15  Your Honor.  They're getting --

16       THE COURT:  What's free?

17       MR. STRICKON:  -- a free ride.

18       THE COURT:  What's free about the ride?  Would the

19  debtor have this time anyway?

20       MR. STRICKON:  The --

21       THE COURT:  Without curing?

22       MR. STRICKON:  Well, there are post-petition

23  obligations that haven't been paid.  I'm not talking about pre-

24  petition rent, Your Honor.  I'm talking about post-petition

25  obligations that haven't been met.  We're entitled, at least,

1   to get the post-petition obligations paid. And according to

2   our client's ledger, including the December rents which come

3   due December 1st --

4        THE COURT: So then I won't -- just wait a minute.

5   Let's not include December until it comes due. What --

6        MR. STRICKON: Well, the closing is not going to take

7   place until after December 1st.

8        THE COURT: That may be. But that doesn't mean the

9   debtor wouldn't pay the rent on December 1st. You're just

10   assuming they wouldn't pay the rent on December 1st.

11        MR. STRICKON: No, I'm assu --

12        THE COURT: Absent December 1st, what administrative

13   claims does your client have against this debtor?

14        MR. STRICKON: It's approximately 170 -- about 120,000

15   dollars.

16        THE COURT: Based upon what type of charges?

17        MR. STRICKON: Rent, real estate taxes and condenser

18   water charges, accrued after --

19        THE COURT: Had they come due?

20        MR. STRICKON: Yes. They've all been billed, and

21   they've all been itemized.

22        THE COURT: Well, it seems like the debtor's counsel

23   is appearing somewhat puzzled by these charges.

24        MR. STRICKON: Well, we gave them these statements

25   several times. And the last -- yesterday we were asked to give

1  a statement of everything that is required to cure the lease,

2  and we gave them a statement yesterday.  As I said, we included

3  in the statement the December rents on the assumption that

4  closing was going to take place on December 3rd.

5          THE COURT:  Um-hum.

6          MR. STRICKON:  Actually the December rent and real

7  estate taxes.  I have to correct that.  It's approximately

8  170,000 dollars.  So it's about 120,000 dollars of remaining

9  unpaid post-petition obligations.

10          THE COURT:  All right.  Just say that again.  What is

11  due today, November 30th?

12          MR. STRICKON:  Approximately 120,000 dollars.

13          THE COURT:  And then tomorrow, December 1st, it'll be

14  another 170 due?

15          MR. STRICKON:  175,000 dollars.  Which is:  the

16  December rent is 144,141.66; and real estate taxes for the

17  month of December, 30,704.01.  Approximately 175,000 dollars.

18          THE COURT:  All right.  Thank you.

19          MR. STRICKON:  Thank you, Your Honor.

20          THE COURT:  Debtor, do you have a response to --

21          MR. POWER:  Yes, Your Honor.  Obviously, December -- I

22  don't know if December's rent is due the 1st or the 10th -- I

23  don't have the lease in front of me -- but it will be paid

24  whenever due.  That's not an issue.  The order provides for it,

25  and the buyer's agreed, or the debtor will pay it and get a

1    credit for the remaining days --

2           THE COURT:  And that's -- just a minute.  That's the

3    144,141.66?

4           MR. POWER:  We believe that's correct, Your Honor.

5           THE COURT:  All right.

6           MR. POWER:  Counsel indicated 175.  I'm not sure what

7    that --

8           THE COURT:  There was 30,000 dollars, apparently, of

9    taxes; $30,704.01 in taxes.

10          MR. POWER:  Your Honor, could I have one second to

11   speak to my client?

12          THE COURT:  Go ahead.

13          MR. POWER:  Yes, Your Honor, we can confirm, it's 144

14   for rent and the tax is approximately 30.  But that will be

15   paid pursuant to the court order.  So I don't think there's any

16   issue.

17          THE COURT:  All right.  So then let's focus for a

18   moment on the 120,000.  What is that?

19          MR. POWER:  So the 120,000, we believe is the stub

20   rent for August, Your Honor.  The debtor filed bankruptcy

21   August 13th.  And we believe that is the portion of the rent

22   that the debtor --

23          THE COURT:  So that's the stub rent issue?

24          MR. POWER:  Yes, Your Honor.  And Your Honor has taken

25   that sub judis with respect to a different landlord's motion,

1  which will be resolved, I guess, before Your Honor decides

2  that.  If you want me to brief the stub rent issue with this

3  landlord, Your Honor, we'd be happy to do that, Your Honor.  We

4  could have that heard for the 15th of December, if that works.

5       THE COURT:  All right.  See then, I thought there was

6  something a little bit more that needed to be disclosed.  That

7  stub rent is not due until the Court rules that it's due.  So

8  it's hard to argue that that is due and owing and warrants an

9  immediate payment, if, in fact, the Court hasn't ruled that the

10  stub rent is due.  So it doesn't really seem like the debtor is

11  behind at all in administrative claims until I make that

12  determination about what happens to the stub rent.

13       MR. STRICKON:  That would be fine, Your Honor, if they

14  reserve from the purchase price the amount to pay the stub

15  rent.

16       THE COURT:  All right.  I think -- I believe either

17  that commitment was made or is about to be made.  I'm not sure

18  if --

19       MR. POWER:  Your Honor, if it wasn't it is made.  We

20  will reserve from closing that amount.  But it will only be

21  paid if the lease is actually assumed.  I mean, if it's not

22  assumed then we'll -- Your Honor will decide what happens.

23  Your Honor may decide it's due and we'll deal with it then.

24       THE COURT:  If it's due and payable, either under an

25  assumption or a determination by the Court that it's due and

1    payable, it will be paid.

2           MR. POWER:  Yes, Your Honor.  Absolutely.

3           THE COURT:  So where does that leave us with the

4    landlord's objection, just on a designation issue?

5           MR. LIEBERMAN:  Good morning, Your Honor.  Seth

6    Lieberman of Pryor Cashman LLP on behalf of Hanover Estates,

7    which is the owner and landlord of the premises at 45 West 25th

8    Street, a premises occupied by the debtor.  Your Honor may note

9    that my client filed a response and reservation of rights to

10   the sale motion.  And that was really with regard to two

11   issues:  a letter of credit issue as well as a guarantee issue,

12   which were both included in the original APA.

13          Since the filing of our response and reservation of

14   rights, the debtor has filed an amendment to the APA, as well

15   as a revised sale order, last night.  And Hanover is -- Hanover

16   feels that the debtor has sufficiently addressed the issues

17   raised in our response and reservation of rights, Your Honor.

18   Thank you.

19          THE COURT:  You're welcome.

20          Let me come back to Mr. Strickon, though.  That's

21   what -- I don't want to leave this subject.  Now that the

22   debtor has reserved and/or committed to pay the rents that are

23   due on 12/1 and the taxes, and the only issue is the stub rent,

24   awaiting this Court's determination or the assumption, what is

25   your remaining objection?  Is it left with the issue of

1    designation rights?  That's what I just want to clarify.

2            MR. STRICKON:  Yes, Your Honor.

3            THE COURT:  All right.  Anyone else?

4            MR. POWER:  Your Honor, with respect to the other

5    issue, the Townsend landlord and the 350,000 dollars, what I

6    would ask is -- their letter just came up right before the

7    hearing.  Could we take a five-minute recess and just see where

8    that issue is?  If that's acceptable to the Court.  I don't

9    want to --

10           THE COURT:  With respect to the letter of credit, you

11   said?

12           MR. POWER:  Yes.  It's the -- no.  This is the issue

13   of whether -- the 350,000 dollars that may be owed if --

14           THE COURT:  Yes, if there's a change of control?

15           MR. POWER:  -- yes, Your Honor.  The lawyer, I don't

16   know if he's -- I don't even see him in the courtroom.  I think

17   he's outside.  So if we could take a short recess, maybe we

18   could see --

19           THE COURT:  I'll take a recess until a quarter to 12.

20           MR. POWER:  Thank you, Your Honor.

21      (Recess from 11:31 a.m. to 12:00 p.m.)

22           THE COURT:  Please be seated.

23           MR. POWER:  Thank you, Your Honor.  Mark Power from

24   Hahn & Hessen.  Thank you for a brief interlude for us to try

25   to see if we could resolve it.  Unfortunately, we weren't able

1  to resolve this last issue.  So we're going to stand on the

2  existing proposed order language that the -- the issue

3  regarding the security deposit of 350,000 will be held in

4  escrow by my firm.  And unless the buyer and the landlord can

5  quickly resolve this, we're going to ask Your Honor to tee up

6  the issue.

7        We're planning on teeing it up for the December 15th

8  omnibus.  We don't think the issue is very complicated.  We

9  think the Code is pretty clear on the alienation -- anti-

10 alienation restrictions under 365.  And we view this as clearly

11 an anti-alienation restriction.  So we're ready to brief that

12 right away, Your Honor.  We were actually going to file it

13 prior to this hearing, but we held off to see if we could

14 resolve it before then.

15       So we're ready to go.  And I think counsel for the

16 landlord is prepared to move forward on that as well.  But as

17 is, we'll just simply reserve the issue till later.

18       THE COURT:  All right.  Anyone else wish to be heard?

19       MR. POWER:  Your Honor, I think the Townsend lawyer

20 does have one reservation he wants in the sale order.  And then

21 I have a couple of observations about the sale order I'd like

22 to confirm with Your Honor, and then we'd be done, I think.

23       MR. SARNA:  Good morning, Your Honor.  James Sarna;

24 Sarna & Associates, PC, representing the Townsend House

25 Corporation.

1          Your Honor, there is one provision in the proposed

2    order that could possibly be read in a way to contradict the

3    cure amount order.  And I just wanted to put on the record that

4    the debtor's counsel and we are in agreement.  It's in

5    paragraph T.  It's the last sentence.  There had been

6    reservations of rights for Townsend House on this issue in

7    other provisions.  This sentence says:  "The counterparties to

8    the assigned contracts shall be barred from objecting to the

9    cure costs set forth in the cure cost order and barred from

10   asserting any additional cure amount due with respect to their

11   respective assigned contracts."

12          The cure cost order does include a reservation of

13   rights on this issue.  We just wanted to make it clear that

14   it's our understanding and the debtor's understanding that this

15   order does not contradict the cure cost order.

16          MR. POWER:  Your Honor, Mark Power.  And can confirm

17   that cure order has -- this order does not conflict with the

18   cure order and we'll comply with the cure order.

19          MR. SARNA:  Thank you, Your Honor.

20          MR. POWER:  Your Honor, I believe, with the escrow of

21   the cure amounts with respect to the West Side landlord, I

22   believe that resolves the designation rights objection and will

23   resolve it.  I can go -- well --

24          THE COURT:  Say that again?

25          MR. POWER:  I believe with the -- we're going to

1   reserve the cure amount that was an issue for the West Side

2   landlord, and I believe that will resolve the West Side's

3   designation rights objection.  Correct?

4           MR. STRICKON:  Yes.

5           THE COURT:  I don't think --

6           MR. STRICKON:  I'm sorry.

7           THE COURT:  No, wait a minute.  Wait a minute.  Talk

8   to me, and not directly to counsel.

9           MR. POWER:  I believe that -- we're going to agree at

10  closing to reserve the amount of cure that's listed in the cure

11  amount schedule.  And I believe that resolves the objection on

12  the designation rights issue.

13          MR. STRICKON:  No.

14          MR. POWER:  Oh, you're waiting for the --

15          MR. STRICKON:  I'm waiting for the Court to rule on

16  it.

17          MR. POWER:  Okay, I'm sorry.  I got it --

18          THE COURT:  That's why I don't want you to turn away

19  from the microphone.  All right.

20          So that issue is still outstanding, whether or not

21  it's -- there's authority for the designation right itself --

22          MR. POWER:  Yes, Your Honor.

23          THE COURT:  -- to be transferred.  All right.

24          MR. POWER:  Your Honor, I wanted to just point out a

25  couple of things in the sale order which are important to us.

1    We're asking the buyer to close sooner than the finality of the

2    order.  So we specifically asked the Court to make a finding of

3    good faith with respect to this purchaser under 363(m).  That's

4    provided in the order.  And we believe there have been no

5    objections regarding the good-faith nature of this buyer or the

6    fact that this was an arm's-length negotiation, and it clearly

7    doesn't involve any insiders.  So we'd ask specifically for

8    Your Honor to make that finding so that the buyer is

9    comfortable that they can close sooner than finality.

10           And we'd also ask for a waiver of the fourteen-day

11   period under Bankruptcy Rules 6004 and 6006, because we need to

12   close as soon as possible to be consistent with the cash

13   collateral order.

14           I'm happy to go through any changes with --

15           THE COURT:  When do you need to close?

16           MR. POWER:  Friday, Your Honor, is our current target

17   date.

18           THE COURT:  Well, when do you need -- when is the

19   outside date to close?  I didn't want necessarily just to hear

20   what your target is.  I want to know when is the date that you

21   have to close by under the existing agreements, orders, et

22   cetera?

23           MR. POWER:  The cash collateral order terminates, and

24   we're required to provide the 9.1 million to the lender by

25   December 3rd, Friday.  That's not a target date; that's a

1    realistic date.  Otherwise, we have a -- we don't have a cash

2    collateral order.  We'd have to be back and battling over what

3    to do.  So that is actually our current timeline.

4            THE COURT:  All right.  Anybody wish to be heard with

5    respect to those issues?

6            Do you have anything further?

7            MR. POWER:  Your Honor, I don't want to belabor the

8    record, but I just would like to take a moment to thank a few

9    parties.  This case has been -- it's very rare to have a small

10   case like this reorganize, and particularly in the retail

11   context.  Most retailers nowadays liquidate and go out of

12   business pretty quickly.

13           A lot of people worked really hard over a very short

14   period of time.  And I'd like to acknowledge simply the

15   management of the debtor, the principals, Mr. Jordan Smilowitz

16   and Jim Linsalata, who worked tirelessly through late nights.

17   The buyer, all the principals have been extremely diligent

18   here, with their counsel, jumped into this very quickly, worked

19   literally around the clock and met with all the landlords to

20   try to resolve the issues that we had to overcome to get to

21   this point.

22           The landlords, a number of them, Your Honor, are

23   volunteer co-op board members, and they were willing to meet

24   with us on the eve of Thanksgiving and try to negotiate and

25   make the buyer comfortable with waiving those conditions.  So

1    we are very appreciative of that.

2          Lastly, but certainly not least, Your Honor, I'd like

3    thank personally Mr. Wekselbaum.  Mr. Wekselbaum opened this

4    business over forty years ago.  He founded it with his brother,

5    and he's operated for over forty years.  This is a very

6    difficult situation, where he's watching his business be sold,

7    and he is not going to be involved going forward.  Having said

8    that, Your Honor, I think he has been a class act throughout

9    this case.  He's always tried to operate in the best interests

10   of the company and employees to maximize the value.

11         And I think he can take a lot of solace from the fact

12   that this business, which has a tremendous loyalty --

13   virtually -- a number of our contemporaries -- a number of

14   bankruptcy lawyers I know, people -- creditors, people who live

15   in the area love this store.  They shop there; and they feel

16   that it's a tradition that's been around for forty years.  None

17   of them wanted to see it go out of business.

18         And I think that's a tribute to Mr. Wekselbaum.  And I

19   would like to thank him personally for being involved in this

20   process.  Thank you, Your Honor.

21         THE COURT:  All right.  Anyone else wish to be heard?

22         We do -- based on my understanding we have one

23   outstanding objection that needs to be addressed prior to

24   concluding this hearing, and that is the designation rights

25   objection.  And I just want to make sure I have the name of the

1    landlord.  And it's West Side lease -- that is Lincoln Metro

2    Center Partners LP is the objector.  Is that correct?

3          MR. STRICKON:  It's actually Lincoln Square Commercial

4    Holding Co. LLC, which was the successor to Metro Center

5    Partners.

6          THE COURT:  I see.  Lincoln Square --

7          MR. STRICKON:  Commercial Holding Co. LLC.

8          THE COURT:  All right.  I understand.

9          All right.  With respect to that objection, the Court,

10    during the brief recess, has reviewed some of the case law with

11    respect to the designation rights issue, and agrees with Judge

12    Gerber's decision in Ames Department Store, 287 B.R. 112, one

13    of the more recent decisions with respect to the designation

14    rights, and believes that the Court has the authority to grant

15    the debtor's request here, thereby overruling the objection of

16    the landlord at issue.

17          One comment with respect to the stub rent.  When that

18    issue was brought before me with respect to another lease, the

19    issue was raised as to whether I should rule on that

20    immediately in order to provide the landlord with what the

21    landlord is entitled to under the Code:  prompt payment of its

22    administrative claim and with respect to the lease.  And I took

23    it under advisement.  And I questioned at the time whether

24    waiting three weeks for the sale hearing, at which time that

25    lease may have been, as it is, assumed, and would then moot out

1   the issue for that particular landlord, was a denial of prompt

2   payment of administrative expense, without ruling on it that

3   day.  I didn't quite think it reached the level of not being

4   prompt.

5          I do believe though, with respect to the stub rent as

6   to this landlord, waiting until March for the determination by

7   the Court as to whether the stub rent is due and owing may well

8   be considered not providing the landlord with the entitlement

9   that the landlord is warranted under the Bankruptcy Code.  So I

10  will now -- I will make an effort to have that ruling done long

11  before March of 2011, so the landlord will know whether or not

12  this Court finds that it is entitled to the administrative

13  claim of the stub rent.  And if I rule in favor of the

14  landlord, then that stub rent shall be paid prior to any

15  determination made by the purchaser with respect to assumption

16  and assignment.

17         With that said, you may submit any -- I don't know if

18  there are any further markups to the order?

19         MR. POWER:  Amazingly, Your Honor, no.  I think we

20  actually -- the order we filed last night is the final version.

21  We have a disk --

22         MR. ORBACH:  There was one minor change, but it was

23  reflected in the chambers copy.

24         MR. POWER:  So my colleague, Joe Orbach says there's

25  one minor change, but it's reflected in the current version.  I

1  think they requested -- one landlord's attorney -- but we've

2  agreed to that, and there's no problem.

3          THE COURT:  All right.  Do you have a disk, or we'll

4  just have what was e-mailed to us.

5          MR. POWER:  I think we have a disk, Your Honor.

6          THE COURT:  All right, with that said, I will grant

7  the relief as modified, sought by the debtors, including a

8  waiver of the stay on closing as well as the good faith

9  finding.

10          MR. POWER:  Thank you, Your Honor.

11          MS. THOMAS MATZAT:  Thank you, Your Honor.

12          One point for the record, just with respect to your

13  comments on the stub rent issue.  Just so the record is clear,

14  the stub rent issue as briefed with respect to the landlord

15  that it was briefed with respect to, which was Mr. Ostrow's

16  client.  That particular issue will be mooted by --

17          THE COURT:  Yes.

18          MS. THOMAS MATZAT:  -- the sale.  The issue,

19  obviously, with respect to Mr. Strickon's client will not

20  necessarily be mooted -- won't be mooted by the sale.  Just so

21  that parties understand that if Your Honor's going to rule

22  based on the pleadings --

23          THE COURT:  No --

24          MS. THOMAS MATZAT:  -- as they exist --

25          THE COURT:  -- you're raising an important issue, and

1  I skipped over it. There needs to be briefing by Mr. Stickon

2  with respect to the stub rent issue. And an opportunity -- I

3  think probably the most expedient way to deal with it is have

4  Mr. Strickon file his brief first, unless he has a strong

5  objection to it, because I think we have the debtor's position

6  pretty much set forth.

7          MR. STRICKON: Your Honor, we will review the -- we've

8  never -- we have not focused on the pleadings that were filed

9  already, but we can review those pleadings and file just a

10 simple adoption -- incorporate by reference, so we don't have

11 to rebrief the thing all over again. Because I'm sure that Mr.

12 Ostrow, who I know for many years, had adequately briefed the

13 issue.

14         MS. THOMAS MATZAT: That's fine, Your Honor. I just

15 wanted the record to be clear --

16         THE COURT: No, you're right.

17         MS. THOMAS MATZAT: -- perhaps you might need a

18 statement of facts just as to what --

19         THE COURT: I think you need to agree on a time frame

20 to submit something, whether it's just an adoption of the

21 arguments already made on behalf of one landlord; and then the

22 debtor, a time to respond. And then I'll -- then I'll then

23 really have it under advisement at that point.

24         MS. THOMAS MATZAT: That's fine. I'm sure we'll be

25 able to work out something with Mr. Strickon.

1          MR. STRICKON:  Sure.

2          MS. THOMAS MATZAT:  Thank you.

3          THE COURT:  All right.  Thank you.

4          IN UNISON:  Thank you, Your Honor.

5       (Whereupon these proceedings were concluded at 12:14 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                           I N D E X

3

4                             R U L I N G S

5                                    Page        Line

6    Proffer of Mr. Pressman     16          21

7    accepted

8    Debtor's motion for         36          6

9    approval of sale order

10   granted as modified,

11   including waiver of stay

12   and good faith finding

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                    C E R T I F I C A T I O N

3

4    I, Penina Wolicki, certify that the foregoing transcript is a

5    true and accurate record of the proceedings.

6

7    Penina Wolicki    Digitally signed by Penina Wolicki
                        DN: cn=Penina Wolicki, c=US
                        Reason: I am the author of this
8    _____ document
                        Date: 2010.12.01 15:02:51 -05'00'

9    PENINA WOLICKI

10

11   Veritext

12   200 Old Country Road

13   Suite 580

14   Mineola, NY 11501

15

16   Date:  December 1, 2010

17

18

19

20

21

22

23

24

25