UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **THE WECK CORPORATION,** <br> **d/b/a Gracious Home,** *et al.* | **Case No. 10-14349 (AJG)** |
| | **Jointly Administered** |
| **Debtors.** | |

## FIRST AMENDED JOINT CHAPTER 11 PLAN OF LIQUIDATION PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

**HAHN & HESSEN LLP**
Rosanne Thomas Matzat, Esq.
Mark Power, Esq.
Alison Papalexis, Esq.
488 Madison Avenue
New York, NY 10022
T (212) 478-7350
F (212) 478-7400

**LOWENSTEIN SANDLER PC**
Kenneth A. Rosen, Esq.
Sharon L. Levine, Esq.
Bruce S. Nathan, Esq.
Thomas A. Pitta, Esq.
1251 Avenue of the Americas, 18th Floor
New York, New York 10020
(212) 262-6700 (Telephone)
(212) 262-7402 (Facsimile)

*Counsel to the Debtors and Debtors-In-Possession*

*Counsel to the Official Committee of Unsecured Creditors*

Dated: May 23, 2011
New York, New York

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **In re:** | **Chapter 11** |
| **THE WECK CORPORATION,** d/b/a Gracious Home, *et al.* | **Case No. 10-14349 (AJG)** |
| | **Jointly Administered** |
| **Debtors.** | |

## FIRST AMENDED JOINT PLAN OF LIQUIDATION PROPOSED BY THE DEBTORS AND OFFICIAL COMMITTEE OF UNSECURED CREDITORS

The Weck Corporation, d/b/a Gracious Homes, *et al.*, as debtors and debtors-in-possession in the above-captioned chapter 11 cases, jointly with the Official Committee of Unsecured Creditors, respectfully submit the following Plan of Liquidation pursuant to Chapter 11, Title 11 of the United States Code:

## ARTICLE 1

## DEFINITIONS

1.1     As used in the Plan, the following terms shall have the respective meanings specified below.

1.2     "**Administrative Claim**" shall mean a Claim under Section 503(b) of the Bankruptcy Code that is entitled to priority under Section 507(a)(1) of the Bankruptcy Code, for costs or expenses of administration of the Chapter 11 Cases, including, without limitation, any actual and necessary expenses of operating the business of the Debtors or preserving the estate, and any and all fees and expenses of Professionals to the extent allowed by the Bankruptcy Court under Sections 330, 331 or 503 of the Bankruptcy Code.

1.3     "**Administrative Claim Bar Date**" shall mean the deadline established in the Confirmation Order for filing Administrative Expense Claims, except for Claims of the kind specified in Section 5.7 herein.  The Administrative Claim Bar Date will be thirty (30) days after the Confirmation Date, unless otherwise ordered by the Bankruptcy Court.  Holders of Administrative Claims that are subject to the Administrative Claims Bar Date shall submit requests for payment on or before such Administrative Bar Date or be forever barred from submitting any request on account of such Administrative Claims.

1.4     "**Allowed Claim**" or "**Allowed [       ] Claim**" shall mean: (a) any Claim, proof of

which is/was filed with this Court on or before the Bar Date, or which has been or hereafter is scheduled by the Debtors as liquidated in amount and not disputed or contingent and which, in either case, is a Claim as to which no objection to the allowance thereof has been filed within the applicable period of limitation (if any) for objection to Claims fixed by the Court, or as to which any objection has been determined by an order or judgment of the Court (allowing such Claim in whole or in part) that is no longer subject to appeal or certiorari proceedings, and as to which no appeal or certiorari proceeding is pending, or (b) a Claim that is allowed (i) in any contract, instrument, or other agreement entered into in connection with the Plan, (ii) in a Final Order, or (iii) pursuant to the terms of the Plan. In accordance with Section 502(d) of the Bankruptcy Code, the Claim or Claims held by any party that is subject to an avoidance cause of action which has not otherwise been waived or released herein or by prior order of the Court, shall not be an Allowed Claim or Claims until such time as the avoidable transfer is returned or a final determination is made by the Bankruptcy Court that no avoidable transfer exists.

1.5     "**APA**" shall mean the Asset Purchase Agreement entered into on November 18, 2010 between the Debtors, as sellers, and Americas Retail Flagship Fund LLC, as purchaser, all exhibits and supplemental documents thereto and any amendments or modifications thereto.

1.6     "**Ballot**" shall mean the form or forms that will be distributed along with the Disclosure Statement to holders of Allowed Claims in classes that are Impaired under the Plan and entitled to vote, which the holders of Impaired Claims may use to vote to accept or reject the Plan.

1.7     "**Bankruptcy Code**" shall mean the United States Bankruptcy Code, 11 U.S.C. §§ 101, *et seq*., as now in effect or hereafter amended.

1.8     "**Bankruptcy Court**" shall mean the United States Bankruptcy Court for the Southern District of New York, or such other court as may hereafter be granted primary jurisdiction over these Chapter 11 Cases.

1.9     "**Bankruptcy Rules**" shall mean the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended.

1.10    "**Bar Date**" shall mean the applicable bar date by which a proof of claim or a request for payment of Administrative Claim must be or must have been filed, in accordance with the procedures established by an order of the Bankruptcy Court, including the Bar Date Order and Confirmation Order.

1.11    "**Bar Date Order**" shall mean the order of the Bankruptcy Court entered on October 7, 2010 establishing certain Bar Dates for filing proofs of claim in the Chapter 11 Cases, as amended, modified or supplemented.

1.12    "**Business Day**" shall mean any day other than a Saturday, Sunday, legal holiday (as such term is defined in Bankruptcy Rule 9006), and any other day that the Bankruptcy Court is closed.

1.13 "**Cash**" shall mean cash and cash equivalents, including, but not limited to, wire transfers, checks and other readily marketable direct obligations of the United States of America and certificates of deposit issued by banks.

1.14 "**Chapter 11 Cases**" shall mean the above-captioned Chapter 11 Cases, jointly administered under Case No. 10-14349 (AJG).

1.15 "**Claim**" shall mean a claim as defined in Section 101(5) of the Bankruptcy Code, or any portion thereof.

1.16 "**Class**" shall mean a category of Claims or Interests which are substantially similar in nature to each other, as classified pursuant to the Plan.

1.17 "**Committee**" shall mean the Official Committee of Unsecured Creditors appointed by the Office of the United States Trustee on August 24, 2010.

1.18 "**Confirmation**" shall mean the entry of the Confirmation Order on the docket of the Bankruptcy Court.

1.19 "**Confirmation Date**" shall mean the date of entry of the Confirmation Order, *inter alia*, confirming this Plan in accordance with the provisions of the Bankruptcy Code.

1.20 "**Confirmation Order**" shall mean the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code, in a form reasonably satisfactory to the Proponents.

1.21 "**Creditor**" shall mean any person or entity having a Claim against the Debtors, including, without limitation, a Claim that arose on, before or after the Petition Date or a Claim against the Debtors' estate of any kind specified in Sections 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.22 "**Debtors**" shall mean, collectively, The Weck Corporation, a Subchapter S corporation organized under the laws of the State of New York; West Weck, LLC, a limited liability corporation organized under the laws of the State of New York; West Chelsea, LLC, a limited liability corporation organized under the laws of the State of New York; and Gracioushome.com, LLC, a limited liability corporation organized under the laws of the State of New York.

1.23 "**Debtors-in-Possession**" shall mean the Debtors in their capacity, and with the status and rights, conferred by Sections 1107 and 1108 of the Bankruptcy Code.

1.24 "**Disclosure Statement**" shall mean the disclosure statement respecting the Plan, as approved by the Bankruptcy Court as containing adequate information in accordance with Section 1125 of the Bankruptcy Code, all exhibits and annexes thereto and any amendments or

modifications thereof.

1.25   "**Deficiency Claim**" shall mean a General Unsecured Claim representing the amount, if any, by which the Allowed amount of the Claim exceeds the value of the property owned or held by the Debtors which collateralizes the Claim subject to a valid unavoidable security interest.

1.26   "**Disputed Claim**" or "**Disputed [   ] Claim**" shall mean any Claim (i) as to which an objection has been interposed as of the Effective Date or any later deadline fixed by the Bankruptcy Court and (ii) which has not been allowed or disallowed pursuant to a Final Order.

1.27   "**Effective Date**" shall mean the date that is a Business Day designated by the Proponents in a notice filed with the Bankruptcy Court on which (a) each of the conditions set forth in Section 8.1 of the Plan have been satisfied or waived (if waivable), and (b) no stay of the Confirmation Order is in effect.

1.28   "**Entity**" shall have the meaning set forth in Section 101 of the Bankruptcy Code.

1.29   "**Equity Holder**" shall mean the holder of any Equity Interests.

1.30   "**Equity Proofs of Claim**" shall mean the proofs of claim filed by the Equity Holders in the Chapter 11 Cases.

1.31   "**Final Order**" shall mean an order entered by the Bankruptcy Court or any other court exercising jurisdiction over the subject matter and the parties, as to which (i) no appeal, certiorari proceeding or other review, rehearing or motion for reconsideration has been requested or is still pending, and (ii) the time for filing a notice of appeal or petition for certiorari or further review or rehearing has expired.

1.32   "**General Unsecured Claim**" shall mean any Claim against the Debtors, other than an Administrative Claim, Priority Tax Claim, Priority Claim or Secured Claim.

1.33   "**Impaired**" when used as an adjective preceding the words "Class of Claims" or "Class of Interests," shall mean that the Plan alters the legal, equitable or contractual rights of the member(s) of that Class or as otherwise provided in Section 1124 of the Bankruptcy Code.

1.34   "**Interest**" shall mean, with respect to the Debtors, any equity interest therein.

1.35   "**Meridian**" shall mean Meridian Acquisition Ventures, LLC, Thomas Shull, Paul Jen and GH Acquisition LLC.

1.36   "**Note**" shall retain the meaning ascribed thereto in the APA.

1.37   "**Person**" means a natural person, or any legal entity or organization including, without limitation, any corporation, partnership (general or limited), limited liability company,

business trust, unincorporated organization or association, joint stock company, trust, association, governmental body (or any agency, instrumentality or political subdivision thereof), or any other form of legal entity.

1.38 "**Petition Date**" shall mean August 13, 2010, the date upon which each of the Debtors filed their petitions under Chapter 11 of the Bankruptcy Code.

1.39 "**Plan**" shall mean this Plan of Liquidation, all exhibits hereto and any amendments or modifications hereof.

1.40 "**Plan Administrator**" shall mean Robert L. Pressman or such successor designated by the Proponents as the representative of the estate for purposes of administering the Plan.

1.41 "**Plan Expenses**" shall mean all actual and necessary costs and expenses to be incurred after the Effective Date in connection with the administration of the Plan at the direction of the Plan Administrator, including the reasonable fees and expenses of the Plan Administrator and any Professionals retained by the Plan Administrator.

1.42 "**Post-Confirmation Debtor**" shall mean the Debtors in their post-Confirmation Order status as provided for in this Plan.

1.43 "**Priority Claim**" shall mean any Claim against the Debtors entitled to priority in payment under Section 507(a) of the Bankruptcy Code, other than an Administrative Claim.

1.44 "**Professionals**" shall mean those Persons (i) employed pursuant to an order of the Bankruptcy Court in accordance with Sections 327, 328 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330 and 331 of the Bankruptcy Code, or (ii) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

1.45 "**Post-Effective Date Committee**" means a committee consisting of three (3) members of the Committee that shall come into existence on the Effective Date for the purpose of overseeing the activities of the Plan Administrator.

1.46 "**Property**" means all property of the Debtors' estates of any nature whatsoever, real or personal, tangible or intangible, previously or now owned by the Debtors, or acquired by the Debtors' estates, as defined in section 541 of the Bankruptcy Code.

1.47 "**Proponents**" means the Debtors and the Committee, as co-proponents of the Plan.

1.48 "**Pro Rata**" means, as of any certain date, with respect to any Allowed Claim in any Class, the proportion that such Allowed Claim bears to the aggregate amount of all Claims,

including Disputed Claims, in such Class.

1.49    "**Record Date**" shall mean the date to be established by the Bankruptcy Court for purposes of determining those holders of allowed claims that are entitled to vote to accept or reject the Plan.

1.50    "**Reserve Fund**" shall mean the segregated account(s) into which all reserved Cash provided for in the Plan shall be deposited on the Effective Date, or as soon thereafter as is practicable.

1.51    "**Schedules**" shall mean the Debtors' Schedules of Assets and Liabilities filed with the Bankruptcy Court pursuant to Bankruptcy Rule 1007 as they may be amended from time to time.

1.52    "**Secured Claim**" means any Claim that is secured by a valid lien, security interest, or other interest in property in which the Debtors have an interest that has been perfected properly as required by applicable law, but only to the extent of the value of the Debtors' interest in such property, determined in accordance with Section 506(a) of the Bankruptcy Code.

1.53    "**TSA**" shall mean the Transition Services Agreement as such term is defined in the APA.

1.54    "**Unimpaired**" means any Class of Claims or Class of Interests that is not Impaired within the meaning of Section 1124 of the Bankruptcy Code.

1.55    "**Voting Deadline**" means the deadline established by Order of the Bankruptcy Court for receipt of Ballots voting to accept or reject the Plan.

1.56    All terms not expressly defined herein shall have the respective meanings given such terms in Section 101 of the Bankruptcy Code or as otherwise defined in applicable provisions of the Bankruptcy Code.

1.57    Defined terms importing the plural only shall also include the singular where the context requires, and the singular shall include the plural.

1.58    Unless otherwise specified herein, any reference to an Entity as a holder of a Claim includes that Entity's successors, assigns and affiliates.

1.59    The rules of construction set forth in Section 102 of the Bankruptcy Code will apply.

1.60    In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

## ARTICLE 2

## PROVISIONS FOR PAYMENT OF ALLOWED
## ADMINISTRATIVE CLAIMS AND PRIORITY CLAIMS

2.1     Administrative Claims and Priority Claims are not classified in this Plan.  The treatment of and consideration to be received by holders of Allowed Administrative Claims and Allowed Priority Claims pursuant to this Article II of the Plan shall be in full and complete satisfaction, settlement, release and discharge of such Claims.  The Debtors' obligations in respect of such Allowed Administrative and Priority Claims shall be satisfied in accordance with the terms of this Plan.

2.2     <u>Treatment of Administrative Claims</u>.  Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid in respect of such Allowed Claim (i) the full amount thereof, without interest, in Cash, as soon as practicable after the later of (a) the Effective Date, (b) the date on which such Claim becomes an Allowed Claim, or (c) such other date as the holder of an Allowed Administrative Claim and the Debtors might otherwise agree, or (ii) such lesser amount as the holder of an Allowed Administrative Claim and the Debtors might otherwise agree on such date as the holder of an Allowed Administrative Claim and the Debtors might otherwise agree.

2.3     <u>Treatment of Priority Claims</u>.  Each holder of an Allowed Priority Claim will be paid in respect of such Allowed Claim (i) the full amount thereof, without post-petition interest or penalty, in Cash, as soon as practicable after the later of (a) the Effective Date, (b) the date on which such Claim becomes an Allowed Claim, or (c) such other date as the holder of an Allowed Administrative Claim and the Debtors might otherwise agree, or (ii) such lesser amount as the holder of an Allowed Priority Claim and the Debtors might otherwise agree on such date as the holder of an Allowed Administrative Claim and the Debtors might otherwise agree.

## ARTICLE 3

## CLASSIFICATION OF CLAIMS AND INTERESTS

3.1     Administrative Claims and Priority Claims are unclassified.  For purposes of this Plan, all other Claims and Interests are classified as follows:

     (a)     Class 1 shall consist of the Secured Claims.

     (b)     Class 2 shall consist of all General Unsecured Claims.

     (c)     Class 3 shall consist of all Interests.

## ARTICLE 4

## TREATMENT OF CLAIMS AND INTERESTS

4.1     The treatment of and consideration to be received by holders of Allowed Claims and Interests pursuant to this Article IV of the Plan shall be in full and complete satisfaction, settlement, release and discharge of such Claims and Interests, but shall not impact the ability of the holder of such claim or interest to assert such claim or interest against any non-Debtor.  The Debtors' obligations in respect of such Claims and Interests shall be satisfied in accordance with the terms of this Plan.

4.2     <u>Treatment of Class 1 Claims - Secured Claims</u>.  Class 1 Secured Claims are Unimpaired.  Each holder of an Allowed Class 1 Claim shall be deemed to have an Allowed Secured Claim to the extent of the collateral securing such Claim.  As soon as practicable after the Effective Date, such holder shall receive either (a) Cash equal to the Allowed amount of such Secured Claim or (b) return of the collateral securing such claim and any Deficiency Claim arising on account of such Secured Claim shall be treated as a Class 2 General Unsecured Claim.  The holders of Claims in this Class, if any, are not entitled to vote to accept or reject the Plan.

4.3     <u>Treatment of Class 2 Claims - General Unsecured Claims</u>.  Class 2 General Unsecured Claims are Impaired.  Each holder of an Allowed Class 2 Claim shall receive in respect of such Claim its Pro Rata distribution of the liquidated assets of the Debtors' estates after the payment of the Administrative Claims, Priority Claims, Secured Claims and Plan Expenses.  The holders of Claims in this Class are entitled to vote to accept or reject the Plan.

4.4     <u>Treatment of Class 3 Interests</u>.  Class 3 Interests are impaired.  The holders of Class 3 Interests shall receive no Distribution.  On the Effective Date, all Class 3 Interests shall be deemed canceled, null and void and of no force and effect.  The holders of Class 3 Interests are deemed to reject the Plan and are not entitled to vote to accept or reject the Plan.

## ARTICLE 5

## MEANS FOR IMPLEMENTATION OF THE PLAN

5.1     <u>Corporate Action</u>.  On the Effective Date and automatically and without further action, (a) each of the Debtors shall be deemed merged and substantially consolidated into the Post-Confirmation Debtor, and (b) the Plan Administrator shall be deemed the sole shareholder, officer and director of the Post-Confirmation Debtor.  The Plan will be administered by the Plan Administrator and all actions taken thereunder in the name of the Post-Confirmation Debtor shall be taken through the Plan Administrator.

5.2     <u>Plan Administrator</u>.  On the Effective Date, the Plan Administrator, an individually to be jointly selected by the Debtors and the Committee, shall begin acting for the Post-Confirmation Debtor in the same fiduciary capacity as applicable to a board of directors, subject to the provisions hereof.  Without the need for further Bankruptcy Court approval, the initial Plan Administrator shall be entitled to compensation and reimbursement for his or her actual and necessary expenses incurred in connection with the performance of his duties in accordance with the annexed Schedule "A".  The Plan Administrator shall not be liable for any action he or she takes or omits to take that he or she believes in good faith to be authorized or

within his or her rights or powers. All distributions to be made to Creditors under the Plan shall be made by the Plan Administrator, who shall deposit and hold all Cash in trust for the benefit of Creditors (including Professionals) receiving distributions under the Plan. The duties and powers of the Plan Administrator shall be undertaken in consultation with the Post-Effective Date Committee. The Post-Effective Date Committee shall consist of three (3) members, shall be selected jointly by the existing Committee and the Debtors and shall come into existence on the Effective Date for the purpose of overseeing the activities of the Plan Administrator. Those duties and powers shall include the following:

(a) To exercise all power and authority that may be exercised, commence all proceedings (including the power to continue any actions and proceedings that may have been commenced by the Debtors prior to the Effective Date) that may be commenced and take all actions that may be taken by any officer, director or shareholder of the Post-Confirmation Debtor with like effect as if authorized, exercised and taken by unanimous action of such officers, directors and shareholders, including consummating the Plan and all transfers thereunder on behalf of the Post-Confirmation Debtor;

(b) To enforce and collect the Note;

(c) To prepare and file Federal and State tax returns for the Debtors;

(d) To maintain all accounts, make distributions and take all other actions consistent with the Plan, including the maintenance of appropriate reserves, in the name of the Debtors or Post-Confirmation Debtor;

(e) When appropriate, to take all steps necessary to terminate the corporate existence of the Debtors;

(f) To prosecute objections to Claims and compromise or settle any Claims (Disputed Claims or otherwise);

(g) To retain and/or engage Professionals or other Persons selected to assist the Plan Administrator in connection with the above duties, including any professionals retained in the Chapter 11 Case, and to pay all fees and expenses incurred by such Professionals consistent with Article 5.7(b) of this Plan; and

(h) To take all other actions not inconsistent with the provisions of the Plan which the Plan Administrator deems reasonably necessary or desirable in connection with the administration of the Plan.

5.3     Resignation, Death or Removal.  The Plan Administrator may be removed (i) by the Post-Effective Date Committee; or (ii) or by the Bankruptcy Court, upon application for good cause shown. In the event of the resignation or removal, death or incapacity of the Plan Administrator, the Post-Effective Date Committee shall designate another Person to become Plan Administrator, and thereupon the successor Plan Administrator, without any further act, shall

become fully vested with all of the rights, powers, duties and obligations of his or her predecessor.

5.4    <u>Winding Up Affairs</u>.  Following the Confirmation Date, the Post-Confirmation Debtor shall not engage in any business activities or take any actions, except those necessary to effectuate the Plan and wind up the affairs of the Debtors.  On and after the Effective Date, the Plan Administrator may, in the name of the Post-Confirmation Debtor and in consultation with the Post-Effective Date Committee, take such actions without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, other than any restrictions expressly imposed by the Plan or the Confirmation Order.  Without limiting the foregoing, the Plan Administrator may, without application to or approval of the Bankruptcy Court, pay the charges that the Post-Confirmation Debtor incurs after the Effective Date for Professional fees and expenses related to the winding up of the Debtors' affairs and administration and implementation of the Plan.  The Post-Confirmation Debtors shall indemnify and hold the Plan Administrator harmless from and against any and all claims, actions, investigations or liabilities incurred in the performance of his or her duties under this Plan other than as a result of the Plan Administrator's willful misconduct, gross negligence, or malfeasance.

5.5    <u>Release of Liens</u>.  Except as otherwise provided in the Plan or in any contract, instrument or other agreement or document created in connection with the Plan, on the Effective Date, all mortgages, deeds of trust, liens or other security interests against the property of the Debtors' estate shall be released, and all the right, title and interest of any holder of such mortgages, deeds of trust, liens or other security interests shall revert to the Post-Confirmation Debtor and its successors and assigns.

5.6    <u>Rights of Action</u>.  Pursuant to Section 1123(b)(3)(B) of the Bankruptcy Code, on the Effective Date, any right, claim or cause of action, belonging to the Debtors or their estate against any Person or Entity, including without limitation, any claim to avoid a transfer under Section 544, 547, 548, 549 or 553(b) of the Bankruptcy Code that was not previously released by the Debtors shall be retained by the Post-Confirmation Debtor, to the extent not previously adjudicated, assigned and/or released.  The Plan Administrator shall pursue, settle or release all reserved rights of action, as appropriate, in accordance with the best interests of and for the benefit of the Creditors entitled to receive distributions under the Plan.  The Plan Administrator, after consultation with the Post-Effective Date Committee, shall be entitled to settle any such rights of action without further order of the Bankruptcy Court, but shall be entitled to seek such authorization in his or her discretion.

5.7    <u>Professional Fees and Expenses</u>.

(a) Each Professional Person retained or requesting a compensation in the Chapter 11 Case, pursuant to Section 327, 328, 330, 331 or 503(b) of the Bankruptcy Code, in connection with fees incurred prior to the Effective Date, shall file an application for allowance of final compensation and reimbursement of expenses in the Chapter 11 Case before the sixtieth (60th) day after the Effective Date.  Objections to such applications, if appropriate, must be filed on or before the twentieth (20th) day after the date such application is filed.

(b) Professionals that perform post-Effective Date services for the Plan Administrator and/or the Post-Effective Date Committee shall provide monthly invoices to the Plan Administrator, the Post-Effective Date Committee and counsel to the Debtors describing the services rendered, and the fees and expenses incurred in connection therewith, on or before the 20th day following the end of the calendar month during which such services were performed. Professionals who timely tender such invoices shall be paid by the Plan Administrator for such services from the Plan Expense Reserve Fund not less than fifteen (15) days after the submission of said monthly invoices, unless, within said fifteen (15) day period, a written objection to such payment is made by the Plan Administrator, the Post-Effective Date Committee, or counsel to the Debtors. To the extent a written objection to a Professional's monthly invoice cannot be resolved by the parties, payment of such invoice, shall be made only upon Final Order of the Bankruptcy Court.

5.8     <u>Dissolution of the Committee.</u>  The Committee shall dissolve upon the Effective Date and its members shall be released and discharged from all further authority, duties, responsibilities and obligations relating to or arising from the Chapter 11 cases.

5.9     <u>Post-Effective Date Committee Rights.</u>  The Post-Effective Date Committee shall be entitled to consult with and Professionals retained and/or engaged by the Plan Administrator, provided, however that if a conflict should arise between the Post-Effective Date Committee and the Plan Administrator, the Post-Effective Date Committee shall be entitled to retain its own Professionals and the Plan Administrator shall pay all fees and expenses incurred by such Professionals consistent with Article 5.7(b) of this Plan.

## ARTICLE 6

## **DISTRIBUTIONS**

6.1     <u>Reserve for Plan Expenses</u>.   Prior to making any distributions, the Plan Administrator shall set aside, deduct and reserve an amount of Cash equal to the estimated amount of Plan Expenses in the Reserve Fund.  Any Cash in such Reserve Fund that the Plan Administrator deems to be excess prior to the closing of these Chapter 11 Cases shall be distributed to holders of Allowed Claims pursuant to Article 4 of the Plan; provided, however, that in the event the amount to be distributed to Creditors would result in a distribution of less than one-half of one percent of the aggregate Allowed General Unsecured Claims, such amount shall be donated to Tina's Wish Foundation.

6.2     <u>Objections to Claims</u>.  Objections to Claims shall be filed with the Bankruptcy Court and served upon Creditors no later than sixty (60) days after the Effective Date, <u>provided, however,</u> that this deadline may be extended by the Bankruptcy Court upon motion of the Plan Administrator, without notice or a hearing.  Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of claim filed after the Bar Date shall be automatically disallowed as a late filed claim, without any action by the Post-Confirmation Debtor, unless and until the party filing such Claim obtains the written consent of

the Post-Confirmation Debtor to file such Claim late or obtains an order of the Bankruptcy Court upon notice to the Post-Confirmation Debtor that permits the late filing of the Claim, in which event, the Post-Confirmation Debtor shall have sixty (60) days from the later of (i) the date of such written consent or order; or (ii) the date the Claim is filed to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Post-Confirmation Debtor, without notice or a hearing.

6.3     Subject to Bankruptcy Court approval, objections to Claims may be litigated to judgment, settled or withdrawn by the Plan Administrator, in consultation with the Post-Effective Date Committee.

6.4     Distributions with respect to and on account of Claims to which objections have been filed will be made as soon as practicable after an order, judgment, decree or settlement agreement with respect to such Claim becomes a Final Order provided that the applicable Creditor shall not receive interest on its Allowed Claim, despite anything contained herein to the contrary, from the date the objection is filed and served to the date of allowance of such Claim.

6.5     Record Date.  As of the close of business on the Record Date, the various transfer and claims registers for each of the Classes of Claims as maintained by the Debtors or their respective agents shall be deemed closed, and there shall be no further changes in the record holders of any of the Claims.  The Debtors, the Plan Administrator and the Post-Confirmation Debtor shall have no obligation to recognize any transfer of the Claims occurring after the close of business on the Record Date.  The Debtors and the Plan Administrator shall be entitled to recognize and deal hereunder only with those record holders stated on the transfer ledgers as of the close of business on the Record Date, to the extent applicable.

6.6     Manner of Payment Under the Plan.  Unless the Person receiving a payment agrees otherwise, any payment in Cash to be made by the Plan Administrator or the Post-Confirmation Debtor shall be made, at the election of the Plan Administrator or the Post-Confirmation Debtor (as the case may be), by check drawn on a domestic bank or a wire transfer from a domestic bank.

6.7     Disputed Claim Reserves.   On and after the Effective Date, the Plan Administrator shall establish and maintain reserves for all Disputed Claims.  For purposes of establishing a reserve, Cash will be set aside equal to the amount that would have been distributed to the holders of Disputed Claims in such Class had their Disputed Claims been deemed Allowed Claims on the Effective Date or such other amount as may be approved by the Bankruptcy Court upon motion of the Plan Administrator.  If, when, and to the extent any such Disputed Claim becomes an Allowed Claim by Final Order, the relevant portion of the Cash held in reserve therefor shall be distributed by the Plan Administrator to the Creditor.  The balance of such Cash, if any remaining after all disputed claims have been resolved, shall be distributed Pro Rata to all holders of Claims in accordance with Article 4 of the Plan.  No payments or distributions shall be made with respect to a Claim that is a Disputed Claim pending the resolution of the dispute by Final Order or stipulation of the parties.

6.8     Unclaimed Property.  If any distribution remains unclaimed for a period of ninety (90) days after it has been delivered (or attempted to be delivered) in accordance with the Plan to the holder entitled thereto, such unclaimed property shall be deemed forfeited by such holder, whereupon all right, title and interest in and to the unclaimed property as well as any further distribution to such Creditor shall be forfeited by the Creditor and held by the Plan Administrator to be distributed to other Creditors in accordance with this Plan.

6.9     Withholding Taxes.  Any federal, state, or local withholding taxes or other amounts required to be withheld under applicable law shall be deducted from distributions hereunder.  All Persons holding Claims shall be required to provide any information necessary to effect the withholding of such taxes.

6.10    Fractional Cents.  Any other provision of this Plan to the contrary notwithstanding, no payment of fractions of cents will be made.  Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding down of such fraction to the nearest whole cent.

6.11    Payments of Less than Twenty Dollars.  If a Cash payment otherwise provided for by this Plan with respect to an Allowed Claim would be less than twenty ($20.00) dollars (whether in the aggregate or on any payment date provided in this Plan), notwithstanding any contrary provision of this Plan, the Plan Administrator shall not be required to make such payment, the affected Creditor's Claim shall be deemed disallowed solely for distribution purposes, and such funds shall be otherwise distributed to holders of Allowed Claims in accordance with Article 4 of the Plan.

6.12    Setoffs.  Except as otherwise provided for herein, the Plan Administrator may, but shall not be required to, set off against any Claim and the payments to be made pursuant to this Plan in respect of such Claim, Claims of any nature whatsoever that the Debtors or their estate may have against the Creditor, but neither the failure to do so nor the allowance of a Claim hereunder shall constitute a waiver or release by the Debtors or their estate of any Claim it may have against the Creditor.

## ARTICLE 7

## UNEXPIRED LEASES AND EXECUTORY CONTRACTS

7.1     Any and all pre-Petition Date leases or executory contracts not previously rejected by the Debtor, unless specifically assumed pursuant to order(s) of the Bankruptcy Court prior to the Confirmation Date; or the subject of a pending motion on the Confirmation Date to either assume, or assume and assign, such lease or executory contact shall be deemed rejected by the Debtor on the Confirmation Date.

7.2     All proofs of claim with respect to claims arising from the rejection of executory contracts or leases shall, unless another order of the Bankruptcy Court provides for an earlier date, be filed with the Bankruptcy Court within thirty (30) days after the entry of the

Confirmation Order. Any proof of claim that is not timely filed shall be released, discharged and forever barred from assertion against the Debtors, their estate or property, or the Post-Confirmation Debtor.

## ARTICLE 8

## CONDITIONS PRECEDENT TO EFFECTIVENESS OF THE PLAN

8.1     Conditions to Consummation.  The Plan shall not become effective unless and until each of the following conditions has been satisfied:

(a)     The Bankruptcy Court shall have entered the Confirmation Order; and

(b)     The Confirmation Order shall have become a Final Order; and

(c)     There are sufficient liquid assets to make the requisite distributions in full to holders of Administrative Claims and Priority Claims.

8.2     Waiver of Conditions.  The Proponents, in their respective sole discretion, may at any time, without notice or authorization of the Bankruptcy Court, waive the condition set forth in Section 8.1(b) above, by a writing signed by an authorized representative of the Debtors and the Committee.  The Proponents each reserve the right to assert that any appeal from the Confirmation Order shall be moot after consummation of the Plan.

8.3     Effect of Failure of Condition.  In the event that the condition specified in Section 8.1(b) of the Plan has not occurred or been waived on or before May 15, 2012 on the assumption the Plan is confirmed on or before August 1, 2011, the Confirmation Order may be vacated upon order of the Bankruptcy Court after motion made by either Proponent.

## ARTICLE 9

## EFFECT OF CONFIRMATION

9.1     Vesting of Assets.  Upon the Effective Date, pursuant to section 1141(b) and (c) of the Bankruptcy Code, all Property of the Debtors, including, but not limited to, the Note and the rights of the Debtors pursuant to the APA and the TSA, shall vest in the Post-Confirmation Debtor free and clear of all Claims, liens, encumbrances, charges and other interests, except as provided in the Plan.  From and after the Effective Date, the Post-Confirmation Debtor may use, acquire and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules and in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code.

9.2     Binding Effect.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind the Debtors, the Post-Confirmation Debtor and any holder of a Claim against, or Interest in, the Debtors and such holder's respective

successors and assigns, whether or not the Claim or Interest of such holder is Impaired under the Plan and whether or not such holder has accepted the Plan.

9.3     Preservation of Rights of Action by the Debtors and Post-Confirmation Debtor. Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with Section 1123(b) of the Bankruptcy Code and to the fullest extent possible under applicable law, the Post-Confirmation Debtor shall retain and may enforce, in conjunction with the Plan Administrator, any claims, demands, rights and causes of action that the Debtors or their estate holds or may hold against any entity, including any recovery actions and any currently pending actions other than as previously released.  The Post-Confirmation Debtor or its successors may pursue such retained claims, demands, rights or causes of action, as appropriate, in accordance with the best interests of the Post-Confirmation Debtor or its successors holding such claims demands, rights or causes of action.  Further, to the extent retained under the APA, the Post-Confirmation Debtor retains its right to file and pursue, in conjunction with the Plan Administrator, any adversary proceedings against any creditor or vendor related to debit balances or deposits owed to any Debtors.

# ARTICLE 10

# RETENTION OF JURISDICTION

10.1     Following the Confirmation Date and until such time as all payments and distributions required to be made and all other obligations required to be performed under this Plan have been made and performed by the Plan Administrator, the Bankruptcy Court shall retain jurisdiction as is legally permissible, including, without limitation, for the following purposes:

(a)     Claims.  To determine the allowability, classification or priority of Claims against the Debtors upon objection by the Plan Administrator or any other party in interest.

(b)     Injunctions, etc.  To issue injunctions or take such other actions or make such other orders as may be necessary or appropriate to restrain interference with the Plan or its execution or implementation by any Person, to construe and to take any other action to enforce and execute the Plan, the Confirmation Order, or any other order of the Bankruptcy Court, to issue such orders as may be necessary for the implementation, execution, performance and consummation of the Plan and all matters referred to herein, and to determine all matters that may be pending before the Bankruptcy Court in the Chapter 11 Cases on or before the Effective Date with respect to any Entity.

(c)     Professional Fees.  To determine any and all applications for allowance of compensation and expense reimbursement of Professionals (including Professionals retained by the Plan Administrator or Post-Effective Date Committee) for periods before or after the Effective Date, as provided for in the Plan.

(d)     Certain Priority Claims.  To determine any Priority Claims, Administrative

Claims, or any request for payment of Administrative Claims.

(e)     <u>Adversary Proceedings</u>.  To adjudicate any and all adversary proceedings, applications and contested matters that may be commenced or maintained pursuant to the Bankruptcy Code or this Plan.

(f)     <u>Dispute Resolution</u>.  To resolve any dispute arising under or related to (i) the implementation, execution, consummation or interpretation of the Plan and the making of distributions thereunder, including, without limitation, any dispute concerning payment of professional fees and expenses of the Plan Administrator and (ii) the APA, TSA or the collection of the Note.

(g)     <u>Leases and Executory Contracts</u>.  To determine any and all motions for the rejection, assumption or assignment of executory contracts or unexpired leases, and to determine the allowance of any Claims resulting from the rejection of executory contracts and unexpired leases.

(h)     <u>Actions</u>.  To determine all applications, motions, adversary proceedings, contested matters, actions, and any other litigated matters instituted prior to the closing of the Chapter 11 Cases, including any remands.

(i)     <u>General Matters</u>.  To determine such other matters, and for such other purposes, as may be provided in the Confirmation Order or as may be authorized under provisions of the Bankruptcy Code.

(j)     <u>Plan Modification</u>.  To modify the Plan under Section 1127 of the Bankruptcy Code, remedy any defect, cure any omission, or reconcile any inconsistency in the Plan or the Confirmation Order so as to carry out its intent and purposes.

(k)     <u>Aid Consummation</u>.  To issue such orders in aid of consummation of the Plan and the Confirmation Order notwithstanding any otherwise applicable non-bankruptcy law, with respect to any Entity, to the full extent authorized by the Bankruptcy Code.

(l)     <u>Implementation of Confirmation Order</u>.  To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated.

(m)     <u>Final Order</u>.  To enter a Final Order closing the Chapter 11 Case.

# ARTICLE 11

## MISCELLANEOUS PROVISIONS

11.1   <u>Pre-Confirmation Modification</u>.  The Plan may be altered, amended or modified, as agreed to by both Proponents, before the Confirmation Date as provided in Section 1127 of

the Bankruptcy Code.

11.2 <u>Post-Confirmation Immaterial Modification</u>. The Proponents, or following the Effective Date, the Plan Administrator, with the consent of the Post-Effective Date Committee, may, subject to approval of the Bankruptcy Court without notice to holders of Claims and Interests, insofar as it does not materially and adversely affect the interest of holders of Claims, alter, amend or modify the Plan in such a manner and to such extent as may be necessary to expedite consummation of this Plan.

11.3 <u>Post-Confirmation Material Modification</u>. The Plan may be altered or amended after the Confirmation Date by the Plan Administrator, with the consent of the Post-Effective Date Committee, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, provided that such alteration or modification is made after a hearing as provided in Section 1127 of the Bankruptcy Code.

11.4 <u>Withdrawal or Revocation of the Plan</u>. The Proponents each reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Proponents revoke or withdraw the Plan, then the result shall be the same as if the Confirmation Order had not been entered and the Effective Date had not occurred.

11.5 <u>Successors and Assigns</u>. The rights, benefits and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such Entities.

11.6 **<u>Exculpation</u>. Except as otherwise provided by the Plan or the Confirmation Order, on the Effective Date to the extent permitted by applicable law, the Debtors, their directors, officers, members, employees and agents, the Committee and its members, and the Proponents' attorneys, financial advisors except Meridian (including such attorneys and financial advisors successors or assigns, and any direct or indirect members, managing members, owners, employees, officers, shareholders or directors), and Triton Equity Partners LLC, (including its successors or assigns, and any direct or indirect members, managing members, owners, employees, officers, shareholders or directors, including specifically Robert Pressman and Elizabeth Obloy), as court appointed Administrator and Wind Down Officers of the Debtors, shall be deemed released by each of them against the other, and by all holders of Claims or Interests, of and from any claims, obligations, rights, causes of action and liabilities for any act or omission in connection with, or arising out of, the Chapter 11 Case, including, without limiting the generality of the foregoing, all retentions, motions and applications, sales of assets, the Disclosure Statement, the pursuit of approval of the Disclosure Statement, the pursuit of confirmation of the Plan, the consummation of the Plan or the administration of the Plan or the property to be distributed under the Plan provided, however, no such parties shall be discharged from obligations under the Plan or of any claim or cause of action arising from or related to acts or omissions which constitute willful misconduct, gross negligence, fraud or criminal conduct under the laws of the United States or any state or local authority. All such Persons, in all respects, shall be entitled to rely upon the advice of counsel with respect to**

their duties and responsibilities under the Plan and under the Bankruptcy Code. Nothing in this Section 11.6 shall release or otherwise impair any claims against Meridian or claims against non-debtors on account of guarantees of the Debtor's obligations.

11.7 __Injunction__. Except as otherwise provided in the Plan, on and after the Confirmation Date, all Entities who have held, hold or may hold Claims against the Debtors or Interests in the Debtors are, with respect to any such Claims or Interests, permanently enjoined from and after the Confirmation Date from: (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors, the Post-Confirmation Debtor, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing Entities, or any property of any such transferee or successor; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means whether directly or indirectly, of any judgment, award, decree or order against the Debtors, the Post-Confirmation Debtor, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Entities; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors, the Post-Confirmation Debtor, any of their property, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to any of the foregoing Entities and (d) taking any actions in any place and in any manner whatsoever that do not conform to or comply with the provisions of the Plan. Nothing in this Section 11.7 shall release or otherwise impair any claims against Meridian or claims against non-debtors on account of guarantees of the Debtor's obligations.

11.8 __Cramdown__. To the extent any Impaired Class of Claims entitled to vote on the Plan votes to reject the Plan, the Proponents reserve the right to request confirmation of the Plan under Section 1129(b) of the Bankruptcy Code with respect to such Class.

11.9 __Governing Law__. Except to the extent that the Bankruptcy Code is applicable, the rights and obligations arising under this Plan shall be governed by and construed and enforced in accordance with the laws of the State of New York.

11.10 __Notices__. Any notice required or permitted to be provided under the Plan shall be in writing and served by either (a) certified mail, return receipt requested, postage prepaid, (b) hand delivery or (c) reputable overnight courier service, freight prepaid, to be addressed as follows:

(a)     To the Plan Administrator:

Robert L. Pressman
__TRITON EQUITY PARTNERS, LLC__

641 Lexington Avenue
Suite 1400
New York, NY 10022

(b)     To the Committee, c/o:

Bruce S. Nathan, Esq.
**LOWENSTEIN SANDLER PC**
1251 Avenue of the Americas
New York, NY 10020

- and -

Thomas A. Pitta, Esq.
**LOWENSTEIN SANDLER PC**
65 Livingston Avenue
Roseland, New Jersey 07068

(c)     To the Debtors, c/o:

Mark T. Power, Esq.
Rosanne Thomas Matzat, Esq.
**HAHN & HESSEN, LLP**
488 Madison Avenue
New York, NY 10022

11.11  Non-Voting Equity Securities.  To the extent applicable, the Debtors shall comply with the provisions of Section 1123(a)(6) of the Bankruptcy Code.

11.12  Retiree Benefits.  From and after the Effective Date, to the extent required by Section 1129(a)(13) of the Bankruptcy Code, the Post-Confirmation Debtor shall continue to pay all retiree benefits (as defined in Section 1114 of the Bankruptcy Code), if any, established or maintained by the Debtors prior to the Effective Date.  The Debtors believe there are no such benefits.

11.13  Saturday, Sunday or Legal Holiday.  If any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

11.14  Section 1146 Exemption.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by, the Plan or the

revesting, transfer or sale of any real or personal property of the Debtors pursuant to, in implementation of, or as contemplated by, the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

11.15  Severability.  If any term or provision of the Plan is held by the Bankruptcy Court prior to or at the time of Confirmation to be invalid, void or unenforceable, the Bankruptcy Court shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as so altered or interpreted.  In the event of any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan may, at the Debtors' option remain in full force and effect and not be deemed affected; provided, however, that the Debtors retain the right not to proceed to Confirmation or consummation of the Plan if any such ruling occurs.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

11.16  Headings.  The headings used in this Plan are inserted for convenience only and neither constitute a portion of the Plan nor in any manner affect the provisions of the Plan.

## ARTICLE 12

## CONFIRMATION REQUEST

12.1     The Proponents hereby request confirmation of the Plan pursuant to Section 1129(a) of the Bankruptcy Code.

Respectfully submitted,

**THE WECK CORPORATION, d/b/a Gracious Homes, *et al.***

By:     /s/  *Robert L. Pressman*
        *Court-Appointed Administrator and Wind-Down Officer for the Debtors*

**THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:     /s/   *Stuart McInnis*
        *Stuart McInnis (True Value Company), Chairperson*

Dated:  May 23, 2011
New York, New York